**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JUSTINE HURRY**<br><br>Plaintiff,<br><br>v.<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION, et al.**<br><br>Defendants. | C.A. No. 1:18-cv-2435 |

**PLAINTIFF'S MEMORANDUM IN
<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ............................................................................................................ 6

I.      PLAINTIFF'S CLAIM IS NOT MOOT .......................................................... 6

      A.    The FDIC's Decision Does Not Fully Resolve Plaintiff's Request for Relief ....... 7

      B.    The FDIC Should Not be Permitted to Insulate Its Actions From Review ........... 8

II.     PLAINTIFF'S CLAIM SHOULD NOT BE DISMISSED FOR FAILURE TO PROSECUTE ................................................................................................ 12

III.    THE COURT SHOULD, IF NECESSARY, GRANT PLAINTIFF AN EXTENSION OF TIME TO MOVE FOR SUMMARY JUDGMENT .................................................. 15

CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biton v. Palestinian Interim Self-Government Auth.*,
  239 F.R.D. 1 (D. D.C. 2006) .........................................................................................16, 17

*Bomate v. Ford Motor Co.*,
  761 F.2d 713 (D.C. Cir. 1985) ............................................................................................13

*Bristol Petroleum Corp. v. Harris*,
  901 F.2d 165 (D.C. Cir. 1990) .......................................................................................13, 15

*Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*,
  819 F.3d 476 (D.C. Cir. 2016) ............................................................................................17

*Friedman v. Fed. Aviation Admin.*,
  841 F.3d 537 (D.C. Cir. 2016) .....................................................................................8, 11, 12

*Gardner v. United States*,
  211 F.3d 1305 (D.C. Cir. 2000) ...................................................................................13, 14, 15

*Gasplus, L.L.C. v. United States DOI*,
  466 F. Supp. 2d 43 (D.D.C. 2006) ........................................................................................7

*Jackson v. Beech*,
  636 F.2d 831 (D.C. Cir. 1980) ............................................................................................17

*Perry v. Spano*,
  328 Fed. App'x 104 (2d Cir. 2009) ......................................................................................16

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
  507 U.S. 380 (1993) ...........................................................................................................16

*Rocky Mt. Tech. Eng'g Co., LLC v. Hutchens Indus.*,
  263 Fed. App'x 895 (Fed. Cir. 2008) ...................................................................................14

*Smith v. Ergo Solutions, LLC*,
  306 F.R.D. 57 (D. D.C. 2015) .............................................................................................17

*Smith-Bey v. Cripe*,
  852 F.2d 592 (D.C. Cir. 1988) ............................................................................................13

*Stella v. Mineta*,
  231 F.R.D. 44 (D.D.C. 2005) .......................................................................................12, 13, 14

*In re Vitamins Antitrust Class Actions*,
    327 F.3d 1207 (D.C. Cir. 2003) ......................................................................16

*Whiteru v. Wash. Metro. Area Transit Auth.*,
    No., 2018 U.S. Dist. LEXIS 211470 (D. D.C. Dec. 17, 2018) ........................15, 17

*Yesudian v. Howard Univ.*,
    270 F.3d 969 (D.C. Cir. 2001) ......................................................................16

**Statutes**

5 U.S.C. § 704 ..................................................................................................11

12 U.S.C. 1817(j)(7)(E) ....................................................................................11

12 U.S.C. § 1817(j)(1) ......................................................................................9

12 U.S.C. § 1817(j)(3) ......................................................................................10

12 U.S.C. § 1817(j)(7) ................................................................................5, 9, 10

12 U.S.C. § 1817(j)(7)(E) .................................................................................5

Administrative Procedure Act, 5 U.S.C. §§ 702, 706 .......................................1

Change in Bank Control Act, 12 U.S.C. § 1817(j) ................................. *passim*

**Other Authorities**

12 C.F.R. 303.11(e) .........................................................................................4, 5

12 C.F.R. 303.11(f) ..........................................................................................10

12 C.F.R. 308.110 ............................................................................................11

12 C.F.R. 308.111(e) ........................................................................................11

12 C.F.R. part 308. Part 308, Subpart D Subpart D ......................................10, 11

Fed. R. Civ. P. 6(b)(1)(B) ...............................................................................16

Federal Rule of Civil Procedure 6(b) ......................................................1, 3, 15, 16

Protective Order. Dkt. No. 12 ...........................................................................6

Rule 41(b) ...................................................................................................12, 15

Plaintiff Justine Hurry ("Plaintiff" or "Mrs. Hurry") respectfully submits this memorandum of law in opposition to the Defendants' Motion to Dismiss the Complaint and, if appropriate,  to request an Extension of Time to Move for Summary Judgment in the above-captioned action pursuant to Federal Rule of Civil Procedure 6(b) and the Court's inherent authority.

