# Exhibit 1

```
                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA


JUSTINE HURRY,
                                            Civil Action
            Plaintiff,                      No. 1:18-cv-2435

       vs.                                  Washington, DC
                                            February 4, 2019
FEDERAL DEPOSIT INSURANCE
CORPORATION, et al.,
                                            11:06 a.m.
            Defendants.
_____/


          TRANSCRIPT OF INITIAL SCHEDULING CONFERENCE
             BEFORE THE HONORABLE RANDOLPH D. MOSS
                   UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:       MARANDA E. FRITZ
                           Thompson Hine LLP
                           335 Madison Avenue, 12th Floor
                           New York, NY 10017

                         JOSEPH A. SMITH
                           Thompson Hine LLP
                           1919 M Street, NW, Suite 700
                           Washington, DC 20036


For the Defendants:      ERIK BOND
                           Federal Deposit Insurance Corp
                           Corporate Litigation Unit
                           3501 N. Fairfax Drive
                           Arlington, VA 22226



Reported By:             JEFF M. HOOK
                           Official Court Reporter
                           U.S. District & Bankruptcy Courts
                           333 Constitution Avenue, NW
                           Room 4700-C
                           Washington, DC 20001
```

```
 1                    P R O C E E D I N G S
 2        DEPUTY CLERK:  Civil action 18-2435, Justine Hurry
 3   versus the Federal Deposit Insurance Corporation, et al.
 4   Will counsel please approach the podium and identify
 5   yourselves for the record.
 6        MS. FRITZ:  Good morning.  Maranda Fritz of
 7   Thompson Hine for Justine Hurry.  With me is Joseph Smith.
 8        THE COURT:  Good morning to both of you.
 9        MR. BOND:  Good morning, your Honor.  Erik Bond on
10   behalf of the Federal Deposit Insurance Corporation in its
11   corporate capacity.
12        THE COURT:  Good morning, Mr. Bond.  Ms. Fritz, do
13   you want to start things off?
14        MS. FRITZ:  Sure.  This is a case in which Justine
15   Hurry had sought to buy a bank and went through the notice
16   of change in control process.  That process included her
17   production of substantial volumes of material with respect
18   to her, her background and her qualifications associated
19   with the acquisition.
20        As reflected in the complaint, the process bogged
21   down.  And ultimately over the course of a year, FDIC failed
22   to act and then ultimately declared her application
23   abandoned for reasons that we obviously maintain were
24   inappropriate, impermissible.  We have had conversations,
25   Mr. Bond and I, and we have a schedule that we'd like to
```

```
 1    propose to the Court in terms of pleadings as well as
 2    filings.
 3              THE COURT:  Okay.
 4              MS. FRITZ:  In the first instance, we've discussed
 5    the position that the FDIC took in the answer with respect
 6    to the fact that agency action -- that its abandonment or
 7    claim of an abandoned application constituted final agency
 8    action.  Based on that assertion, we intend to amend our
 9    pleadings and would do so by February 18th.  FDIC would
10    answer by March 18th.  They would submit the administrative
11    record by April 22nd.
12              MR. BOND:  As to the contents of the record, under
13    the local rules -- pursuant to the local rules, we'd be
14    filing the contents of the record on April 22nd.
15              THE COURT:  And by contents, you mean the table of
16    contents?
17              MR. BOND:  The table of contents, the list of
18    contents, yes.
19              THE COURT:  See, contents makes it sound like
20    you're going to file the whole contents.
21              MR. BOND:  No, no, just the list of contents.
22              THE COURT:  Okay, that's fine.
23              MS. FRITZ:  Motions would then be filed on
24    June 14th.  Responses July 16th, and --
25              THE COURT:  Can I pause there which is I find that
```

