**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUSTINE HURRY,<br><br>   *Plaintiff*,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>   *Defendant*. | Civil Action No. 18-2435 (RDM) |

## MEMORANDUM OPINION AND ORDER

  The Change in Bank Control Act of 1978 ("CBCA"), 12 U.S.C. § 1817(j), prohibits a person from acquiring a controlling interest in a bank unless the relevant federal banking agency has been given sixty days prior written notice.  Subject to certain limited extensions, after an agency receives a CBCA notice, it has sixty days to investigate, *inter alia*, the proposed acquirer's "competence, experience, integrity, and financial ability," 12 U.S.C. § 1817(j)(2)(B)(i); *id.* § 1817(j)(1), and it may disapprove the proposed acquisition if, among other things, the "acquiring person neglects, fails, or refuses to furnish the [agency] all the information [it] require[s]," *id.* §1817(j)(7)(E).  Plaintiff Justine Hurry alleges that the period for disapproval with respect to a notice she submitted in November 2017 has long since passed, but the Federal Deposit Insurance Corporation ("FDIC") has unlawfully withheld its final determination.  Dkt. 1.  She asserts a single count under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and 12 U.S.C. § 1817(j), for "agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  As for relief, she requests that the Court (1) declare that the agency "has unreasonably delayed rendering a decision concerning [her]

Notice of Change in Control;" (2) declare "that the FDIC's failure to disapprove the transaction in accordance with its procedures and applicable law enables [her] to proceed with the transaction;" and (3) issue "an injunction compelling the FDIC to take action promptly with respect to [her] Notice of Change in Control, confirming that the transaction may proceed or stating its purported basis for disapproving the transaction." Dkt. 1 at 21 (Prayer for Relief).

The FDIC moves to dismiss Hurry's complaint as moot, arguing that it has acted on the notice and thus "agency actions" have not been "unlawfully withheld." Dkt. 14. According to the FDIC, although it has neither disapproved the transaction nor allowed the statutory clock to run out, thereby permitting the transaction to proceed, it has taken a final agency action—it closed Hurry's application pursuant to 12 C.F.R. § 303.11(e) on the ground that Hurry had "failed to furnish [the agency] with all the information needed to complete a review of her competence, experience, integrity, and financial ability pursuant to 12 U.S.C. § 1817(j)." Dkt. 1-14 at 2. In the FDIC's view, that determination constituted "final agency action" and, thus, there is no need—or basis—for the Court to order that the agency act on Hurry's notice. Dkt. 14 at 5–6. The FDIC also moves to dismiss for failure to prosecute because Hurry failed to comply with the Court-issued deadlines for her to amend her complaint and to move for summary judgment. *Id.* at 7–9.

For the reasons explained below, the Court will **DENY** the FDIC's motion to dismiss without prejudice.

## I. BACKGROUND

**A.     The Change in Bank Control Act of 1978**

Under the Change in Bank Control Act of 1978, Pub. L. No. 95-630, 92 Stat. 3683 (codified as amended at 12 U.S.C. §1817(j)), a person (either acting individually or in concert

with others) may not "acquire control of any insured depository institution" unless "the appropriate Federal banking agency," here, the FDIC, "has been given sixty days' prior written notice of [the] proposed acquisition and within that time period the agency has not issued a notice disapproving the proposed acquisition," 12 U.S.C. 1817(j)(1). A notice filed under the CBCA must contain, among other things, information about the "identity, personal history, business background, and experience of each person" acquiring the bank, "including [her] material business activities and affiliations during the past five years," *id.* § 1817(j)(6)(A).

