## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JUSTINE HURRY**
7170 East McDonald Road, Suite 4
Scottsdale, AZ 85253

        Plaintiff,

   v.

**FEDERAL DEPOSIT INSURANCE
CORPORATION**
550 17th Street, N.W.
Washington, DC 20429

        Defendants.

C.A. No. 1:18-cv-2435

## AMENDED COMPLAINT FOR
## <u>DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF</u>

Plaintiff Justine Hurry ("Mrs. Hurry" or "Plaintiff") files this Complaint against Defendant Federal Deposit Insurance Corporation ("FDIC" or "Defendant") and alleges, by and through undersigned counsel, on knowledge of Plaintiff and upon information and belief as to all other matters, as follows:

## <u>INTRODUCTION</u>

1.     This is a suit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500, *et seq.,* objecting to the FDIC's failure properly to address the Notice of Change in Control (the "Notice") filed by Plaintiff pursuant to the Change in Bank Control Act ("CBCA"), 12 U.S.C. §1817(j), and the agency's purported "closure" of consideration of the Notice without statutory authority to do so.

2.      Mrs. Hurry submitted her comprehensive Notice to the FDIC in or around September 2017 providing information as required by 12 U.S.C. § 1817(j) and related statutes, rules and regulations.

3.      Over the next several months, through a redundant set of letter requests for information targeting two subjects that Mrs. Hurry amply disclosed and explained in her initial Notice (and in several subsequent revisions to that Notice), the FDIC avoided taking action on the Notice and violated clear statutory mandates providing that it must do so within a specific period of time.

4.      As set forth in more detail below, the FDIC's pattern of repeating the same request in the face of abundant information and explanation, its failure properly to address the Notice, and its purported "closure" of the file constituted a patent disregard of the process imposed on the FDIC by statute and its statutory obligation to render an appropriate decision, with the subtext of treating this married woman, and her independent business venture, as nothing more than an appendage of and subservient to the control and financial wherewithal of her husband.

5.      Because the agency's purported "closure" of the file relating to the Notice was arbitrary, capricious and contrary to statute–indeed, entirely *unauthorized* by the CBCA –Plaintiff seeks an order confirming that the agency's action was invalid.  Because Plaintiff provided all relevant information, and the FDIC failed to disapprove the Notice as required by statute, Plaintiff seeks an order confirming that the transaction may proceed.

## THE PARTIES

6.      Plaintiff Justine Hurry is an individual with residences in Nevada, Florida, and Arizona.  She has twenty years' experience in the financial industry and is a Certified Bank Secrecy Act Officer – II (CBO-II), for which she completes twelve hours of AML continuing education annually.  Her Family Trusts also maintain a diverse portfolio, for which she is a beneficiary, with particular focus on the financial industry.

7.      Defendant FDIC is an independent agency of the United States government.  Created in 1933 to insure deposits at banking institutions, the FDIC possesses regulatory and oversight authority for several thousand financial institutions.  The FDIC is headquartered in Washington, D.C., and, as relevant here, maintains a regional office in Kansas City, Missouri.

8.      The FDIC, as an agency of the United States government, is subject to the Administrative Procedure Act (*see* 5 U.S.C. § 551(1); 15 U.S.C. § 78(d)(a)).

## JURISDICTION AND VENUE

9.      This action arises under the APA, 5 U.S.C. §§ 500 *et seq.* and the CBCA, 12 U.S.C. § 1817.  Therefore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331.

10.     The APA provides for judicial review to any party aggrieved by agency action or inaction and waives sovereign immunity for all equitable actions for specific relief against a federal agency.  5 U.S.C. § 702.  The APA specifically authorizes an aggrieved party to seek judicial intervention to "compel agency action unlawfully withheld or unreasonably delayed" and complain of agency action that is arbitrary, capricious, contrary to law, and an abuse of the agency's discretion.  *Id.* § 706(1), (2).

11.     Venue is proper in this District under 28 U.S.C. § 1391(c) and (e)(1), and Rule

20(a)(1) of the Federal Rules of Civil Procedure, because the FDIC resides in this District as an agency of the United States, and no real property is involved in this action.