## PRELIMINARY STATEMENT

Plaintiff sued the Federal Deposit Insurance Corporation ("FDIC"), John R. Jilovec as Deputy Regional Director of the FDIC Kansas City Regional Office ("Mr. Jilovec"), and Hilary L. Hoskins, as Case Manager in the FDIC Kansas City Regional Office ("Ms. Hoskins," together with Mr. Jilovec the "Individual Defendants" and, collectively the "Defendants") pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 702, 706, alleging that the Defendants failed to take action in accordance with law, namely the Change in Bank Control Act, 12 U.S.C. § 1817(j), and unreasonably and unlawfully failed to take appropriate action with respect to Plaintiff's Notice of Change in Control (the "Notice").  Among other things, Plaintiff alleged that Defendants failed to properly consider information provided, failed to comply with the timing procedures set forth in Section 1817(j), failed to take action required by statute, and impermissibly did so based on Plaintiff's gender.

The Court set a schedule by which Plaintiff could amend the Complaint and the parties could move and/or cross-move for summary judgment.  Nothing in that order indicated that Plaintiff was *required* to amend her Complaint, nor did it indicate that either party was *required* to move.  Plaintiff, believing her Complaint was well-pleaded and based on the view that there were disputed issues of fact, did not amend or move for summary judgment.

Defendants' now move to dismiss based on their misreading of Plaintiff's allegations and their unfounded belief that Plaintiff is required to amend her complaint and move for summary judgment if an agency-defendant tells her she should.

First, Defendants' assert that Plaintiff's claim is moot because the FDIC took "final agency action" on her Notice of Change in Bank Control (the "Notice").  Def. Mem. at 2. Defendants contend that because Plaintiff asked this Court for an order compelling the FDIC to take action either approving or disapproving the Notice, and the FDIC instead "closed" the file without approving or disapproving the Notice, there was final agency action and thus there is no remedy for the Court to provide.  Plaintiff, however, disagrees with the FDIC's position including whether "closing" the file constitutes "agency action."  Further, Defendants' cramped reading of the Complaint ignores that Plaintiff also requested declarations that the FDIC did not act timely and that its failure to do so was the equivalent under Section 1817(j) of an approval. The specific request for relief the FDIC points to actually asked the Court to order the FDIC either to approve or disapprove the Notice – the *only* options statutorily authorized by Section 1817(j) – and thus, the fact that the FDIC has "closed" the file without either approving or disapproving the Notice has no impact on the Court's ability to enter an order compelling the FDIC to act in accordance with the statute.

Defendants' second basis for dismissal is nothing more than an attempt to steer the Court away from resolving the merits of Plaintiff's claim.  The Court's scheduling order did not mandate that Plaintiff amend her Complaint or move for summary judgment on penalty of dismissal for failure to prosecute.  Rather, if Plaintiff chose to take such procedural steps, the scheduling order required her to do so by certain dates.  Defendants now twist this into a mandate for Plaintiff but, as revealed by their own decision not to seek summary judgment, do

not themselves consider the scheduling order to be binding.  They seek a technical win to avoid resolution of Plaintiff's plainly meritorious claims.

As a result of this, and based on Defendants' insistence that Plaintiff was required to move even if there are material facts in dispute and Defendant's avowed decision to therefore not file its own motion, Plaintiff requests that this Court deny this motion and allow this case to proceed.  If, however, the Court is of the view that Plaintiff *must* file a summary judgment motion, even in the face of factual issues, Plaintiff  requests an extension of time in which to present such a motion for summary judgment.  The Court should therefore deny Defendants' motion and, if it considers a motion to be necessary, grant Plaintiff an extension pursuant to Federal Rule of Civil Procedure 6(b) and its inherent authority, and set forth a new briefing schedule.

## **BACKGROUND**

### *Allegations in the Complaint*

Mrs. Hurry first submitted a draft of her Notice to the FDIC in September 2017 in connection with her efforts to acquire a controlling stake in the Bank of Orrick, Missouri (the "Bank").  Compl. ¶¶ 1-2.  After a series of preliminary discussions and meetings with FDIC and its staff, Mrs. Hurry submitted a final Notice on November 14, 2017, which was marked "received" by the FDIC on November 29, 2017.  FDICAR000099-375.

Mrs. Hurry's Notice detailed, among other things, her background and relevant experience including within the financial and banking industries, her financial statements, the funds to be used to complete the acquisition including their source, anticipated changes to the Bank's management and business, and her interest as a beneficiary of certain trusts.  Compl. ¶¶ 20-21; *id.* Exs. A, B; FDICAR000099-375.  This information was required pursuant to Section 1817(j)(6).