1  simultaneous briefing is often less helpful than doing it
2  seriatim, because you end up with trains -- or boats passing
3  in the night and that you're not actually as directly
4  addressing each other's issues.  So I think from my
5  perspective -- and if you wanted a few minutes to talk about
6  it, that would be fine.  But from my perspective, I find it
7  more helpful if one party goes first -- you know, if you go
8  first, then the other party gets the advantage of going
9  last.  It comes out pretty equally I think in the process.
10         **MR. BOND:**  We have no objection to seriatim
11 briefs.
12         **MS. FRITZ:**  Yeah, makes perfect sense.
13         **THE COURT:**  Okay.  So April 14th, who will file on
14 the 14th, then?
15         **MR. BOND:**  June 14th.
16         **THE COURT:**  I'm sorry, June 14th.
17         **MR. BOND:**  Do you want to go first or last?
18         **MS. FRITZ:**  I'll do the filing on June 14th.
19         **MR. BOND:**  FDIC can respond on July 16th.
20         **MS. FRITZ:**  And the reply on August 5th.
21         **MR. BOND:**  And then the FDIC's reply to that would
22 be the end of August.
23         **MS. FRITZ:**  A surreply?
24         **MR. BOND:**  With seriatim briefing --
25         **THE COURT:**  So the way it works is that you're

1   going to file your motion for summary judgment on the 14th.
2   Then on the 16th, the FDIC will file an opposition and
3   cross-motion for summary judgment.  Then you will file a
4   reply in support of your motion for summary judgment.  And
5   then the FDIC gets a final reply in support of its
6   cross-motion.  So assuming there are cross-motions, that's
7   the way it would work.
8           **MR. BOND:**  That's right, your Honor.  So that
9   date, could we do August 27th?
10          **THE COURT:**  That's fine with me.
11          **MS. FRITZ:**  That's fine.
12          **THE COURT:**  All right, that works.  I take it that
13  the parties are sufficiently at impasse at this point that
14  it doesn't make sense while this is going on to discuss
15  things?  I mean, if the question is -- and obviously if
16  there's a substantive issue with respect to the application,
17  there's a substantive issue and we have to deal with that.
18          On the other hand, if it's just a procedural
19  question of whether the FDIC thinks the application has been
20  abandoned or thinks it's pending before it, that may be
21  something -- that sounds more conducive to the sort of thing
22  that could be worked out.
23          **MS. FRITZ:**  It's actually sort of a hybrid, your
24  Honor.  As I said, substantial information was provided on
25  behalf of Mrs. Hurry.  What the FDIC then requested and what

1  was not provided are some family trust documents, literally
2  Hurry family trust documents, that are confidential on the
3  one hand and not pertinent on the other hand.
4       For months, from our side we tried to suggest ways
5  to provide whatever information the FDIC might need from
6  those documents while at the same time making the argument
7  that certainly it doesn't need to know the Hurrys' and their
8  children's personal business. So we tried to come up with a
9  way to provide whatever information they needed. She agreed
10 to, for example, confirm that no trust would ever interact
11 with the bank in any capacity at any time. She agreed to
12 confirm certain positions that she held, resign from others
13 if they were at issue. So we did that for a number of
14 months. It was not successful.
15      When Mr. Bond and I started talking, I again
16 raised with Mr. Bond the issue of whether there wasn't a
17 more tailored way for the FDIC to get its information
18 without simply repeating that it wants all of the Hurry
19 family trust material.
20      **THE COURT:** And I take it that the family is
21 unwilling to turn that over even at the potential risk of
22 not having the transaction approved?
23      **MS. FRITZ:** The family has not been willing to
24 turn it over. As a matter of fact, according to the trust
25 counsel, those documents are confidential and cannot be

1     turned over by Mrs. Hurry; so can't be disclosed.

2         So at this point, that's why we were trying to
3     work with the trust attorney to provide whatever the
4     information was that the FDIC was seeking.

5         **MR. BOND:** I have a couple of points to add, your
6     Honor, if I may?

7         **THE COURT:** You may.

8         **MR. BOND:** This is a very straight forward, simple
9     case. Under 12 U.S.C. 1817(b), the FDIC is instructed to
10     evaluate the competence, experience, integrity and financial
11     ability of a potential acquirer of bank stock, you know,
12     conduct an investigation. This case really does turn on the
13     fact that the applicant, Ms. Hurry, apparently owns 46
14     different businesses through a series of trusts. And the
15     FDIC, in the course of its investigation, demanded those
16     underlying documents to assess the application. They're
17     unwilling to provide it, so there's an impasse.