Upon receiving a notice, the CBCA requires the FDIC to investigate "the competence, experience, integrity, and financial ability of" the applicant and to "make an independent determination of the accuracy and completeness of [the] information" the applicant submitted. *Id.* § 1817(j)(2)(B). After conducting its investigation, the FDIC "may disapprove any proposed acquisition" for several statutorily enumerated reasons, including, as relevant here, because the applicant "neglect[ed], fail[ed], or refuse[ed] to furnish the [agency] all the information [it] required." *Id.* § 1817(j)(7)(E). Any notice of disapproval must be issued within sixty days after the FDIC has received the notice of proposed acquisition, *see id.* § 1817(j)(1), although the FDIC may, in its discretion, extend the "period for disapproval" an "additional 30 days," *id.* After the initial extended 90-day period, the FDIC may extend the "period for disapproval" again, but only "2 additional times not for more than 45 days each," and only if: (1) the agency determines that "any acquiring party has not furnished all the information required" by the statute; (2) in the agency's judgment, "any material information submitted is substantially inaccurate;" (3) the "agency has been unable to complete the investigation . . . because of any delay caused by, or the inadequate cooperation of, [the] acquiring party;" or (4) "the agency determines that more time is needed" to investigate or analyze certain aspects of the application. *Id.*

Under the CBCA, the issuance of a notice of disapproval triggers an administrative and judicial appeals process. If the FDIC disapproves a proposed acquisition, "[w]ithin three days" of its "decision to disapprove," it must "notify the acquiring party in writing of the disapproval" and must "provide a statement of the basis for the disapproval." 12 U.S.C. § 1817(j)(3); *see also* 12 C.F.R. § 308.112(a)(2)(ii) (requiring that a notice of disapproval inform the applicant that "a hearing may be requested . . . within ten days"). "Within ten days of receipt of such notice of disapproval," the acquiring party may then "request an agency hearing on the proposed acquisition." 12 U.S.C. § 1817(j)(4). If the person's "proposed acquisition is disapproved after agency hearings," then the person "may obtain review by" the U.S. court of appeals in which the home office of the bank to be acquired is located or in the D.C. Circuit, which may set aside the agency's decision "if found to be arbitrary or capricious or if found to violate the procedures established by the [CBCA]." *Id.* § 1817(j)(5).

**B.     Factual and Procedural Background**

For purposes of the pending motion to dismiss, the Court will assume the truth of the following facts, which are taken from Plaintiff's complaint and the documents attached to it. *See Maybank v. Speer*, 251 F. Supp. 3d 204, 205–06 (D.D.C. 2017); *see also Indian River Cty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C. 2017).

This action stems from Plaintiff Justine Hurry's efforts to acquire a "majority of the common shares" of "The Bank of Orrick, Missouri" (the "Bank"). Dkt. 1 at 2 (Compl. ¶ 1). On November 14, 2017, Hurry submitted a notice to the FDIC indicating that she intended to acquire control of the Bank. *See id.* (Compl. ¶ 2); Dkt. 15 at 7. The notice (also referred to by the parties as the "file" or "application") included an "Interagency Notice of Change in Control" form and an "Interagency Biographical and Financial Report." *See, e.g.*, Dkt. 1-6 at 2; Dkt. 1-1

at 2.  Together, her submission provided the FDIC with information about her background and experience and relevant financial statements, and it disclosed the funds she planned on using to complete the acquisition.  *See* Dkt. 1 at 6 (Compl. ¶ 19); *see also* Dkt. 1-1 (Hurry's Redacted Interagency Notice of Change in Control); Dkt. 1-2 (Hurry's Redacted Interagency Biographical and Financial Report).