## **GENERAL ALLEGATIONS**

### **Mrs. Hurry's Proposed Acquisition of Control of the Bank**

12.     Mrs. Hurry became aware of an opportunity to make a passive investment in the Bank of Orrick after Scott Clark announced his retirement from the Bank.  Specifically, Mr. Clark indicated that he would step down from his position as director and chairman of the Board of Directors, and in parallel, he and his family would divest their control block of common stock in a sale to an investor with the financial capacity to offer a fair price and fund a subsequent equity injection to support the Bank.

13.     Mrs. Hurry was approached by the Clarks, who were aware of her desire to expand her investment portfolio.

14.     The Clarks, who together own more than sixty percent of the Bank's common stock, and occupy three of the five seats on the Board of Directors, believed it was in their best interest to sell their control block to Mrs. Hurry and resign from their positions on the Board of Directors.

15.     Mrs. Hurry and the Clarks, after negotiations, agreed on a cash-for-stock structure whereby Mrs. Hurry would acquire the Clark's entire block of common stock in exchange for cash. The negotiations between the Clarks and Mrs. Hurry contemplated also that, if necessary conditions were met, the Bank would make an additional equity offering and Mrs. Hurry would acquire that equity.  Ultimately, however, the agreement ***did not*** require the equity injection to occur in order for the cash-for-stock exchange to be valid.  They were, in short, to be two separate and discrete transactions.

**Mrs. Hurry's Notice of Change in Control**

16.     Pursuant to the CBCA, 12 U.S.C. § 1817(j), Mrs. Hurry prepared the required Notice of Change in Control, which must be filed 60 days prior to a change of control acquisition, which occurs whenever any person seeks to acquire 25 percent or more of a bank's voting securities.  *See* 12 U.S.C. § 1817(j).

17.     Section 1817(j)(6) prescribes the content of a notice as follows:

a.      the identity, personal history, business background and experience of the person by whom the acquisition is to be made, including "material business activities or affiliations during the past five years," and a description of any material pending legal or administrative proceedings to which she is a party, including any criminal indictment or convictions;

b.      a statement of the assets and liabilities of the person by whom the acquisition is to be made for a period covering the immediately preceding five fiscal years, and including statements of income and source and application of funds for each such year;

c.      terms and conditions of the proposed acquisition, including the manner in which it is to be made;

d.      the identity, source, and amount of funds or other consideration to be used in making the acquisition, and the extent to which any part of such consideration has been borrowed;

e.      any plans to liquidate the bank, sell its assets, merge it with any company, or make any other change in its business or corporate structure or management;

f.      identity of any persons employed or to be compensated by the acquiring person to solicit or recommend stockholders concerning the acquisition;

g.      copies of any tenders or advertisements making a tender offer to stockholders in connection with the proposed acquisition; and

h.      any additional relevant information required by the FDIC.

*See* 12 U.S.C. § 1817(j)(6)(A)-(H).

18.      Mrs. Hurry, through her agent Phil Klinkhardt, provided the requisite information on the forms prescribed by the FDIC ("Interagency Notice of Change in Control," Form No. 3064-0019; "Interagency Biographical and Financial Report," Form No. 3064-0006), both of which, together, are designed to capture the information set forth in the statute and permit applicants to provide additional information as appropriate to their circumstance.  The completed forms were sent to the attention of Hilary Hoskins, the FDIC's assigned case manager.

19.      Mrs. Hurry provided the information as required by Section 1817(j)(6), including by setting forth: (i) how she came to learn about and be involved in the acquisition of the Clarks' control block of the Bank; (ii) her background and relevant business experience, including information related to her other activities in the financial industry; (iii) a detailed financial statement indicating the source of funds that she intended to use to complete the acquisition; (iv) plans and projections affecting the Bank; (v) anticipated changes to the Board of Directors in light of the Clarks' resignations; and (vi) information concerning Mrs. Hurry's limited anticipated role with the Bank following the acquisition.  *See* Notice of Change of Control; Interagency Biographical and Financial Report attached hereto as Exhibits "A" and "B," respectively.[1]

20.      More specifically, Mrs. Hurry indicated that the funds she intended to use were held in an attorney trust account at SunTrust, and that the account was managed by her counsel, Nummi

---

[1] These exhibits, as well as other exhibits attached hereto, contain certain confidential information and also contain personally identifiable information.  Therefore, the exhibits attached hereto have been redacted to preserve the confidentiality and security of such information.

and Associates.  Further, she disclosed an interest she held as a beneficiary in certain revocable and irrevocable trusts, and certified that she had no right or authority, directly or indirectly, to control those trusts.  She also disclosed her position as a trustee in the Hurry Family Revocable trust.