The FDIC responded on December 8, 2017 and indicated that the Notice was missing information and could not be processed without the information.  Compl. ¶ 22; FDICAR000376-79.  Mrs. Hurry responded on December 21, 2017 and provided the requested information, which was received by the FDIC on December 22, 2017.  Compl. ¶ 23; FDICAR000381-679.[1]  The FDIC responded on January 12, 2018 and requested information – much of it duplicative of what was requested on December 8, 2017 and provided by Mrs. Hurry on December 21, 2017.  Compl. ¶¶ 24-26; FDICAR000680-686.  The FDIC noted that if the information was not furnished, it "may disapprove a Notice." Compl. Ex. D; FDICAR000680.

This back and forth continued, with Mrs. Hurry submitting a further revised notice on March 9, 2018 (marked received by the FDIC on March 13, 2018),[2] the FDIC seeking "additional" information that was in fact the same information already requested from and provided by Mrs. Hurry, until the FDIC sent a letter dated September 19, 2018.  *See* Compl. ¶¶ 29-40; FDICAR000691-972; FDICAR000973-1072.  In that letter, the FDIC stated for the first time that "[t]he file has been closed pursuant to 12 C.F.R. 303.11(e)" because Mrs. Hurry "fail[ed] to furnish . . . all information" requested by the FDIC.  Compl. ¶ 40; FDICAR001072.

Among the information requested, the FDIC sought to learn about the role of Mrs. Hurry's *husband*, John Hurry, her interest and/or control over certain trusts, and her source of funds.  Compl. ¶¶ 22, 24(c), 24(e), 30, 33, 37; FDICAR000376-69; FDICAR000680-86.  Mrs. Hurry, in turn, clarified that her husband had no role in the acquisition (*see, e.g.*, Compl. ¶ 23(f); FDICAR000382-83), provided trust documentation and certifications confirming that she did not have control over the trusts or their assets (*see, e.g.*, Compl. ¶¶ 32, 36; *id.* Ex. J), and fully disclosed the source of her funds.  Compl. ¶¶ 31, 35.  Despite these facts, the FDIC simply

---

[1] Assuming this constituted the filing date, the FDIC had until June 20, 2018 to disapprove the Notice.

[2] Assuming this constituted the filing date, the FDIC had until September 9, 2018 to disapprove the Notice.

declined to take one of the two statutorily authorized actions and instead declared the file "closed" pursuant to its own regulation, 12 C.F.R. 303.11(e). *See* Compl. ¶ 40.

As alleged in the Complaint, the FDIC failed to comply with the time limitations for disapproving the Notice provided in Section 1817(j). *See* Compl. ¶¶ 41-45. The FDIC never once indicated that it was extending the period for disapproval. Compl ¶ 45. Further, as alleged in the Complaint, Section 1817(j) requires the FDIC either to approve or disapprove the Notice – it makes no allowance for "deem[ing] the filing abandoned," an option the FDIC bestows upon itself in 12 C.F.R. 303.11(e). Compl. ¶¶ 46-51. 303.11(e) permits closing a file as abandoned only where the applicant fails to provide information requested, 12 C.F.R. 303.11(e), while the statute, Section 1817(j)(7), states that an applicant's failure to furnish requested information is a basis for *disapproval*. 12 U.S.C. § 1817(j)(7)(E). As the Complaint alleges, the FDIC has ignored the statutory command to disapprove the Notice in this circumstance, and instead, by fiat, closed the file without taking one of the two required statutory actions. Compl. ¶¶ 50-51. Finally, the Complaint alleges that the FDIC's repeated demands for irrelevant information and information already provided to it was unreasonable and harmful, as was its conclusion to close the file. Compl. ¶¶ 54-58. The Complaint thus alleges that the FDIC failed to take final action that was authorized and required to be taken by the governing statute.

### Procedural History

At an initial scheduling conference held on February 4, 2019, this Court set down a schedule for this matter. Specifically, the Court required the Defendants to provide the table of contents for the Administrative Record by February 22, 2019, required Plaintiff to move for summary judgment by June 14, 2019, required the Defendants to respond and cross-move by

July 16, 2019, required Plaintiff's reply and opposition by August 5, 2019, and required a final reply by August 27, 2019.[3]

On February 22, 2019, Defendants filed a notice with the Court setting down the table of contents for the Administrative Record.  Dkt. No. 11.  Approximately one month later, the parties filed a joint stipulation for a Protective Order.  Dkt. No. 12.  The Court signed the protective order on March 27, 2019, and it was filed on April 1, 2019.  Dkt. No. 13.  On April 1, 2019, Defendants produced the Administrative Record to Plaintiff.  *See* Decl. of Maranda Fritz ("Fritz Decl.") ¶ 7.