18         The agency issued final agency action finding that
19     because the trust documentation was not provided, it was
20     abandoned. So this Court will just say whether or not the
21     FDIC acted in an arbitrary and capricious manner in finding
22     the application abandoned based on a failure to provide the
23     information.

24         **THE COURT:** Ms. Fritz, you're welcome to respond
25     to that if you'd like to.

1          **MS. FRITZ:** Actually, I don't disagree. As I
2  said, we tried -- in our view, there were any number of ways
3  that we proposed to provide the FDIC with precisely the
4  information that it said it needed given the reasons that
5  the information was sought. For example, it was concerned
6  about affiliated entities working with the bank. Every time
7  it articulated a purpose, we provided that information or a
8  representation that would make that concern virtually
9  irrelevant.
10         **THE COURT:** And is it not possible -- I mean, let
11 me ask a two-part question. Are the trust agreements
12 categorical in saying that the information cannot even be
13 disclosed to a regulator pursuant to a protective order or
14 something of that nature?
15         **MS. FRITZ:** That's correct, that's what I'm
16 advised by trust counsel.
17         **THE COURT:** And the other question I had is are
18 the trusts subject -- could they be modified in some respect
19 to address that concern? I'm just looking for ways to try
20 and expedite the issues here. I don't know what answer I'm
21 going to reach, but you're going to be probably close to a
22 year from now when you have all this briefed and you get an
23 answer. The answer might be the FDIC is right, and then
24 you're back to then saying okay, is there anything we can
25 do. It may be the FDIC is wrong in which case it's still

1    not an approval, and it just means that then they would move
2    forward with considerations.
3         So it's going to be a very -- for someone who
4    wants to purchase a bank, it's kind of hard for me to
5    believe that even the bank will be available for purchase
6    forever, and that there's some need to try and find some way
7    to get to a resolution of this as expeditiously as you can.
8         **MS. FRITZ:** Given -- if I could, our efforts, we
9    have gone to what we think are lengths to address as I said
10   every concern that the FDIC articulated.  As you'll see in
11   the complaint, it actually got to the point where the
12   requests or the continued demands really weren't even making
13   sense.  And so you'll see that we are concerned that there
14   are other things going on at the FDIC; that by virtue of the
15   fact, quite honestly, that Mrs. Hurry is a woman -- and
16   there were lots of requests that were leveled regarding her
17   husband, John Hurry.  So we objected to some of those
18   requests.
19        So there may or may not be something else going on
20   at the FDIC that we haven't been able to break through.  But
21   we certainly tried to offer up any representation, any
22   assurance that would be responsive to any concern that the
23   FDIC has that is causing it to seek the family trust
24   material.
25        **THE COURT:** Okay.  I'm obviously not deciding

1    anything today, I'm just encouraging you to do whatever you
2    can.  It sounds to me like you've done what you can with
3    respect to offering alternatives.  The FDIC has said no, we
4    want this and we need this.  So I'm just raising the issue
5    of whether -- if that's the case, whether you could, in a
6    process that I doubt would be terribly complicated, modify
7    the trust to simply say it could be disclosed to a
8    government regulator pursuant to a confidentiality
9    agreement.
10              **MS. FRITZ:**  I understand.
11              **THE COURT:**  I'm not deciding anything, I'm just
12   throwing out ideas that might help you to be able to move
13   forward with the transaction more expeditiously.
14              **MS. FRITZ:**  There are lots of problems that have
15   arisen with respect to these delays, and those will likely
16   also become an issue during the course of this proceeding.
17              **THE COURT:**  Okay.  Well, the schedule seems fine
18   to me.  Anything further you wanted to add today?
19              **MR. BOND:**  Just the confidentiality of a trust is
20   a matter of state law.  The FDIC is a federal regulator.
21   These requests pursuant to 1817 are just bread and butter of
22   what the FDIC does in terms of this.  Highly complex, global
23   banks submit living wills and highly confidential
24   market-moving information to the FDIC that could affect the
25   world economy, and so those documents are submitted to the