After Hurry submitted her notice, the FDIC "sent [her] a response raising questions about the structure of the acquisition and whether the available funds were sufficient, the source of available funds, the extent of [] Hurry's role in the Bank, . . . and numerous other questions concerning business plans and financial projections for the Bank itself."  Dkt. 1 at 7–8 (Compl. ¶ 22).  In response, Hurry updated her forms, and, on December 21, 2017, she notified the FDIC by letter "how [her] updated application addressed the [agency's] questions."  *Id.* at 8 (Compl. ¶ 23); Dkt. 1-3.  On January 12, 2018, the FDIC notified Hurry that it was "returning [her] [updated] [n]otice" because it was "incomplete and insufficient for the FDIC's consideration." Dkt. 1-4 at 2.  The letter also outlined the information Hurry's application should contain and cautioned her that the FDIC "may disapprove a [n]otice, if among other things, the acquirer neglects, fails, or refuses to furnish to the FDIC all information required by the FDIC."  *Id.*  This cycle then repeated itself several times over the following months: Hurry allegedly updated her application and submitted additional documentation, *see* Dkt. 1-6 at 2 (Mar. 23, 2018); Dkt. 1-7 at 2 (Mar. 30, 2018); Dkt. 1-9 at 2 (June 22, 2018); Dkt. 1-10 (July 2, 2018), but each time the FDIC deemed the response insufficient and requested additional information, *see* Dkt. 1-11 at 2 (discussing the back-and-forth).

In light of the parties' impasse, on July 24, 2018, the FDIC notified Hurry that it was "returning [her] filing as incomplete" because she "failed to furnish" information the agency had

5

requested on "numerous occasions, both in writing and verbally." Dkt. 1-11 at 2. Hurry responded by requesting that the agency instead "make a final decision on [her] notice," stating that "the time for the FDIC to disapprove the notice" had "passed many months ago" and that the FDIC's failure to render a final decision deprived her of her statutory rights to an administrative appeal, and, ultimately, an appeal to a U.S. court of appeals. Dkt. 1-12 at 2–3. She clarified, moreover, that, although her "position is that the FDIC has all information necessary to make a decision," the agency could disapprove her notice on "the statutory grounds [that] . . . [she] [failed] to furnish all of the required information." *Id.* at 3 n.1 (citing 12 U.S.C. § 1817(j)(7)(E)). On September 19, 2018, the FDIC responded to this request. Dkt. 1-14 at 2. Instead of issuing a notice of disapproval or a notice of its intent not to disapprove the acquisition, the FDIC informed Hurry that her "file had been closed pursuant to 12 C.F.R. 303.11(e)" and that, if she chose to, she could "again submit a [n]otice." *Id.*

The next month, Hurry initiated this suit. Dkt. 1. Because, in her view, she "has provided [the FDIC] all relevant information" and because the FDIC "has identified no basis for disapproval," she "seeks an order compelling the FDIC to confirm that it did not disapprove the transaction . . . and that [she] may proceed" with her acquisition. *Id.* at 2–3 (Compl. ¶ 5). "In the alternative, [she] seeks an order compelling the FDIC to issue a decision articulating the purported basis for its actions so that adjudication of this matter can proceed." *Id.* After an initial scheduling conference, the Court entered an order setting a deadline for the filing of amended pleadings (February 18, 2019) and setting a deadline for Hurry to file a motion for summary judgment (June 14, 2019) and for the FDIC to cross-move for summary judgment (July 16, 2019). *See* Minute Entry (Feb. 4, 2019). After the deadline for Hurry to amend her

6

complaint and to file her motion for summary judgment passed with no action by Hurry, the FDIC moved to dismiss her complaint. Dkt. 14.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  A motion to dismiss for mootness is properly brought under Rule 12(b)(1) because mootness deprives the court of jurisdiction. *See DL v. District of Columbia*, 187 F. Supp. 3d 1, 5 (D.D.C. 2016). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)).  A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Larsen v. U.S. Navy*, 525 F.3d 1, 3–4 (D.C. Cir. 2008) (internal quotation omitted).  A party lacks a legally cognizable interest in the outcome of a case "when, among other things, the court can provide no effective remedy because a party has already obtained all the relief it has sought," *Conservation Force, Inc.*, 733 F.3d at 1204 (internal quotation marks omitted), or "when intervening events make it impossible to grant the prevailing party effective relief," *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008*); see also Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (noting that a case is moot when "there is nothing for [the court] to remedy, even if [it] were disposed to do so").  The "heavy burden" of establishing mootness rests on the party raising the defense. *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 458–59 (D.C. Cir. 1998).