### The FDIC Response and Repeated Requests for the Same Information

21.     Following the submission of Mrs. Hurry's initial application, the FDIC, through John Jilovec, sent a response raising questions about the structure of the acquisition and whether Mrs. Hurry's available funds were sufficient, the source of available funds, the extent of Mrs. Hurry's role in the Bank, the nature and extent of assets reflected on financial statements that were held jointly with her husband, information concerning the Hurry Family Revocable Trust, the extent of *Mr. Hurry's role* in the acquisition, and numerous other questions concerning business plans and financial projections for the Bank itself.

22.     Mr. Klinkhardt, on behalf of Mrs. Hurry, responded to this request on December 21, 2017 in a letter describing additional information intended to update and revise the Notice of Change in Control and Interagency Biographical and Financial Report on December 21, 2017.  *See* December 21, 2017 Letter from Phil Klinkhardt to FDIC attached hereto as Exhibit "C."  Mr. Klinkhardt's letter, directed to Ms. Hoskins as FDIC Case Manager, explained in detail how the updated application addressed the FDIC's questions, including:

      a.     The transaction would be a cash-for-stock exchange and the contemplated equity injection would be removed as it was not a part of the control acquisition, and was instead a mere tentative plan that the Bank would explore further in the future, and Mrs. Hurry would, if the offering materialized, participate fully or partially.  This would then cure the appearance that Mrs. Hurry lacked sufficient available funds.

     b.     The source of the funds was a family trust and Mrs. Hurry directed that they be moved into an attorney trust account administered by her counsel, Nummi and Associates, to be held for her benefit and investment use.

     c.     Mrs. Hurry's role would be that of a passive investor.  She would not be involved in day-to-day management, would rely exclusively on reports from the Bank, and would attend annual meetings or provide proxy to management, if appropriate, and as any passive investor might.

     d.     Mrs. Hurry's financial statements were revised to reflect only her one-half portion of the value of assets held jointly with Mr. Hurry and, based on Mr. Klinkhardt's experience, the FDIC has accepted this approach in the past.

     e.     Mrs. Hurry did not own any of the investments identified.  The Hurry Family Revocable Trust owned only BRICFM LLC and WD Clearing LLC, but Mrs. Hurry has no direct ownership or control of those businesses.

     f.     Mrs. Hurry may discuss the investment with her husband but Mrs. Hurry alone would oversee the investment and make all decisions concerning the investment on her own and independent of Mr. Hurry.

     g.     Mrs. Hurry intended to contribute to the Bank's growth by referring deposit and loan opportunities.

23.     The FDIC, through Mr. Jilovec, responded to this submission on January 12, 2018, deeming the application "incomplete and insufficient," and requesting much of the same information already provided.  *See* January 12, 2018 Letter from FDIC to Phil Klinkhardt, attached hereto as Exhibit "D."  Specifically, the FDIC sought the following information:

a.      The proposed equity injection had been emphasized in the original application and Notice, but was thereafter abandoned as only tentative, although financial projections still accounted for it.  The Notice should therefore identify whether it will occur, whether Mrs. Hurry will participate in that, and the source of any funds for that.

b.      The account statement reflecting Mrs. Hurry's funds did not provide any personally identifiable information to conclude the funds in fact were Mrs. Hurry's, and the representation from Nummi and Associates did not explain whether Mrs. Hurry had access and the right to the funds.  An explanation of Mrs. Hurry's access and right was necessary, as well as related trust documents.

c.      Although stating that Mrs. Hurry would view this investment as all of her other investments, "it is unclear how those investments are directed (e.g. trust documentation and extent of *Mr. Hurry's* involvement).  Please expand on M[r]s. Hurry's role" (emphasis added).

d.      Provide detail as to ownership percentages of the associated businesses identified previously.

e.      Provide corresponding trust documentation including controlling and beneficial interests, administrators, and trustees, as the application and financial statements identify trust assets and income derived from indirectly owned entities.  This information bears on Mrs. Hurry's financial capacity to complete the proposed transaction.

f.      Mrs. Hurry's response stated that she would discuss her investment with her husband.  She should state whether *Mr. Hurry* would have any involvement with the bank, including direct or indirect control over the institution, and whether the Bank stock would be held in a trust for Mrs. Hurry and if so, who else would be a beneficiary.