Plaintiff declined to move for summary judgment based on the view that factual issues relating to, among other things, the content of the information and proposed undertakings Plaintiff offered, the import of information concerning her husband, how the FDIC concluded that such information was pertinent, how such matters related to the criteria for approval of a Notice of Change in Control, and whether Defendant's actions were based on impermissible criteria, were not susceptible of resolution on summary judgment.  *See* Complaint, Dkt. No. 1; Fritz Decl. ¶¶ 9-10.

Defendants have now sought dismissal.

## ARGUMENT

## I.    PLAINTIFF'S CLAIM IS NOT MOOT

Defendants' contentions about mootness are incorrect for at least two reasons:  *first*, Defendants ignore the entirety of the relief Plaintiff has requested; and *second*, Defendants' contention would lead to the absurd result that the FDIC's actions are totally insulated from review.  Defendants' motion should be denied.

---

[3] The schedule appears as a Minute Entry on the Court's ECF docket.

### A.       The FDIC's Decision Does Not Fully Resolve Plaintiff's Request for Relief

Plaintiff has alleged that the FDIC improperly closed her file without taking statutorily required action to either approve or disapprove her Notice.   Compl. ¶¶ 60-66, 70-71.   In connection with this, Plaintiff alleged that the FDIC failed to comply with statutorily imposed time periods in which it was required *to render a decision* either approving or disapproving the Notice.   *Id.*   And, in pursuing this course, the FDIC unreasonably requested irrelevant information and impermissibly focused on Mrs. Hurry's gender. *Id.* ¶¶ 67-70.   In her Prayer for Relief, Plaintiff therefore requested:   (1) a declaration that the FDIC unreasonably delayed rendering a decision and did so unlawfully; (2) a declaration that the FDIC's failure to disapprove the transaction in accordance with Section 1817(j); and (3) an order compelling the FDIC to "take action promptly . . . confirming that the transaction may proceed or stating its purported basis for disapproving the transaction."  Compl. at 21.

Defendants now raise a smokescreen.   Citing non-controversial principles of administrative law, Defendants argue that the FDIC's decision to close the file constituted "final agency action" that "already fulfilled Ms. Hurry's original complaint's prayer for relief that the FDIC 'take action promptly with respect to' the Notice."  Def. Mem. at 5-6.  This grossly distorts the relief requested and omits a crucial aspect of the section the FDIC quotes – namely, that the action requested is either "confirming that the transaction may proceed," i.e., approval, or "stating its purported basis for disapproving the transaction," i.e., disapproval.  Compl. at 21.

The FDIC's citations to cases like *Shoreham-Wading* and *Rivera* offer no support.   In both cases, the claims were mooted because the agency in question took the precise action the plaintiffs had requested in their respective complaints.  Not so here.  Neither case indicates that an agency's action which is not authorized by statute but which it views as "final," moots a plaintiff's request that the agency take an action in accordance with the statute.  *Cf.*, *Gasplus,*

*L.L.C. v. United States DOI*, 466 F. Supp. 2d 43, 49-50 (D.D.C. 2006) ("'[j]udicial review is favored when an agency is charged with acting beyond its authority'") (quoting *Dart v. United States*, 848 F.2d 217, 221 (D.C. Cir. 1988)).  Mrs. Hurry has alleged that the FDIC's decision to close the file without approving or disapproving her Notice was not authorized by Section 1817(j) and, among other things, resulted in the FDIC unreasonably and unlawfully withholding appropriate agency action that could then be the subject of review.  Compl. ¶¶ 60-70. That claim remains unaddressed by the FDIC's decision to simply close the file and deem the Notice "abandoned."  Compl. ¶¶ 40, 60-70; *id.* at 21.[4]

Moreover, the FDIC's mootness argument addresses only *one* of the remedies Plaintiff has requested.  It says nothing about that aspect of the Complaint alleging unreasonable delay inconsistent with the statutorily-imposed time limitations.  Compl. ¶¶ 41-45; *id.* at 21.  It says nothing about that aspect of the Complaint alleging that the FDIC's course of conduct was unreasonable and unlawful and based on impermissible considerations of, among other things, Mrs. Hurry's gender.  Compl. ¶¶ 67-69; *id.* at 21.  And it says nothing about Mrs. Hurry's request for a declaration that the failure to either approve or disapprove the Notice within the prescribed period permits Mrs. Hurry to proceed with the acquisition.  *Id.* at 21.