1   FDIC in its capacity as regulator and it analyzes those.
2   Certainly this trust documentation could be afforded very
3   sensitive protection by the agency.
4           **THE COURT:**  What is the venue provision that's
5   applicable here?  I guess is the venue here in this court
6   just because the FDIC is located here?
7           **MR. BOND:**  That's the basis, yes.
8           **THE COURT:**  And is this being handled out of the
9   D.C. office versus the regional office of the FDIC?
10          **MR. BOND:**  The determination was made by the
11  Kansas City regional office, but I'm litigating it and I'm
12  based here.
13          **THE COURT:**  That's fine.  If there were a venue
14  issue, that would be subject to waiver in any event.  As
15  long as you want to litigate it here, it doesn't seem to me
16  there's a venue question.
17          Anything further, then?
18          **MS. FRITZ:**  No, thank you.
19          **MR. BOND:**  No.
20          **THE COURT:**  All right, thank you.
21          (Proceedings adjourned at 11:20 a.m.)
22
23
24
25

# C E R T I F I C A T E

I, **Jeff M. Hook**, Official Court Reporter, certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

August 2, 2019

DATE

Jeff M. Hook

Case 1:18-cv-02435-RDM   Document 17-1   Filed 08/06/19   Page 14 of 16
10017 - example                                                                      13

**1**

10017 [1]   1/14
11:06 [1]   1/7
11:20 a.m [1]   11/21
12 [1]   7/9
12th [1]   1/14
14th [7]   3/24 4/13
 4/14 4/15 4/16 4/18
 5/1
16th [3]   3/24 4/19
 5/2
18-2435 [1]   2/2
1817 [2]   7/9 10/21
18th [2]   3/9 3/10
1919 [1]   1/16
1:18-cv-2435 [1]
 1/4

**2**

20001 [1]   1/25
20036 [1]   1/17
2019 [1]   1/5
22226 [1]   1/20
22nd [2]   3/11 3/14
2435 [2]   1/4 2/2
27th [1]   5/9

**3**

333 [1]   1/24
335 [1]   1/14
3501 [1]   1/20

**4**

46 [1]   7/13
4700-C [1]   1/24

**5**

5th [1]   4/20

**7**

700 [1]   1/16

**A**

a.m [2]   1/7 11/21
abandoned [5]   2/23
 3/7 5/20 7/20 7/22
abandonment [1]   3/6
ability [1]   7/11
able [2]   9/20 10/12
above [1]   12/5
above-entitled [1]
 12/5
according [1]   6/24
acquirer [1]   7/11
acquisition [1]
 2/19
act [1]   2/22
acted [1]   7/21
action [5]   1/3 2/2
 3/6 3/8 7/18
actually [4]   4/3
 5/23 8/1 9/11
add [2]   7/5 10/18
address [2]   8/19
 9/9
addressing [1]   4/4
adjourned [1]   11/21
administrative [1]
 3/10

advantage [1]   4/8
advised [1]   8/16
affect [1]   10/24
affiliated [1]   8/6
afforded [1]   11/2
again [1]   6/15
agency [5]   3/6 3/7
 7/18 7/18 11/3
agreed [2]   6/9 6/11
agreement [1]   10/9
agreements [1]   8/11
al [2]   1/6 2/3
alternatives [1]
 10/3
amend [1]   3/8
analyzes [1]   11/1
apparently [1]   7/13
APPEARANCES [1]
 1/12
applicable [1]   11/5
applicant [1]   7/13
application [6]
 2/22 3/7 5/16 5/19
 7/16 7/22
approach [1]   2/4
approval [1]   9/1
approved [1]   6/22
April [3]   3/11 3/14
 4/13
April 14th [1]   4/13
April 22nd [2]   3/11
 3/14
arbitrary [1]   7/21
argument [1]   6/6
arisen [1]   10/15
Arlington [1]   1/20
articulated [2]   8/7
 9/10
assertion [1]   3/8
assess [1]   7/16
associated [1]   2/18
assuming [1]   5/6
assurance [1]   9/22
attorney [1]   7/3
August [3]   4/20
 4/22 5/9
August 27th [1]   5/9
August 5th [1]   4/20
available [1]   9/5
Avenue [2]   1/14
 1/24