The FDIC also moves to dismiss for failure to prosecute. Local Civil Rule 83.23 provides that "[a] dismissal for failure to prosecute may be ordered by the Court upon motion by

an adverse party, or upon the Court's own motion." "This rule 'essentially embodies the standard of Rule 41(b) of the Federal Rules of Civil Procedure, which allows a district court to dismiss an action for failure to prosecute.'" *Cartagena v. Centerpoint Nine, Inc.*, 303 F.R.D. 109, 112 (D.D.C. 2014) (quotations and citations omitted). Although a "lengthy period of inactivity may . . . be enough to justify dismissal under Rule 41(b)," *id.*, the D.C. Circuit has cautioned that dismissal is a "harsh sanction and should be resorted to only in extreme cases," *Camps v. C & P Tel. Co.*, 692 F.2d 120, 124 (D.C. Cir. 1981); *see also Guy v. Vilsack*, 293 F.R.D. 8, 11 (D.D.C. 2013) (quoting same). "Considerations relevant to ascertaining when dismissal, rather than a milder disciplinary measure, is warranted include the effect of a plaintiff's dilatory or contumacious conduct on the court's docket, whether the plaintiff's behavior has prejudiced the defendant, and whether deterrence is necessary to protect the integrity of the judicial system." *Guy*, 293 F.R.D. at 11 (quoting *Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990)).

### III.  ANALYSIS

**A.     Mootness**

Hurry alleges that the FDIC has unreasonably and unlawfully failed to render a decision on her notice within the period prescribed by the CBCA. *See* Dkt. 1 at 18–20 (Compl. ¶¶ 59–71). In moving to dismiss Hurry's complaint, the FDIC does not argue that Hurry's claim fails to state a claim under 5 U.S.C. § 706(1). *Cf. Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("*SUWA*"); *El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 890 (D.C. Cir. 2014) (discussing the two-part test *SUWA* established for "failure to act" claims under § 706(1)). Instead, the FDIC argues only that Hurry's request for relief is moot because it has already taken final agency action by closing her file. According to the FDIC, this means that there is no further

relief for the Court to grant; in other words, there is no reason to compel agency action because the agency has acted. *See* Dkt. 14 at 2–3.  As the FDIC puts it, "this case has been moot from its outset [because] the FDIC . . . issued [its final agency action] well before . . . Hurry filed her complaint." *Id.* at 6.

The Court is not persuaded that the case is moot.  The mootness doctrine encompasses those "circumstances that destroy the justiciability of a suit previously suitable for determination." 13B Wright & Miller, Fed. Prac. & Proc. Juris. § 3533 (3d ed. Apr. 2020 Update).  Here, however, the FDIC does not posit that there are circumstances, beyond the merits of Hurry's claim, that preclude the Court from granting meaningful relief.  It does not contend, for example, that Hurry is no longer seeking to acquire control of the Bank or that there has been some other development that has rendered the merits of this case "simply a matter of academic debate." *Chafin v. Chafin*, 568 U.S. 165, 176 (2013) (quotation omitted).  Instead, the FDIC's mootness argument is premised on the contention that there is no relief for the Court to grant because the agency has already taken a final agency action.  *See* Dkt. 14 at 6.  The problem with that argument is that it goes directly to the merits of Hurry's claim; indeed, the central premise of Hurry's claim is that the agency has *not* taken the action that it was required by law to take.  *See* Dkt. 1 at 21 (Prayer for Relief ¶ 1).  The FDIC might disagree and might take the view that it has the legal authority to treat an inadequately supported notice as a nullity, but Hurry disagrees, and the question whether the FDIC or Hurry is right is inextricably intertwined with the merits.