24.     The FDIC's response also included a number of questions concerning the Bank's business plan, financial projections, and growth projections, including questions related to Mrs. Hurry's willingness to refer deposit and loan business to the Bank.

25.     As can be seen from the information sought by the FDIC in its January 12 letter, much of it overlapped with information already provided and explained in Mrs. Hurry's prior application materials and Mr. Klinkhardt's December 21, 2017 letter.  *See* Exhibits A, B, and D.

26.     In fact, much of it also assumed that her husband would play an active role in her activities, an assumption that counsel had never seen put forth in relation to a male applicant.

27.     The information sought had been previously provided.  Specifically, the FDIC sought information concerning (i) the proposed equity injection although Mr. Klinkhardt had already explained it was merely tentative and neither contingent upon nor otherwise related to Mrs. Hurry's acquisition of the common stock of the Bank; (ii) the source of funds although Mr. Klinkhardt had already identified, with supporting documentation and account statements, that the funds were held in an attorney trust account at SunTrust for Mrs. Hurry's benefit and were administered by her counsel, Nummi and Associates; (iii) Mrs. Hurry's role in administering the investment and/or at the Bank although Mr. Klinkhardt had explained that she would have no role, no directorship or officer position, and would simply monitor the investment through reports provided by the Bank; (iv) the role of Mr. Hurry (characterized in two different ways), although Mr. Klinkhardt had confirmed that all decisions and control resided with Mrs. Hurry independent of her husband; and (v) information concerning the holdings of irrevocable trusts although Mr. Klinkhardt's had explained that Mrs. Hurry was merely a beneficiary, had no control over the trusts or its holdings, and that they had no relationship to the proposed transaction.

28.     Despite these redundancies, Mrs. Hurry, through Mr. Klinkhardt, submitted yet another updated application on or around March 13, 2018, a copy of which is attached hereto as Exhibit "E."

29.     On March 23, 2018, the FDIC, through Mr. Jilovec, responded, apparently partially assuaged by the updated application, but still seeking additional information.  Specifically, the FDIC requested (i) further proof of available funds stating the account owner and including personally identifiable information so it could determine the source of funds for the acquisition; and (ii) information concerning irrevocable trusts, of which the Notice "states M[r]s. Hurry is a trustee . . . indicat[ing] control," and therefore a comprehensive list of associations and affiliations as well as trust documentation.  A copy of this letter is attached hereto as Exhibit "F."

30.     On March 30, 2018, Mr. Klinkhardt, on behalf of Mrs. Hurry, submitted further documentation from Nummi and Associates again confirming the availability of the funds.  That information indicated that Mrs. Hurry, as trustee of the Hurry Family Revocable Trust, directed the deposit of funds into a Florida Attorney IOTA Trust Account held at SunTrust, and that the trust account was administered by Nummi and Associates in accordance with the Rules of the Florida Bar and Florida Supreme Court.  Richard Nummi represented and certified, under penalty of perjury, that the funds reflected on the account statement for that trust account were held on behalf of Mrs. Hurry, were under her exclusive direction and control, and were unencumbered and immediately available to her.  *See* March 30, 2018 Letter from Phil Klinkhardt to FDIC, Exh. A (attached hereto as Exhibit "G").

31.     Mr. Klinkhardt's letter further sought to address the FDIC's question concerning Mrs. Hurry's associations and affiliations by virtue of her connection with the irrevocable trusts. He explained that Mrs. Hurry did not exercise control over the irrevocable trusts and the terms of

the trust precluded her dissemination of trust documentation.  In support of this, Mrs. Hurry's trust counsel submitted an opinion explaining the basis for the restriction on Mrs. Hurry's ability to disclose the trust documentation grounded in Uniform Trust Code § 1013.  *See id.*, Exh. B. Nevertheless, Mr. Klinkhardt represented that Mrs. Hurry would agree to disclose a list of all of the trusts investments to the Bank's Board of Directors to avoid potential regulatory issues, and would further agree to relinquish her role as trustee.  Mr. Klinkhardt emphasized that the trusts were not parties to the acquisition, had no interest in the acquisition, and were in no way related to Mrs. Hurry's decision to personally acquire control of the Bank through her personal means.