## B.    The FDIC Should Not be Permitted to Insulate Its Actions From Review

The FDIC's decision was not authorized by relevant statute, but instead was made pursuant to the FDIC's own regulation.  That regulation, as set forth in the Complaint, is patently inconsistent with the relevant statutory authority and would result in an aggrieved party being

---

[4] Implicit in the FDIC's argument is its belief that the Complaint does not recognize its decision to close the file as "final agency action."  This is not the case.  The test for finality considers whether the action "mark[s] the consummation of the agency's decisionmaking process" such that it is not "merely tentative or interlocutory" and second, whether "rights or obligation s have been determined" or "legal consequences will flow" from the decision.  *See Friedman v. Fed. Aviation Admin.*, 841 F.3d 537, 541 (D.C. Cir. 2016) (internal quotation and citation omitted). As alleged in the Complaint, the FDIC's September 19, 2018 letter indicated that the FDIC "closed" the file and would no longer consider Mrs. Hurry's Notice.  Compl. ¶ 40; FDICAR001072.  Obviously this "consummat[ed]" the FDIC's decision-making process, and consequences did flow – Mrs. Hurry's Notice was not approved and the acquisition has been halted as a result.  Compl. ¶¶ 55-58.

denied judicial review expressly provided for elsewhere in the statute.  The FDIC now seeks to compound that by avoiding any review in this Court.  It should not be allowed.

Section 1817(j) clearly establishes that the FDIC's duty upon consideration of any notice of change in control is to either approve or disapprove of the acquisition:

> "No person . . . shall acquire control of any insured depository institution through a purchase . . . unless the [FDIC] has been given sixty days' prior written notice of such proposed acquisition and within that time period the agency has not issued a notice disapproving the proposed acquisition or, in the discretion of the agency, extending for an additional 30 days the period during which such a disapproval may issue."

12 U.S.C. § 1817(j)(1).  The statute further states that an acquisition may proceed if the agency "issues written notice of its intent not to disapprove the action."[5]  Thus, all the FDIC can do pursuant to Section 1817(j)(1) is disapprove or not disapprove a proposed acquisition.

The statute also prescribes the bases on which the FDIC may disapprove an acquisition. *See* 12 U.S.C. § 1817(j)(7).  Those are:  (1) the acquisition would result in monopoly; (2) the acquisition would lessen competition in a section of the country and the anticompetitive effects are not clearly outweighed by the public interest in allowing the acquisition; (3) the financial condition of the acquiring person or prospects of the institution might result in financial instability or harm depositors of the bank; (4) the competence, experience, or integrity of the acquiring person indicates the acquisition would not be in the interest of the public; (5) the acquiring person neglects, fails, or refuses to furnish information required by the agency; or (6)

---

[5] The contraposition to this provision is of course that, if the FDIC does approve an acquisition, it need not give any written notice.  Thus, agency silence after the allotted time period is equivalent to approval.

the agency determines that the acquisition would have an adverse effect on the Deposit Insurance Fund. *Id.*

Section 1817(j) requires the FDIC to notify the acquiring party "[w]ithin three days after its decision to disapprove any proposed acquisition." 12 U.S.C. § 1817(j)(3). Further, the acquiring party may request an agency hearing "[w]ithin ten days of receipt of such notice of disapproval," and, "[a]t the conclusion thereof, the [FDIC] shall by order approve or disapprove the proposed acquisition on the basis of the record made at such hearing." *Id.* § 1817(j)(4). And if an acquisition remains disapproved after such a hearing, the aggrieved party "may obtain review by the United States court of appeals for the circuit in which the home office of the bank to be acquired is located or the United States Court of Appeals for the District of Columbia Circuit, by filing a notice of appeal in such court within ten days from the date of such order." *Id.* § 1817(j)(5).

As the statue makes clear, approval and disapproval are the only authorized actions. Nothing in the statute refers to "abandonment." The sole mechanism for both internal agency review and further judicial review is triggered only when there has been "disapproval." As a result, when the FDIC deems an application "abandoned," as it did here, the acquiring party can seek neither internal agency review pursuant to Subsection (j)(4) or obtain judicial review pursuant to Subsection (j)(5). A party whose application is deemed abandoned thus has ***no recourse***.

This interpretation is confirmed by the FDIC's own regulations pertaining to appeals of change in control decisions. 12 C.F.R. 303.11(f) directs that "[a]ppeal procedures for a denial of a change in bank control" are governed by Subpart D of 12 C.F.R. part 308. Part 308, Subpart D, in turn, limits its scope to "proceedings in connection with the ***disapproval*** by the Board of

Directors or its designee of a proposed acquisition of control."  12 C.F.R. 308.110 (emphasis added).  The remainder of the regulations in Subpart D refer only to "disapproval."  *See id.* at 308.111 ("Grounds for disapproval"); *id.* at 308.112 ("Notice of disapproval"); *id.* at 308.113 ("Answer to notice of disapproval").  No provision of Subpart D or ***any other*** part of the FDIC's regulations speak to a party's appeal rights where a change in control application was deemed abandoned.  Thus, again, a party whose application is deemed abandoned has no recourse.