**B**

back [1]   8/24
background [1]   2/18
bank [6]   2/15 6/11
 7/11 8/6 9/4 9/5
Bankruptcy [1]   1/23
banks [1]   10/23
based [3]   3/8 7/22
 11/12
basis [1]   11/7
become [1]   10/16
behalf [2]   2/10
 5/25
boats [1]   4/2
bogged [1]   2/20
BOND [6]   1/18 2/9
 2/12 2/25 6/15 6/16
both [1]   2/8

bread [1]   10/21
break [1]   9/20
briefed [1]   8/22
briefing [2]   4/1
 4/24
briefs [1]   4/11
business [1]   6/8
businesses [1]   7/14
butter [1]   10/21
buy [1]   2/15

**C**

can [6]   3/25 4/19
 8/24 9/7 10/2 10/2
capacity [3]   2/11
 6/11 11/1
capricious [1]   7/21
case [5]   2/14 7/9
 7/12 8/25 10/5
categorical [1]
 8/12
causing [1]   9/23
certain [1]   6/12
certainly [3]   6/7
 9/21 11/2
certify [1]   12/4
change [1]   2/16
children's [1]   6/8
City [1]   11/11
Civil [2]   1/3 2/2
claim [1]   3/7
close [1]   8/21
COLUMBIA [1]   1/1
competence [1]   7/10
complaint [2]   2/20
 9/11
complex [1]   10/22
complicated [1]
 10/6
concern [4]   8/8
 8/19 9/10 9/22
concerned [2]   8/5
 9/13
conducive [1]   5/21
conduct [1]   7/12
CONFERENCE [1]   1/9
confidential [3]
 6/2 6/25 10/23
confidentiality [2]
 10/8 10/19
confirm [2]   6/10
 6/12
considerations [1]
 9/2
constituted [1]   3/7
Constitution [1]
 1/24
contents [9]   3/12
 3/14 3/15 3/16 3/17
 3/18 3/19 3/20 3/21
continued [1]   9/12
control [1]   2/16
conversations [1]
 2/24
Corp [1]   1/19
corporate [2]   1/19
 2/11
CORPORATION [3]   1/6
 2/3 2/10
counsel [3]   2/4

6/25 8/16
couple [1]   7/5
course [3]   2/21
 7/15 10/16
court [6]   1/1 1/23
 3/1 7/20 11/5 12/3
Courts [1]   1/23
cross [3]   5/3 5/6
 5/6
cross-motion [2]
 5/3 5/6
cross-motions [1]
 5/6
cv [1]   1/4

**D**

D.C [1]   11/9
date [2]   5/9 12/10
DC [3]   1/5 1/17
 1/25
deal [1]   5/17
deciding [2]   9/25
 10/11
declared [1]   2/22
Defendants [2]   1/7
 1/18
delays [1]   10/15
demanded [1]   7/15
demands [1]   9/12
DEPOSIT [4]   1/6
 1/19 2/3 2/10
determination [1]
 11/10
different [1]   7/14
directly [1]   4/3
disagree [1]   8/1
disclosed [3]   7/1
 8/13 10/7
discuss [1]   5/14
discussed [1]   3/4
DISTRICT [4]   1/1
 1/1 1/10 1/23
documentation [2]
 7/19 11/2
documents [6]   6/1
 6/2 6/6 6/25 7/16
 10/25
done [1]   10/2
doubt [1]   10/6
down [1]   2/21
Drive [1]   1/20
during [1]   10/16

**E**

economy [1]   10/25
efforts [1]   9/8
else [1]   9/19
encouraging [1]
 10/1
end [2]   4/2 4/22
entities [1]   8/6
entitled [1]   12/5
equally [1]   4/9
ERIK [2]   1/18 2/9
et [2]   1/6 2/3
evaluate [1]   7/10
even [4]   6/21 8/12
 9/5 9/12
event [1]   11/14
example [2]   6/10