In assessing mootness at the pleading stage, a court must assume that the plaintiff will "prevail on the merits." *Boose v. District of Columbia*, 786 F.3d 1054, 1058 (D.C. Cir. 2015); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not

implicate subject-matter jurisdiction."); *Gates v. Towery*, 430 F.3d 429, 432 (7th Cir. 2005) ("A bad theory (whether of liability or of damages) does not undermine federal jurisdiction."). In the present context, that means that the Court must assume that banking agencies cannot avoid the CBCA's 60-day clock for disapproving a notice—or allowing the proposed transaction to proceed—by closing a file that the agency deems incomplete. In short, the agency has "confuse[d] mootness with the merits." *Chafin*, 568 U.S. at 174.

That confusion, however, is understandable because the parties' respective positions on the merits are ill-defined as the record now stands. Hurry, for her part, has brought suit under 5 U.S.C. § 706(1), which provides a cause of action for "agency action withheld or unreasonably delayed." The oddity of that approach is that 12 U.S.C. § 1817(j) does not require any agency action; the agency is authorized only to *disapprove* the transaction in the allotted time. Hurry's request for declaratory relief might be on firmer ground, but it still fails to join issue with what the agency did—it "returned the Notice as incomplete" on the ground that Hurry had "failed to furnish the [agency] with all the information needed to complete a review of competence, experience, integrity, and financial ability pursuant to 12 U.S.C. § 1817(j)." Dkt. 1-14. The agency then "closed" the file "pursuant to 12 C.F.R. § 303.11(e). *Id.* That regulation, in turn, specifies:

> To the extent necessary to evaluate a filing, the FDIC may require an applicant to provide additional information. If information requested by the FDIC is not provided within the time specified by the agency, the FDIC may deem the filing abandoned and shall provide written notification to the applicant and any interested parties that submitted comments to the FDIC that the file has been closed.

12 C.F.R. § 303.11(e). The FDIC acknowledges, moreover, that its decision to treat a notice as incomplete and to close the file on that ground constitutes final agency action reviewable under

the APA. *See* Dkt. 14 at 5 (citing *Friedman v. Fed. Aviation Admin.*, 841 F.3d 537, 542–43 (D.C. Cir. 2016)).

If Hurry were to concede that the FDIC acted within its authority in closing the file, the FDIC might be right that the Court lacks jurisdiction; the case might not be moot (because circumstances have not changed in a manner that deprives the Court of jurisdiction over a previously justiciable matter), but it is unclear that Hurry would have standing to sue. That is, if the FDIC lawfully declined to accept the notice, and if that decision was sufficient to end the matter that was before the agency, it is unclear how Hurry could have suffered a cognizable injury in fact based on the FDIC's failure to act on what is, in essence, a non-existent notice, and it unclear how the Court could issue meaningful relief relating to that non-existent notice.

Although Hurry is not clear about the theory of her claim, construing the complaint in the light most favorable to the Plaintiff at this early stage of the proceeding, the Court must assume that Hurry disputes the FDIC's contention that it is authorized to reject a notice as incomplete, rather than denying the notice on the ground that it is inadequately supported. *See* Dkt. 1 at 16–17 (Compl. ¶¶ 41–51) (alleging that, upon receiving a notice, a banking agency has only a limited time to either disapprove or approve the proposed transaction); *compare* 12 C.F.R. § 303.86(a)–(b) (providing that the 60-day notice period does not commence until the FDIC has accepted a filing as "substantially complete") *with* 12 U.S.C. § 1817(j)(7)(E) (authorizing a banking agency to disapprove a proposed transaction if the "acquiring person neglects, fails, or refuses to furnish the . . . agency all the information" it requires). But, even liberally construed, Hurry's complaint (and her opposition brief) fails to address 12 U.S.C. § 1817(j)(6), which details what a notice filed under that subsection must "contain" and includes information regarding the acquirer's "material business activities and affiliations." Nor does her complaint

11

challenge the lawfulness of 12 C.F.R. § 303.86(b), which provides that the 60-day notice period does not begin to run until "after the date of acceptance of a substantially complete notice." If the FDIC concluded that Hurry's application failed to include the statutorily-required information and was thus never accepted as "substantially complete," Hurry needs to explain why the agency erred.