32.    On June 1, 2018, the FDIC, through Mr. Jilovec, responded, ignoring both the issues of confidentiality and Mrs. Hurry's agreement to step down from her role with the trusts. Mr. Jilovec demanded effectively the same information concerning the source of funds which would include personally identifiable information attributing the account funds to the Hurry Family Revocable Trust and Mrs. Hurry, and demanding the exact same information concerning the irrevocable trusts:  information concerning irrevocable trusts, of which the Notice "states M[r]s. Hurry is a trustee . . . indicat[ing] control," and therefore a comprehensive list of associations and affiliations as well as trust documentation.  *See* June 1, 2018 Letter from FDIC to Phil Klinkhardt (attached hereto as Exhibit "H").[2]

33.    Mrs. Hurry, through Mr. Klinkhardt, undeterred, responded on June 22, 2018 in a letter explaining in even greater detail the source of available funds in the attorney trust account held at SunTrust and administered on behalf of Mrs. Hurry by Nummi and Associates.  *See* June 22, 2018 Letter from Phil Klinkhardt to FDIC (attached hereto as Exhibit "I").

---

[2] Apart from a few changes to the opening paragraph, and the deletion of two sentences, the June 1, 2018 letter deploys the exact same language in its information requests as used in the March 23, 2018 letter.

34.     Specifically, it was explained that the attorney trust account was administered in compliance with the applicable rules of the Florida Bar and Florida Supreme Court, and was recently deemed compliant by those authorities.  Further, the letter explained, with documentary support, that although the account was held at SunTrust, SunTrust merely kept a record of the attorney administering the account (i.e., Nummi and Associates) and did not keep an additional record of the client for whom the attorney administered the account; rather, such recordkeeping was an obligation of the attorney pursuant to the rules of the state bar and state supreme court. Therefore, the SunTrust account statements previously provided would not identify Mrs. Hurry or the Hurry Family Revocable Trust, but merely identified an attorney trust account for Nummi and Associates.  The letter also explained that the only means of connecting Mrs. Hurry or the Hurry Family Revocable Trust to the funds, apart from Mr. Nummi's certification, would be a reconstruction of the records of the wire instructions that moved the funds from the Hurry Family Revocable Trust into the attorney trust account.  Mr. Klinkhardt offered that this could be done, but seemed unnecessary in light of the ample certifications already supporting the source of available funds.

35.     In a separate letter, Mrs. Hurry, through counsel, provided a detailed explanation of the irrevocable trust issues.  This letter explained that Mrs. Hurry had already submitted a detailed listing of her associations and affiliations in November 2017, and had updated that listing on February 22, 2018 to remove any references to interests which were merely beneficial interests (as opposed to ownership or control interests).  Further it reiterated that Mrs. Hurry was a trustee of the Hurry Family Revocable Trust, and only those assets were reflected in her financial statements.  All other trust interests, including irrevocable trusts, were merely beneficiary interests, not ownership or control interests.  Finally, it emphasized the legal restrictions on Mrs. Hurry's

ability to disclose the trust documentation for the irrevocable trusts, as such disclosure would reveal highly confidential information pertaining to the family and violate the privacy rights of other persons involved in those trusts.  *See* July 2, 2018 Letter from David Baris to FDIC (attached hereto as Exhibit "J").

36.      The FDIC, through Mr. Jilovec, responded on July 24, 2018, stating that the letters from Mr. Klinkhardt and Mrs. Hurry's counsel, David Baris, were insufficient and did not furnish the requested information.  The FDIC stated that the filing was incomplete.  *See* July 24, 2018 Letter from FDIC to Phil Klinkhardt (attached hereto as Exhibit "K").