This problem is compounded further upon consideration that nothing in Section 1817(j) authorizes the FDIC to deem an application "abandoned."  In fact, the FDIC's claimed basis for doing so – that the acquiring party failed or refused to provide requested information – is actually a statutorily-authorized basis for ***disapproval***.  *See* 12 U.S.C. 1817(j)(7)(E); *see also* 12 C.F.R. 308.111(e) (stating that "grounds for disapproval" include that the "acquiring person neglects, fails, or refuses to furnish to the FDIC all the information required by the FDIC").

Plaintiff has alleged all of this in her Complaint.  Put simply, the FDIC's unauthorized determination deeming Mrs. Hurry's application "abandoned" precluded her from obtaining internal agency and further judicial review for which Section 1817(j) expressly provides.  And its attempt now to use that unauthorized determination as a basis to have Plaintiff's meritorious claim dismissed as "moot" is an affront to basic due process and the APA itself – which expressly authorizes judicial review of agency action for which "no other adequate remedy" is available.  5 U.S.C. § 704.

The D.C. Circuit, in *Friedman*, rejected an analogous attempt by the FAA to "place[ Plaintiff] in a holding pattern – preventing [her] from obtaining any explicitly final determination on [her] application and thwarting the Court's interest in reviewing those agency actions that, in practical effect if not formal acknowledgement, constitute the consummation of the agency's

decisionmaking process and determine rights of obligations." 841 F.3d at 542. As the Court held, "[t]he Agency cannot manipulate its own processes, threatening denial but then refusing to deny or otherwise take definitive action on [plaintiff]'s application, in an effort to thwart judicial review" and keep the plaintiff "in administrative limbo." *Id.* at 545. Here, Mrs. Hurry is even worse off than the plaintiff in *Friedman*: the FDIC has taken definitive action but that action is not authorized by statute and is not within the scope of any of the judicial review mechanisms. It must be rejected.

## II.   PLAINTIFF'S CLAIM SHOULD NOT BE DISMISSED FOR FAILURE TO PROSECUTE

Defendants also seek dismissal on the alternative basis that Plaintiff has failed to prosecute this action. In support, Defendants rely solely on the scheduling order entered on February 4, 2019 and cite the fact that Plaintiff chose not to amend her Complaint or file a motion for summary judgment. They claim that Plaintiff has not shown good cause for "missing" these "key deadlines" and assert that by not moving for summary judgment, Plaintiff "has elected not to seek to overturn the FDIC's final determination." Def. Mem. at 7, n. 1. This is incorrect.

Plaintiff's decision not to amend the Complaint or file a motion for summary judgment does not support dismissal. First, the scheduling order does not require that Plaintiff take either action – it simply sets the dates by which those actions must be done if they are done. Defendants offer no principle of law or citation to authority supporting the novel proposition that a Plaintiff who chooses not to move for summary judgment automatically forfeits her right to challenge an agency's action.

Further, under Rule 41(b), the D.C. Circuit has long-cautioned that dismissal is a sanction of last resort "only after less dire alternatives have been explored without success." *Stella v.*

12

*Mineta*, 231 F.R.D. 44, 48 (D.D.C. 2005) (quoting *Gardner v. United States*, 211 F.3d 1305, 1308 (D.C. Cir. 2000)).   Relevant considerations include:  (1) the effect of a plaintiff's conduct on the court's docket; (2) whether the defendant has been prejudiced by the plaintiff's conduct; and (3) whether deterrence "is necessary to protect the integrity of the judicial system." *Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990).  In *Gardner*, the D.C. Circuit advised that the justifications for dismissal under the *Bristol* factors "are not easily met." 211 F.3d at 1309.  Thus, "[p]rejudice . . . must be 'so severe as to make it unfair to require the other party to proceed with the case' . . . [and] a malfeasant party places a severe burden on the judicial system if 'the court is required to expend considerable judicial resources in the future in addition to those it has already wasted.'"  *Id.* (internal citation and alterations omitted)

Here, Plaintiff's conduct places little burden on the Court's docket and certainly does no harm to judicial integrity.  It is not a situation where, for example, a plaintiff failed to appear at a court-mandated conference even after being warned that such a failure would result in dismissal. *See Bomate v. Ford Motor Co.*, 761 F.2d 713, 714 (D.C. Cir. 1985).  Nor is it a situation where Plaintiff repeatedly failed to comply with the Court's directives.  *See Stella*, 231 F.R.D. at 48 (noting six instances of plaintiff's failure to comply).  Second, Plaintiff's conduct has not caused this case to languish on the Court's docket for years, as is the typical situation where dismissal is found to be warranted.  *See, e.g.*, *Bomate*, 761 F.2d at 713-14 (case pending two years); *Stella*, 231 F.R.D. at 48 (case pending for eight years, plaintiff's noncompliance persisted for two years); *but see Smith-Bey v. Cripe*, 852 F.2d 592, 594 (D.C. Cir. 1988) (eight month delay did not warrant dismissal).  This case is less than a year old.