**E**
example... [1]   8/5
expedite [1]   8/20
expeditiously [2]
 9/7 10/13
experience [1]   7/10

**F**
fact [4]   3/6 6/24
 7/13 9/15
failed [1]   2/21
failure [1]   7/22
Fairfax [1]   1/20
family [6]   6/1 6/2
 6/19 6/20 6/23 9/23
FDIC [28]
FDIC's [1]   4/21
February [2]   1/5
 3/9
February 18th [1]
 3/9
federal [5]   1/6
 1/19 2/3 2/10 10/20
few [1]   4/5
file [5]   3/20 4/13
 5/1 5/2 5/3
filed [1]   3/23
filing [2]   3/14
 4/18
filings [1]   3/2
final [3]   3/7 5/5
 7/18
financial [1]   7/10
find [3]   3/25 4/6
 9/6
finding [2]   7/18
 7/21
fine [6]   3/22 4/6
 5/10 5/11 10/17
 11/13
first [4]   3/4 4/7
 4/8 4/17
Floor [1]   1/14
foregoing [1]   12/4
forever [1]   9/6
forward [3]   7/8 9/2
 10/13
FRITZ [4]   1/13 2/6
 2/12 7/24
further [2]   10/18
 11/17

**G**
gets [2]   4/8 5/5
given [2]   8/4 9/8
global [1]   10/22
goes [1]   4/7
Good [4]   2/6 2/8
 2/9 2/12
government [1]   10/8
guess [1]   11/5

**H**
hand [3]   5/18 6/3
 6/3
handled [1]   11/8
hard [1]   9/4
held [1]   6/12
help [1]   10/12

helpful [2]   4/1 4/7
highly [2]   10/22
 10/23
Hine [3]   1/13 1/16
 2/7
honestly [1]   9/15
Honor [4]   2/9 5/8
 5/24 7/6
HONORABLE [1]   1/10
HOOK [3]   1/22 12/3
 12/10
HURRY [11]   1/3 2/2
 2/7 2/15 5/25 6/2
 6/18 7/1 7/13 9/15
 9/17
Hurrys' [1]   6/7
husband [1]   9/17
hybrid [1]   5/23

**I**
ideas [1]   10/12
identify [1]   2/4
impasse [2]   5/13
 7/17
impermissible [1]
 2/24
inappropriate [1]
 2/24
included [1]   2/16
information [11]
 5/24 6/5 6/9 6/17
 7/4 7/23 8/4 8/5
 8/7 8/12 10/24
INITIAL [1]   1/9
instance [1]   3/4
instructed [1]   7/9
INSURANCE [4]   1/6
 1/19 2/3 2/10
integrity [1]   7/10
intend [1]   3/8
interact [1]   6/10
investigation [2]
 7/12 7/15
irrelevant [1]   8/9
issue [7]   5/16 5/17
 6/13 6/16 10/4
 10/16 11/14
issued [1]   7/18
issues [2]   4/4 8/20

**J**
JEFF [3]   1/22 12/3
 12/10
John [1]   9/17
JOSEPH [2]   1/15 2/7
JUDGE [1]   1/10
judgment [3]   5/1
 5/3 5/4
July [2]   3/24 4/19
July 16th [2]   3/24
 4/19
June [4]   3/24 4/15
 4/16 4/18
June 14th [2]   3/24
 4/18
JUSTINE [4]   1/3 2/2
 2/7 2/14

**K**
Kansas [1]   11/11

kind [1]   9/4

**L**
last [2]   4/9 4/17
law [1]   10/20
lengths [1]   9/9
less [1]   4/1
leveled [1]   9/16
likely [1]   10/15
list [2]   3/17 3/21
literally [1]   6/1
litigate [1]   11/15
litigating [1]
 11/11
Litigation [1]   1/19
living [1]   10/23
LLP [2]   1/13 1/16
local [2]   3/13 3/13
located [1]   11/6
long [1]   11/15
looking [1]   8/19
lots [2]   9/16 10/14