The FDIC, for its part, does not hang its hat—at least at this stage of the proceeding—on the statutory elements of a "notice" or on 12 C.F.R. § 303.86(b)(1). Indeed, although the administrative record reflects that the agency repeatedly parroted the language of § 303.86(b)(1) each time it instructed Hurry to furnish additional information in order for her "filing to be considered substantially complete," *see* Dkt. 1-4 at 2; Dkt. 1-8 at 2; Dkt. 1-11 at 2 (same), the FDIC's final decision closing the notice cited to a different regulation, *see* Dkt 1-14 at 2 (citing 12 C.F.R. § 303.11(e)), and § 303.11(e) does not clearly differentiate between applications that the agency deems "abandoned" because they are never accepted as substantially complete and those that are "abandoned" because the acquirer is insufficiently diligent in pursing an application that the agency has accepted.

More importantly, the FDIC does not meaningfully address the provision of the CBCA that lies at the heart of Hurry's challenge—12 U.S.C. § 1817(j)(7)(E). That provision authorizes the banking agency to "disapprove a proposed acquisition if . . . any acquiring person neglects, fails, or refuses to furnish the appropriate Federal banking agency all the information required by [that] agency." *Id.* The question then arises whether a banking agency that fails to receive "all the information needed to complete a review" under § 1817(j), must (1) disapprove the acquisition pursuant to § 1817(j)(7)(E), triggering the acquirer's right to further administrative and judicial review (in the U.S. courts of appeals); (2) issue a final decision under 12 C.F.R.

§ 303.11(e) and pursuant to 12 C.F.R. § 303.86(a) closing a file that was not "accepted as substantially complete," triggering the acquirer's right to bring an APA action in federal district court; (3) elect between these actions as the agency sees fit; or (4) elect between these actions based on an assessment of how deficient the notice is.

Until the parties further develop and explain their positions regarding these questions, the Court cannot determine whether Hurry has standing to sue (the close cousin of mootness) and cannot begin to assess who has the better of the arguments on the merits. The Court will, accordingly, deny the FDIC's motion to dismiss without prejudice and will direct that the parties file cross-motions for summary judgment—as the Court originally anticipated—addressing Hurry's standing to sue and the merits of her claim. The Court will issue a separate order setting a schedule for those motions.

**B.      Failure to Prosecute**

The Court will also deny the FDIC's motion to dismiss Hurry's claims for failure to prosecute. Although failure diligently to prosecute a case can justify dismissal under Rule 41(b) in "extreme cases," *Guy*, 293 F.R.D. at 11 (quoting *Camps*, 692 F.2d at 124), in an exercise of discretion, the Court will not adopt the "'harsh sanction of dismissal' just yet," *Cartagena*, 303 F.R.D. at 114 (quotation omitted). Three reasons support this conclusion. First, although it is troubling that Hurry missed her deadline to file a motion for summary judgment, *see* Minute Entry (Feb. 4, 2019), nothing kept the FDIC from filing its own motion for summary judgment, and there is no evidence that the agency suffered any prejudice due to Hurry's lapse. Second, the Court has yet to attempt "less dire alternatives;" rather, the pending motion is the first time the Court has addressed the missing of deadlines in this case. *Cartagena*, 303 F.R.D. at 114. Third,

Hurry timely responded to the FDIC's motion to dismiss and has not engaged in a pattern of ignoring Court-ordered deadlines.

The Court, accordingly, is unpersuaded that the "harsh sanction" of dismissal is "necessary to protect the integrity of the judicial system." *Guy*, 293 F.R.D. at 11.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's motion to dismiss, Dkt. 13, is **DENIED** without prejudice.

**SO ORDERED**.

    /s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  May 31, 2020.