37.      Mrs. Hurry, through Mr. Baris, submitted another letter on August 8, 2018, recounting the extensive back and forth with the FDIC over the irrevocable trust documentation issue.  Mr. Baris underscored that the FDIC was only permitted to seek "information relevant to a determination of the notificant's suitability to control a bank . . . [and] suitability include[s] competence, experience, integrity, and financial ability."  August 8, 2018 Letter from David Baris to FDIC (attached hereto as Exhibit "L").  Mr. Baris explained once more that Mrs. Hurry was solely a beneficiary, with no control, directly or indirectly, over the trusts or trustees.  The letter concluded by requesting a final determination from the FDIC.

38.      Mrs. Hurry sent a follow-up letter on September 10, 2018, proposing specific ways to provide the FDIC any information that could be relevant to the scope of its reviews while preserving the confidentiality of personal family trust material.  And again, Mrs. Hurry requested a final determination.  *See* September 10, 2018 Letter from David Baris to FDIC (attached hereto as Exhibit "M").

39.      On September 19, 2018, the FDIC responded indicating that it had unilaterally closed the file as incomplete pursuant to 12 C.F.R. § 303.11(e), which purports to permit the FDIC

14

to deem an application abandoned if requested information is not provided within a time period specified by the agency. *See* September 19, 2018 Letter from FDIC to David Baris (attached hereto as Exhibit "N").

### The FDIC Failed to Comply with the Mandatory, Statutory Timeline

40.     Section 1817(j)(1) provides that an acquiring individual may not acquire control of a depository institution "unless the [FDIC] has been given sixty days' prior written notice of such proposed acquisition and ***within that time period*** the agency has not issued a notice disapproving the proposed acquisition."  12 U.S.C. § 1817(j)(1) (emphasis added).

41.     The agency may "extend[] for an additional 30 days the period during which such a disapproval may issue."  *Id.*  But "[t]he period for disapproval . . . may be extended not to exceed 2 additional times for not more than 45 days each time if" the agency makes certain, specific findings warranting an extension.  *Id.*

42.     Under the plain language of the statute, the longest a period for disapproval may be open is 180 days – 60 days initially, one 30 day extension, and up to two 45 day extensions.

43.     The FDIC acknowledged that it had first received Mrs. Hurry's Notice on November 29, 2017.  Therefore, assuming the FDIC took advantage of every possible extension allowed by statute (it did not), it was required to make a determination no later than May 28, 2018. Obviously, this did not happen.

44.     In fact, the FDIC never once gave any indication that it intended to extend the disapproval period at all.

45.     The FDIC then claimed on September 19, 2018 that it had closed the file as "abandoned" pursuant to 12 C.F.R. § 303.11(e) which states that the agency may "deem" a filing

abandoned "[i]f information requested by the FDIC is not provided within the time period specified by the agency."  12 C.F.R. § 303.11(e).

46.    Mrs. Hurry, however, provided the requested information on numerous occasions, as described above.

47.    Moreover, "closure" of a file is contrary to the provisions of Section 1817(j)(7).  It provides for only two outcomes in relation to a Notice: either the agency must disapprove the Notice within the specified time period *or* the acquisition may proceed.

48.    The FDIC's unilateral creation of a third option, which circumvents the review procedures delineated in the CBCA, contradicts the plain language and the core procedural protections afforded notificants under the CBCA as designed by Congress.

**The FDIC's Unreasonable and Unlawful Delay Has Harmed Mrs. Hurry**

49.    Because the FDIC has failed to make a final determination as to Mrs. Hurry's Notice, she has been unable to complete the acquisition of the Bank's common stock.

50.    In fact, Mrs. Hurry communicated this specific concern to the FDIC, months after the FDIC had already failed to render a decision within the applicable statutory time period.

51.    As Mrs. Hurry explained, her acquisition of the 63.8 percent share of the Bank's common stock has not been finally concluded because, pending the FDIC's action on her Notice, the sellers of the stock retain a right to unilaterally terminate the purchase agreement.

52.    The FDIC's delaying tactic of repeatedly requesting information that was provided and amply explained, or that could not be provided due to legal impediments beyond Mrs. Hurry's control, has deprived Mrs. Hurry of her ability to finally and conclusively consummate her acquisition of the Bank's common stock.