Third, as to prejudice, it is minimal and in no small part due to Defendants' own litigation strategy.   Defendants had an opportunity to present their view in a motion for summary

judgment, but chose not to do so.[6]   *See* Fritz Decl. ¶ 13-14.   Typical instances of prejudice involve years long delays (*see, e.g.*, *Stella*, 231 F.R.D. at 48), or repeated conduct that precludes a defendant from taking steps to proceed with their defense of the case.   *See, e.g.*, *Rocky Mt. Tech. Eng'g Co., LLC v. Hutchens Indus.*, 263 Fed. App'x 895, 898 (Fed. Cir. 2008) (plaintiff's repeated failure to comply with discovery deadlines prejudiced defendant and warranted dismissal).   In this case, the delay has not even been two months and Plaintiff sought, in good faith, to obtain defense counsel's consent to an extension of time after Defendants stated their view that Plaintiff must move for summary judgment.   Fritz Decl. ¶ 17.   But defense counsel refused.   *Id.*   In these circumstances, it cannot seriously be said that Defendants have been prejudiced "so severe[ly] as to make it unfair to require the[m] . . . to proceed with the case."   *Gardner*, 211 F.3d at 1309.

Moreover, as Plaintiff's counsel explained to defense counsel before Defendants' filed their motion, Plaintiff **has** good cause for not moving for summary judgment:   Plaintiff believes that, based on her allegations, some issues of fact would preclude summary judgment in her favor on all of the issues in this case.   *See* Fritz Decl. ¶¶ 13-14.   Those issues include, among others, the reasonableness of the FDIC's delay, the extent to which the FDIC's requests for additional information reflected impermissible bias, and the basis for the FDIC's redundant requests for information that had already been supplied.   *See* Fritz Decl. ¶¶ 9-10.   Indeed, the administrative record reflects that several internal meetings and telephone calls took place where Plaintiff's Notice was discussed, as did a number of in-person and telephonic conferences between FDIC personnel and Plaintiff's representatives.    *See, e.g.*, FDICAR000687; FDICAR000689; FDICAR000984.   These issues indicate that there are matters beyond the

---

[6] This illustrates the paradox of Defendants' argument:  Plaintiff must file a motion for summary judgment, but Defendant need not.

Administrative Record that ought to be considered and that would stand in the way of resolution on summary judgment.

In sum, dismissal would not serve the interests of justice. *See Bristol*, 901 F.2d at 167 (Rule 41(b) "dismissal is in order only when lesser sanctions would not serve the interests of justice"). Rather, "less dire alternatives" ought to be explored. *Gardner*, 211 F.3d at 1308. Plaintiff requested that Defendant stipulate to just such an alternative – a brief extension of time in which Plaintiff could file a motion for summary judgment (although she maintains it would not fully resolve her claims). Fritz Decl. ¶ 17. Defendants' refused and instead seek dismissal. It should be denied.

## III. THE COURT SHOULD, IF NECESSARY, GRANT PLAINTIFF AN EXTENSION OF TIME TO MOVE FOR SUMMARY JUDGMENT

As set forth above, the Court should not dismiss Plaintiff's Complaint for failure to prosecute based on Defendants' theory that a plaintiff in an APA case must move for summary judgment. However, given Defendants' strong stance on this proposition, if the Court agrees that a motion for summary judgment is required, Plaintiff will make that motion despite her view that factual issues exist. *See* Fritz Decl. ¶¶ 9-10. Plaintiff believes, however, that the case should proceed to hearing on the issues alleged in the Complaint, which may include the testimony of relevant witnesses who participated in the submission and discussions of Mrs. Hurry's Notice. Therefore, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss and, if necessary, grant Plaintiff an extension of time to move for summary judgment pursuant to Rule 6(b) and the Court's inherent authority.

District courts have "broad discretion" to grant extensions of time, even after a deadline has passed. *See, e.g.*, *Whiteru v. Wash. Metro. Area Transit Auth.*, No. , 2018 U.S. Dist. LEXIS 211470, *4 (D. D.C. Dec. 17, 2018) (internal quotation marks and citation omitted); *see also*

*Yesudian v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) (noting "great deference" owed to district courts in their "case management decisions" including under Rule 6(b)).

Rule 6(b) provides that a court may grant an extension where a party has not acted due to "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In making this assessment, a court should consider "(1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Ultimately, this inquiry is "an equitable one, taking account of all relevant circumstances." *Pioneer*, 507 U.S. at 395.