**M**
Madison [1]   1/14
maintain [1]   2/23
makes [2]   3/19 4/12
making [2]   6/6 9/12
manner [1]   7/21
MARANDA [2]   1/13
 2/6
March [1]   3/10
March 18th [1]   3/10
market [1]   10/24
market-moving [1]
 10/24
material [3]   2/17
 6/19 9/24
matter [3]   6/24
 10/20 12/5
may [6]   5/20 7/6
 7/7 8/25 9/19 9/19
mean [3]   3/15 5/15
 8/10
means [1]   9/1
might [3]   6/5 8/23
 10/12
minutes [1]   4/5
modified [1]   8/18
modify [1]   10/6
months [2]   6/4 6/14
more [4]   4/7 5/21
 6/17 10/13
morning [4]   2/6 2/8
 2/9 2/12
MOSS [1]   1/10
motion [4]   5/1 5/3
 5/4 5/6
motions [2]   3/23
 5/6
move [2]   9/1 10/12
moving [1]   10/24
Mr. [4]   2/12 2/25
 6/15 6/16
Mr. Bond [4]   2/12
 2/25 6/15 6/16
Mrs. [3]   5/25 7/1
 9/15
Mrs. Hurry [3]   5/25
 7/1 9/15

Ms. [3]   2/12 7/13
 7/24
Ms. Fritz [2]   2/12
 7/24
Ms. Hurry [1]   7/13

**N**
nature [1]   8/14
need [4]   6/5 6/7
 9/6 10/4
needed [2]   6/9 8/4
New [1]   1/14
night [1]   4/3
notice [1]   2/15
number [2]   6/13 8/2
NW [2]   1/16 1/24
NY [1]   1/14

**O**
objected [1]   9/17
objection [1]   4/10
obviously [3]   2/23
 5/15 9/25
off [1]   2/13
offer [1]   9/21
offering [1]   10/3
office [3]   11/9
 11/9 11/11
official [2]   1/23
 12/3
often [1]   4/1
one [2]   4/7 6/3
opposition [1]   5/2
order [1]   8/13
other's [1]   4/4
others [1]   6/12
out [4]   4/9 5/22
 10/12 11/8
over [4]   2/21 6/21
 6/24 7/1
owns [1]   7/13

**P**
part [1]   8/11
parties [1]   5/13
party [2]   4/7 4/8
passing [1]   4/2
pause [1]   3/25
pending [1]   5/20
perfect [1]   4/12
personal [1]   6/8
perspective [2]   4/5
 4/6
pertinent [1]   6/3
Plaintiff [2]   1/4
 1/13
pleadings [2]   3/1
 3/9
please [1]   2/4
podium [1]   2/4
point [3]   5/13 7/2
 9/11
points [1]   7/5
position [1]   3/5
positions [1]   6/12
possible [1]   8/10
potential [2]   6/21
 7/11
precisely [1]   8/3
pretty [1]   4/9