53.     Moreover, Mrs. Hurry has been subject to redundant questioning bearing on issues not germane to her competence, experience, integrity, and financial ability to own the Bank.  Such repetitive questioning, particularly that focused on the role her husband might play in the investment – consistently and correctly identified by Mrs. Hurry as no role – raises the specter that the FDIC has viewed Mrs. Hurry's application through a discriminatory lens which would not have been the case if a male applicant were involved.[3]  The FDIC's failure to process and address the Notice, and its focus on information pertaining to her husband, as opposed to her financial information and background, are discriminatory, arbitrary and capricious, and constitute a violation of the APA.

54.     Because of the unlawful, discriminatory and arbitrary actions of the FDIC, Mrs. Hurry has sustained economic harm through this unreasonably long process, has been exposed to forfeiture of a valuable economic opportunity – one that stands to benefit not only her, but also the Bank and its numerous customers – and has been denied her clear statutory rights under the CBCA.

## COUNT ONE

**Failure to Take Action in Accordance with Law – 5 U.S.C. § 706(1) and 12 U.S.C. § 1817(j)**

55.     Plaintiff affirms and re-alleges each of the preceding allegations set forth in paragraphs 1 through 54 and incorporates those as if set forth fully herein.

56.     The Change in Bank Control Act requires the FDIC to either disapprove an acquiring person's Notice or approve it.  The Change in Bank Control Act provides a specific time period in which the FDIC must make its determination.

---

[3] Mrs. Hurry raised this very point to the FDIC on at least two occasions, *see* July 2, 2018 Letter from David Baris to FDIC; August 8, 2018 Letter from David Baris to FDIC, and in both instances the FDIC's response failed to even acknowledge this concern.  *See* July 24, 2018 Letter from FDIC to Phil Klinkhardt; September 19, 2018 Letter from FDIC to David Baris. The FDIC's silence in this respect speaks volumes.

57.     Specifically, the FDIC is granted sixty days within which it must decide and notify an acquiring person that it disapproves that person's Notice.  12 U.S.C. § 1817(j)(1).  The FDIC may extend this period one time by thirty days.  *Id.*  Thereafter, and only after finding a proper statutory basis for doing so, the FDIC may extend this period two additional times, not more than forty-five days each time.  *Id.*  At most, the FDIC may have 180 days to render its decision.

58.     Mrs. Hurry submitted her notice on November 29, 2017, as acknowledged by the FDIC in subsequent correspondence.

59.     The FDIC did not give any written notice or other indication that it was taking advantage of the permitted time period extensions.  Therefore, the FDIC should have rendered its decision within sixty days, or by January 28, 2018.

60.     The FDIC did not make any decision by that date.

61.     Even assuming the FDIC had extended the period the maximum length permitted by Section 1817(j)(1) *sub silentio*, it would have been required to render its decision by May 28, 2018.

62.     The FDIC did not make any decision by that date. As a result of the FDIC's unreasonable delay, its unlawful targeting of information it deemed necessary only by virtue of Mrs. Hurry's gender, and its failure to render a decision within the period prescribed by law, Mrs. Hurry has suffered significant harm and risks forfeiture of a valuable business opportunity.\

63.     Where an agency unreasonably and unlawfully delays or otherwise fails to take action consistent with law, the Administrative Procedure Act authorizes a person aggrieved by that delay or inaction to obtain judicial review, 5 U.S.C. § 702, and obtain an order compelling the agency to take action promptly.  5 U.S.C. § 706(1).

64.     Therefore, Plaintiff is entitled to relief pursuant to 5 U.S.C. §§ 702, 706(1), including declaratory relief that the FDIC has unreasonably delayed and unlawfully withheld appropriate agency action concerning Mrs. Hurry's Notice, as well as the issuance of an injunction compelling the FDIC to render an appropriate decision without further delay.

65.     By virtue of the foregoing, the FDIC failed to disapprove the Notice in accordance with and within the period prescribed by § 1817(j) and the transaction is therefore approved.

## COUNT TWO

**Agency Action Which is Arbitrary, Capricious and Contrary to Law – 5 U.S.C. §706(2)**

66.     Plaintiff affirms and realleges each of the preceding allegations set forth in paragraphs 1 through 54 and incorporates those as if fully set forth herein.

67.     The FDIC claimed, in September 2018, that it was closing the file and deeming it abandoned pursuant to 12 C.F.R. § 303.11(e), which purports to permit the FDIC to deem an application abandoned if requested information is not provided within a time period specified by the agency. *See* September 19, 2018 Letter from FDIC to David Baris (attached hereto as Exhibit "N").