Here, all of these factors support granting an extension. First, the danger of prejudice to Defendants is negligible. As set forth above, Defendants' prejudice is, at least in part, self-inflicted. Defendants have articulated an unsupported view of the scheduling order and an equally unsupported theory that a plaintiff must always move for summary judgment. Fritz Decl. ¶ 13-14. Further, Defendants refused to consent to Plaintiff's request for an extension. *Id.* ¶ 17. To be sure, Defendants will have to respond to Plaintiff's motion, but that is a task they would have had to do regardless. This is not a case where Defendant has obtained some favorable ruling that would be jeopardized. *See, e.g.*, *Biton v. Palestinian Interim Self-Government Auth.*, 239 F.R.D. 1, 2-4 (D. D.C. 2006) (defendant sought to file late answer several months after plaintiff had obtained a default); *Perry v. Spano*, 328 Fed. App'x 104, 105 (2d Cir. 2009) (plaintiff's request to supplement the record "an entire year" after defendant obtained favorable summary judgment ruling would unfairly prejudice defendant). This request does not inject any

new issues or claims, nor does it impact any of Defendants' asserted defenses.  There is no prejudice.

Second, the length of the delay is not substantial and is unlikely to impact the judicial proceedings here.  *See, e.g.*, *Whiteru*, 2018 U.S. Dist. LEXIS 211470 at *5 (two month delay before seeking leave for extension to file motion over two years after deadline excusable); *Smith v. Ergo Solutions, LLC*, 306 F.R.D. 57, 66 (D. D.C. 2015) (sixty day delay excusable).  Plaintiff acted promptly in seeking Defendants' consent to an extension after the filing date passed, and the present request would not interfere with any scheduled hearings or future appearances.  *See Whiteru*, 2018 U.S. Dist. LEXIS 211470 at *5 (noting that lack of upcoming scheduled court dates favored granting extension).  Nor is this a situation where Plaintiff has repeatedly flouted court-imposed deadlines (*see, e.g.*, *Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 479 (D.C. Cir. 2016) ("repeated failure to meet almost every relevant deadline" and "repeated late filings" warrant denial of extension) (internal quotation marks and citation omitted)).  The case remains in its early stages and an extension will not unduly burden the judicial system, which favors resolving cases based on the merits, and not upon technical defaults.  *See Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).

Third, as set forth above, the reason for the delay was reasonable.  Plaintiff believed (and still does believe) that her claim could not be resolved on summary judgment given factual issues.  *See* Fritz Decl. ¶¶ 9-10; Part II, *supra*.  Nor is Plaintiff *required* to move for summary judgment on penalty of dismissal or default.  *Id.* ¶¶ 11, 16.  While case law recognizes that strategic decisions, such as not answering a complaint and planning to collaterally attack a default judgment do not constitute excusable neglect, that is not the case here.  *See, e.g.*, *Biton*, 239 F.R.D. at 3-4 (strategy of not answering, employed across several cases, warranted denial of

request for extension of time to file answer).  Plaintiff evaluated her claim and the administrative

record Defendants produced and reasonably identified areas that appear to involve questions of

fact and credibility concerning the FDIC's reasons for its actions.  Thus, she believed that the

case was not susceptible of resolution on summary judgment.  If, as Defendant insists, Plaintiff

was required to nonetheless present that motion, then Plaintiff is willing to do so.

Finally, Plaintiff has acted in good faith.  Plaintiff has not ignored deadlines repeatedly

and made a reasonable (and permissible) assessment that summary judgment would not fully

resolve her claims.  Moreover, Plaintiff sought Defendants' consent for an extension, but was

denied.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny

Defendants' motion to dismiss and grant Plaintiff an extension of time for Plaintiff to move for

summary judgment and set forth a new briefing schedule.

Dated: July 30, 2019

Respectfully submitted,

THOMPSON HINE LLP

By:   /s/ Joseph A. Smith
  Joseph A. Smith
  D.C. Bar No. 1010223
  Maranda E. Fritz (admitted *pro hac vice*)
  Brian Lanciault (admitted *pro hac vice*)
  1919 M Street, N.W., Suite 700
  Washington, D.C. 20036
  Phone: (202) 331-8800
  Fax: (202) 331-8330
  joe.smith@thompsonhine.com
  maranda.fritz@thompsonhine.com
  brian.lanciault@thompsonhine.com
  *Counsel for Plaintiff Justine Hurry*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of July, 2019, I will cause the foregoing Motion to be filed and served via ECF, on the following:

> Erick Bond
> Counsel, Corporate Litigation Unit
> 3501 N. Fairfax Drive, D-7026
> Arlington, VA 22226
> *Counsel for FDIC Defendants*

_____/s/ Joseph A. Smith_____
Joseph A. Smith