| P | 8/23 11/20 | terribly [1] 10/6 | wrong [1] 8/25 |
|---|---|---|---|
| probably [1] 8/21 | risk [1] 6/21 | Thompson [3] 1/13 | **Y** |
| problems [1] 10/14 | Room [1] 1/24 | 1/16 2/7 | year [2] 2/21 8/22 |
| procedural [1] 5/18 | rules [2] 3/13 3/13 | throwing [1] 10/12 | York [1] 1/14 |
| proceeding [1] 10/16 | **S** | today [2] 10/1 10/18 | |
| proceedings [2] 11/21 12/5 | same [1] 6/6 | took [1] 3/5 | |
| process [5] 2/16 2/16 2/20 4/9 10/6 | saying [2] 8/12 8/24 | trains [1] 4/2 | |
| production [1] 2/17 | schedule [2] 2/25 10/17 | transaction [2] 6/22 10/13 | |
| propose [1] 3/1 | SCHEDULING [1] 1/9 | transcript [2] 1/9 12/4 | |
| proposed [1] 8/3 | seek [1] 9/23 | tried [4] 6/4 6/8 8/2 9/21 | |
| protection [1] 11/3 | seeking [1] 7/4 | true [1] 12/4 | |
| protective [1] 8/13 | seem [1] 11/15 | trust [13] | |
| provide [6] 6/5 6/9 7/3 7/17 7/22 8/3 | seems [1] 10/17 | trusts [2] 7/14 8/18 | |
| provided [4] 5/24 6/1 7/19 8/7 | sense [3] 4/12 5/14 9/13 | try [2] 8/19 9/6 | |
| provision [1] 11/4 | sensitive [1] 11/3 | trying [1] 7/2 | |
| purchase [2] 9/4 9/5 | seriatim [3] 4/2 4/10 4/24 | turn [3] 6/21 6/24 7/12 | |
| purpose [1] 8/7 | series [1] 7/14 | turned [1] 7/1 | |
| pursuant [4] 3/13 8/13 10/8 10/21 | side [1] 6/4 | two [1] 8/11 | |
| | simple [1] 7/8 | two-part [1] 8/11 | |
| **Q** | simply [2] 6/18 10/7 | **U** | |
| qualifications [1] 2/18 | simultaneous [1] 4/1 | U.S [1] 1/23 | |
| quite [1] 9/15 | SMITH [2] 1/15 2/7 | U.S.C [1] 7/9 | |
| **R** | someone [1] 9/3 | ultimately [2] 2/21 2/22 | |
| raised [1] 6/16 | sorry [1] 4/16 | under [2] 3/12 7/9 | |
| raising [1] 10/4 | sort [2] 5/21 5/23 | underlying [1] 7/16 | |
| RANDOLPH [1] 1/10 | sought [2] 2/15 8/5 | Unit [1] 1/19 | |
| reach [1] 8/21 | sound [1] 3/19 | UNITED [2] 1/1 1/10 | |
| really [2] 7/12 9/12 | sounds [2] 5/21 10/2 | unwilling [2] 6/21 7/17 | |
| reasons [2] 2/23 8/4 | start [1] 2/13 | up [3] 4/2 6/8 9/21 | |
| record [5] 2/5 3/11 3/12 3/14 12/5 | started [1] 6/15 | **V** | |
| reflected [1] 2/20 | state [1] 10/20 | VA [1] 1/20 | |
| regarding [1] 9/16 | STATES [2] 1/1 1/10 | venue [4] 11/4 11/5 11/13 11/16 | |
| regional [2] 11/9 11/11 | still [1] 8/25 | versus [2] 2/3 11/9 | |
| regulator [4] 8/13 10/8 10/20 11/1 | stock [1] 7/11 | view [1] 8/2 | |
| repeating [1] 6/18 | straight [1] 7/8 | virtually [1] 8/8 | |
| reply [4] 4/20 4/21 5/4 5/5 | Street [1] 1/16 | virtue [1] 9/14 | |
| Reported [1] 1/22 | subject [2] 8/18 11/14 | volumes [1] 2/17 | |
| Reporter [2] 1/23 12/3 | submit [2] 3/10 10/23 | **W** | |
| representation [2] 8/8 9/21 | submitted [1] 10/25 | waiver [1] 11/14 | |
| requested [1] 5/25 | substantial [2] 2/17 5/24 | wants [2] 6/18 9/4 | |
| requests [4] 9/12 9/16 9/18 10/21 | substantive [2] 5/16 5/17 | Washington [3] 1/5 1/17 1/25 | |
| resign [1] 6/12 | successful [1] 6/14 | way [5] 4/25 5/7 6/9 6/17 9/6 | |
| resolution [1] 9/7 | sufficiently [1] 5/13 | ways [3] 6/4 8/2 8/19 | |
| respect [6] 2/17 3/5 5/16 8/18 10/3 10/15 | suggest [1] 6/4 | welcome [1] 7/24 | |
| respond [2] 4/19 7/24 | Suite [1] 1/16 | weren't [1] 9/12 | |
| Responses [1] 3/24 | summary [3] 5/1 5/3 5/4 | whole [1] 3/20 | |
| responsive [1] 9/22 | support [2] 5/4 5/5 | willing [1] 6/23 | |
| right [4] 5/8 5/12 | Sure [1] 2/14 | wills [1] 10/23 | |
| | surreply [1] 4/23 | without [1] 6/18 | |
| | **T** | woman [1] 9/15 | |
| | table [2] 3/15 3/17 | work [2] 5/7 7/3 | |
| | tailored [1] 6/17 | worked [1] 5/22 | |
| | talk [1] 4/5 | working [1] 8/6 | |
| | talking [1] 6/15 | works [2] 4/25 5/12 | |
| | terms [2] 3/1 10/22 | world [1] 10/25 | |