68.     The FDIC has no lawful basis or authority to deviate from the provisions and procedures set forth in §1817(j) of the CBCA.

69.     The FDIC's purported "closure" of the file relating to the Notice was therefore arbitrary, capricious and not in accordance with law.

## COUNT THREE

**Agency Action Which is Arbitrary, Capricious and Contrary to Law – 5 U.S.C. §706(2)**

70.     Plaintiff affirms and realleges each of the preceding allegations set forth in paragraphs 1 through 54 and incorporate those as if fully set forth herein.

71.     Throughout the review process and repeated requests for information already provided and explained by Mrs. Hurry, the FDIC demonstrated an inappropriate and arbitrary interest in Mrs. Hurry's husband, sought information regarding her husband's finances and activities that would not have been sought had Mrs. Hurry been a male, and made the discriminatory assumption that her husband would have control of her investment.

72.     The FDIC's repeated focus on this matter, after more than adequate assurances that Mr. Hurry would have no control or influence whatsoever, demonstrates the FDIC's impermissible bias against Mrs. Hurry.  Specifically, it reveals that the FDIC viewed Mrs. Hurry as nothing more than a conduit for her husband to exert control over the bank, implying that *she* could not be the actual controller of her investment.  This improper injection of bias on the basis of Mrs. Hurry's sex is in contravention of the Fifth Amendment's due process and equal protection guarantees and constitutes arbitrary and capricious action.

73.     The FDIC's demands in relation to the Notice and its purported "closure" of the file were therefore arbitrary, capricious and not in accordance with law. As a result of the FDIC's unreasonable delay, its unlawful targeting of information it deemed necessary only by virtue of Mrs. Hurry's gender, and its failure to render a decision within the period prescribed by law, Mrs. Hurry has suffered significant harm and risks forfeiture of a valuable business opportunity.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an order and judgment:

1.     Declaring that the FDIC failed to render a decision concerning Plaintiff's Notice of Change in Control in accordance with and within the specific time period prescribed in 12 U.S.C. § 1817(j)(1) and thereby unlawfully withheld and delayed agency action;

2.      Declaring that 12 C.F.R. § 303.11(e), purporting to permit the FDIC to deem as "abandoned" and close a file if it has requested information that it did not receive, is contrary to the governing statute which provides that, unless the agency disapproves the Notice within a specified period of time, the transaction is approved;

3.      Declaring that the FDIC's claim that Plaintiff had failed to provide the relevant information, in accordance with 12 U.S.C. § 1817(j)(1), was discriminatory, arbitrary, capricious, and an abuse of discretion;

4.      Declaring that the FDIC's failure to disapprove the transaction in accordance with its procedures and applicable law enables Plaintiff to proceed with the transaction;

5.      Awarding Plaintiff reasonable costs, including attorney's fees, incurred in bringing this action; and

6.      Granting such other and further relief as this Court deems just and proper.


Respectfully submitted,

THOMPSON HINE LLP

By:   /s/ Joseph A. Smith
        Joseph A. Smith
        D.C. Bar No. 1010223
        1919 M Street, N.W., Suite 700
        Washington, D.C. 20036
        Phone: (202) 331-8800
        Fax: (202) 331-8330
        joe.smith@thompsonhine.com

        Brian Lanciault (admitted *pro hac vice*)
        Thompson Hine LLP
        1919 M Street, N.W., Suite 700
        Washington, D.C. 20036
        Phone: (202) 331-8800
        Fax: (202) 331-8330
        Brian.Lanciault@ThompsonHine.com

      /s/Maranda E. Fritz               
Maranda E. Fritz (admitted *pro hac vice*)
Maranda E. Fritz P.C.
335 Madison Avenue
New York, New York 10017
Phone: (646) 584-8231
maranda@fritzpc.com

*Counsel for Plaintiff Justine Hurry*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4h day of August 2020, I caused the foregoing to be filed and

served via ECF, on the following:

> Erick Bond
> Counsel, Corporate Litigation Unit
> 3501 N. Fairfax Drive, D-7026
> Arlington, VA 22226
> *Counsel for FDIC Defendants*


<u>     /s/ Joseph A. Smith                    </u>
Joseph A. Smith