**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JUSTINE HURRY,

          Plaintiff,

    v.

FEDERAL DEPOSIT INSURANCE
CORPORATION,

          Defendant.

Case No. 18-cv-2435

## FDIC'S OPPOSITION AND CROSS
## MOTION FOR SUMMARY JUDGMENT

FEDERAL DEPOSIT INSURANCE CORPORATION

Barbara Katron (DC Bar #387970)
Senior Counsel
Erik Bond (NY Bar Reg. #4316030)
Counsel, Corporate Litigation Unit

Tel.: (703) 562-6461
Fax: (703) 562-2477
Email: erbond@fdic.gov

3501 N. Fairfax Drive, D-7026
Arlington, VA 22226

*Attorneys for Defendant*

Dated: October 6, 2020

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

FACTUAL AND REGULATORY BACKGROUND ..................................................... 3

   The CBCA and the FDIC Regulations ...................................................................... 3

   Statement of Facts ..................................................................................................... 4

STANDARD OF REVIEW ............................................................................................ 6

ARGUMENT ................................................................................................................. 6

I.    MS. HURRY'S SECTION 706(1) CLAIM MUST FAIL BECAUSE SHE
     CANNOT SHOW THAT APPROVAL OR DISAPPROVAL WITHIN
     SIXTY DAYS WAS LEGALLY REQUIRED. ................................................. 6

    A.    Ms. Hurry's Incomplete Filing Never Triggered a Disapproval Deadline
        because it was not a "Notice" under the CBCA. ..................................... 7

    B.    The CBCA Language Providing that the FDIC "May" Disapprove of a Notice
        Does Not Create a Concrete Legal Requirement as to Incomplete
        Submissions. ......................................................................................... 9

II.   JUDGMENT SHOULD BE GRANTED IN FDIC'S FAVOR ON COUNT
    TWO BECAUSE 12 C.F.R. § 303.11(e) IS LAWFUL. .................................... 10

    A.    The Text of 12 U.S.C. § 1817(j) Does Not Speak As to How the Agency
        Must Handle Submissions Where Relevant Requested Information is
        Withheld. ............................................................................................... 11

    B.    12 C.F.R. § 303.11(e) Should be Upheld under *Chevron*. .................... 12

        1.    The Regulation is Reasonable. .................................................... 13

        2.    Ms. Hurry's Arguments against the Validity of the Regulation are
            Unavailing. ....................................................................... 15

III.  THE FDIC'S REQUESTS FOR THE TRUST DOCUMENT WERE NOT
     ARBITRARY AND CAPRICIOUS. ................................................................ 17

IV.  VACATING THE FDIC'S DETERMINATION AND DECLARING THAT THE
     TRANSACTION MAY PROCEED ARE INAPPROPRIATE REMEDIES .................. 18

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Alaska Dep't of Envtl. Conservation v. EPA,*
    540 U.S. 461 (2004) ........................................................................................................ 14

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,*
    988 F.2d 146, 151 (D.C. Cir. 1993) ............................................................................. 18

*\*Anglers Conservation Network v. Pritzker,*
    809 F.3d 664 (D.C. Cir. 2016) ................................................................................... 6, 9

*Benavides Nolasco v. Crockett,*
    No. CV 18-7101, 2019 WL 2437180 (E.D. La. June 11, 2019) ................................ 13

*Boening v. Shinseki,*
    No. 08-0475, 2010 WL 2978627 (Vet. App. July 30, 2010) ..................................... 14

*Catawba County, N.C. v. E.P.A.,*
    571 F.3d 20 (D.C. Cir. 2009) ...................................................................................... 11

*CFTC v. Schor,*
    478 U.S. 833 (1986) ..................................................................................................... 14

*\*Chevron v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) ............................................................................. 6, 10, 11, 12, 14

*Fahey v. Mallonee,*
    332 U.S. 245 (1947) ................................................................................................ 15, 17

*FDIC v. Phila. Gear Corp.,*
    476 U.S. 426 (1986) ..................................................................................................... 15

*Friedman v. Federal Aviation Administration,*
    841 F.3d 537 (D.C. Cir. 2016) .................................................................................... 16

*Heartland Reg'l Med. Ctr. v. Sebelius,*
    566 F.3d 193 (D.C. Cir. 2009) .................................................................................... 19

*Judulang v. Holder,*
    565 U.S. 42 (2011) ....................................................................................................... 14

*Kisor v. Wilkie,*
    588 U.S. ---, 139 S. Ct. 2400 (2019) .......................................................................... 10

*Menkes v. U.S. Dep't of Homeland Sec.,*
    637 F.3d 319 (D.C. Cir. 2011) .................................................................................... 14

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ........................................................................................ 6

*Nat'l Oilseed Processors Ass'n v. Browner,*
    924 F. Supp. 1193 (D.D.C. 1996) .................................................................. 10

*Nolasco v. Crockett,*
    958 F.3d 384 (5th Cir. 2020) ......................................................................... 13

*\*Norton v. S. Utah Wilderness All. (SUWA)*
    542 U.S. 55 (2004) ................................................................................. 1, 6, 7

*Nyambal v. Mnuchin,*
    245 F. Supp. 3d 217 (D.D.C. 2017) ................................................................ 9

*Sara Lee Corp. v. Am. Bakers Ass'n Ret. Plan,*
    512 F. Supp. 2d 32 (D.D.C. 2007) ................................................................ 15

*Star Fruits S.N.C. v. United States,*
    393 F.3d 1277 (Fed. Cir. 2005) ............................................................... 13, 18

*United States v. United Park City Mines Co.,*
    No. 18-4110, 2020 WL 5542481 (10th Cir. Sept. 16, 2020) ......................... 17

*Util. Air Regulatory Grp. v. EPA,*
    573 U.S. 302 (2014) ...................................................................................... 11

*Village of Barrington, Ill. v. Surface Transp. Bd.,*
    636 F.3d 650 (D.C. Cir. 2011) ....................................................................... 11

**Statutes**

5 U.S.C. § 702 ...................................................................................................... 18

5 U.S.C. § 706(1) ....................................................................................... 1, 6, 7, 8, 9

5 U.S.C. § 706(2) ........................................................................................ 10, 17, 18

5 U.S.C. § 706(2)(A) ...................................................................................... 6, 10

12 U.S.C. § 1811 ................................................................................................. 4, 9

12 U.S.C. § 1817 .................................................................................................. 14

12 U.S.C. § 1817(j) ...................................................................................... 1, 9, 11

12 U.S.C. § 1817(j)(1) .......................................................................................... 3

*12 U.S.C. § 1817(j)(2)(B) ............................................................................................. 3, 8, 17

12 U.S.C. § 1817(j)(2)(B)(ii) ........................................................................................... 6

12 U.S.C. § 1817(j)(5) ................................................................................................. 3, 13

12 U.S.C. § 1817(j)(6) ................................................................................................... 3, 7

*12 U.S.C. § 1817(j)(6)(H) ...................................................................................... 1, 7, 8, 11

12 U.S.C. § 1817(j) ........................................................................................................ 9

12 U.S.C. § 1817(j)(7) .................................................................................................... 9

*12 U.S.C. § 1817(j)(7)(E) ...................................................................................... passim

12 U.S.C. § 1819 ........................................................................................................ 4, 12

12 U.S.C. 1828(x) .......................................................................................................... 18

## Regulations

8 C.F.R § 103.2(b)(13)(i) ............................................................................................... 13

12 C.F.R. § 303.2 ........................................................................................................... 8

12 C.F.R. § 303.2(y) ....................................................................................................... 8

12 C.F.R. § 303.11 ...................................................................................................... 12, 14

*12 C.F.R. § 303.11(e) ............................................................................................. passim

12 C.F.R. § 303.80 .......................................................................................................... 1

12 C.F.R. § 303.82(b)(2)(v) ......................................................................................... 17

12 C.F.R. § 303.86(b) ............................................................................................. 2, 3, 7, 8

12 C.F.R. Part 215 (Regulation O) ............................................................................ 2, 17

12 C.F.R. Part 223 (Regulation W) ........................................................................... 2, 17

## INTRODUCTION

In this action, Plaintiff Justine Hurry ("Ms. Hurry") seeks to invalidate a longstanding Federal Deposit Insurance Corporation ("FDIC") regulation allowing the agency to close an applicant's file based on failure to provide requested, required information (12 C.F.R. § 303.11(e)).  She claims the regulation must give way because the Change in Bank Control Act (12 U.S.C. § 1817(j) ("CBCA")) requires the FDIC to "approve" or "disapprove" a "notice" within sixty days.  But Ms. Hurry cannot show that 12 C.F.R. § 303.11(e) is invalid, much less that the FDIC had a concrete duty to either approve or disapprove her incomplete submission. Nor can Ms. Hurry show that it was arbitrary or capricious for the FDIC to require a potential bank purchaser to share complete documentation pertaining to her connection to 46 businesses held by family trusts.  Summary judgment should be granted to the FDIC.

The first count of the Amended Complaint is a 5 U.S.C. § 706(1) agency inaction claim, which requires that Ms. Hurry prove the agency "failed to take a *discrete* agency action that it is *required to take.*"  ECF 22, at 17; *Norton v. S. Utah Wilderness All. ("SUWA")*, 542 U.S. 55, 63-64 (2004).  To this end, Ms. Hurry claims that FDIC breached a statutory requirement to disapprove her notice of change in control within sixty days of receipt.  But the text of the CBCA and applicable regulation (12 C.F.R. § 303.80 *et seq.*) show that there is no sixty-day disapproval requirement where, as here, the submission is not "substantially complete."  Ms. Hurry lacks standing to pursue her 5 U.S.C. § 706(1) claim because she cannot identify a concrete legal right withheld.

Under the CBCA, a "notice" "shall contain" "[a]ny additional relevant information in such form as the appropriate Federal banking agency may require."  12 U.S.C. § 1817(j)(6)(H). The FDIC's regulations provide that the sixty-day deadline does not begin to run until the agency

1

receives a "substantially complete notice."  12 C.F.R. § 303.86(b).  Since Ms. Hurry failed to

provide relevant FDIC-required trust information, her filing was never substantially complete.

Ms. Hurry's incomplete submission thus was not a "notice" under the CBCA, and never

triggered a sixty-day deadline for agency decision.  Although Ms. Hurry relies on Section

1817(j)(7)(E), it does not help her cause.  Under that section, the FDIC "**may** disapprove any

proposed acquisition," including because the applicant "neglect[ed], fail[ed], or refuse[d] to

furnish the [agency] all the information [it] required."  12 U.S.C. § 1817(j)(7)(E) (emphasis

added).  The statute's use of the precatory word "may" is inconsistent with Ms. Hurry's

argument that the CBCA limits the agency to only straight up approval or disapproval, or

precludes the agency's use of its abandonment regulation (12 C.F.R. § 303.11(e)), where there is

an incomplete submission.

The Amended Complaint's second count asks this Court to declare that 12 C.F.R.

§ 303.11(e) is "contrary to the governing statute," which calls for application of the classic

*Chevron* two-step test.  ECF 22, at 21.  Because 12 C.F.R. § 303.11(e)'s scope is limited to

where there would *not* be a "notice" (i.e., because the application is necessarily incomplete),

nothing in the CBCA's text or structure conflicts with the regulation.  The regulation should be

upheld as a reasonable, gap-filling administrative measure, particularly given its longstanding

duration (final rule published in 2003), and the prevalence of similar regulations across the

federal government.

Finally, there is nothing arbitrary or capricious about the FDIC's request that Ms. Hurry

provide the agency with complete trust documentation to review.  Banking is one of the most

closely regulated industries, and there are numerous restrictions on insider self-dealing and

transactions with affiliates.  *See, e.g.*, 12 C.F.R. Part 215 (Regulation O); 12 CFR Part 223

2

(Regulation W).  The CBCA requires the FDIC to make a thorough, independent investigation into an applicant's background and affiliations.  *See* 12 U.S.C. § 1817(j)(2)(B).  The agency's request to review complete trust documentation is consistent with the CBCA's direction.

## FACTUAL AND REGULATORY BACKGROUND

### The CBCA and the FDIC Regulations

The CBCA requires that the FDIC investigate the "competence, experience, integrity, and financial ability" of potential bank purchasers.  12 U.S.C. § 1817(j)(2)(B).  In conducting this investigation, the FDIC must "make an independent determination of the accuracy and completeness" of this information.  *Id*. § 1817(j)(2)(B)(ii).  The CBCA provides that no "person . . . shall acquire control of any insured depository institution . . . unless the [FDIC] has been given sixty days' prior written notice" and not issued a timely disapproval.  *Id*. § 1817(j)(1).

The sixty-day countdown starts on the agency's receipt of a "notice," which the CBCA defines to incorporate subsequent regulation.  "Except as otherwise provided by regulation of the appropriate Federal banking agency," a "notice" under CBCA "shall contain" information about the "identity, personal history, business background, and experience of each person" acquiring the bank, "including [her] material business activities and affiliations during the past five years," and "[a]ny additional relevant information in such form as the appropriate Federal banking agency may require."  12 U.S.C. § 1817(j)(6).  The FDIC's regulations fill out the statutory definition, in among other ways, by requiring submission of a "substantially complete" notice to trigger the sixty-day countdown.  12 C.F.R. § 303.86(b).  Disapproval triggers statutory appeal procedures, allowing for a request for an agency hearing and review in the U.S. Court of Appeals.  12 U.S.C. § 1817(j)(5).

There is no language in the statute mandating disapproval as the *only vehicle* to dispose of an incomplete submission.  As the CBCA puts it, after conducting its investigation, the FDIC "may disapprove any proposed acquisition," including because the applicant "neglect[ed], fail[ed], or refuse[d] to furnish the [agency] all the information [it] required."  12 U.S.C. § 1817(j)(7)(E).

The FDIC's regulations require that submissions contain all requested information the agency needs:

> To the extent necessary to evaluate a filing, the FDIC may require an applicant to provide additional information.  If information requested by the FDIC is not provided within the time period specified by the agency, the FDIC may deem the filing abandoned and shall provide written notification to the applicant . . . that the file has been closed.

12 C.F.R. § 303.11(e).

**Statement of Facts**

This lawsuit arises from Ms. Hurry's interest in purchasing the majority of common shares of the Bank of Orrick (Orrick, Missouri), whose primary federal regulator is the FDIC (the "Bank").[1]  ECF 22, ¶ 15.  The Bank's sale is subject to regulatory approval.  In the regulatory process, Ms. Hurry refused to allow the FDIC to review trust documentation and other information showing details regarding, among other things, 46 businesses in which she has some connection, which the FDIC said it needed.  FDICAR001051 (communicating agency need for trust documentation); FDICAR000031 (listing entities); FDICAR001064 (same); FDICAR001072.  Because Ms. Hurry refused to provide the FDIC with the documentation for

---

[1] FDIC is an agency of the United States created by Congress to maintain stability and public confidence in the nation's financial system by insuring deposits, examining and supervising financial institutions, and managing receiverships.  12 U.S.C. § 1811 *et seq*; *see also* 12 U.S.C. § 1819 Fourth (stating that the FDIC is authorized "[t]o sue and be sued, and complain and defend, by and through its own attorneys, in any court of law or equity, State or Federal"); and http://www.fdic.gov/about/mission/index.html.

review, pursuant to 12 C.F.R. § 303.11(e), the agency closed Ms. Hurry's file and returned her submission as incomplete, without issuing an approval or disapproval.  FDICAR001051.

Ms. Hurry, through her representatives, first reached out to FDIC supervisory staff about the potential acquisition of the Bank in September/October 2017.  FDICAR000001-FDIC000042; FDICAR000043-FDIC000096.  Continuing through summer of 2018, the FDIC attempted to work with Ms. Hurry through an exchange of correspondence, telephone conferences, and meetings.  The Administrative Record contains extensive back-and-forth between the parties.  *See, e.g.*, FDICAR000097-FDICAR000098; FDICAR000376-FDIC0000380, FDIC000381-FDIC000387; FDICAR000680-FDICAR000686.  The FDIC requested a comprehensive listing of Ms. Hurry's business associations and affiliations to determine ownership/control, and to assess Ms. Hurry's material business background, activities, and affiliations.  *E.g.*, FDICAR000680-FDICAR000686.

The FDIC emphasized the need to review all trust documentation, both to ascertain the source of funding for the proposed sale, Ms. Hurry's business background, and potential self-dealing issues.  FDICAR000683 ("This documentation is pertinent to the assessment due to the closely related nature of the trust, business affiliations, and Ms. Hurry's financial capacity to complete the proposed transaction."); FDICAR000687-FDICAR000688; FDICAR0000689-FDICAR000690.  In particular, the FDIC had requested information regarding trusts of which Ms. Hurry is a beneficiary.  FDICAR000973-FDICAR000974.  But Ms. Hurry repeatedly refused to provide the agency with the complete, relevant documentation that the FDIC said it needed.  FDICAR000691-FDICAR000701; FDIC000975-FDIC000977; FDICAR000997-FDICAR000999.

Because Ms. Hurry failed to provide the relevant, required documentation, the FDIC

was unable to conduct an "independent determination of the accuracy and completeness" of

her application, 12 U.S.C. § 1817(j)(2)(B)(ii), and the agency found that her submission was

not substantially complete.  FDICAR001051.  On July 24, 2018, the FDIC returned the

incomplete submission to Ms. Hurry.  *Id.*  On September 19, 2018, the FDIC memorialized its

final determination that Ms. Hurry's file had been closed under 12 C.F.R. § 303.11(e).

FDICAR001072.  This litigation followed.

## STANDARD OF REVIEW

In this record review case, the normal Rule 56 summary judgment standard does not

apply. Instead, when reviewing the agency's decision, the Court must determine whether (1) the

FDIC "failed to take a *discrete* agency action that it is *required to take*"; (2) whether the CBCA

forecloses 12 C.F.R. § 303.11(e), or whether the regulation is reasonable under *Chevron*; and (3)

whether the final agency action was "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law."  *SUWA*, 542 U.S. at 63-64 n.2; *Chevron v. Natural Resources*

*Defense Council, Inc.*, 467 U.S. 837 (1984); 5 U.S.C. §§ 706(1), (2)(A).  Arbitrary and

capricious review is "narrow," and the Court may not "substitute its judgment for that of the

agency."  *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

(1983).

## ARGUMENT

### I.   MS. HURRY'S SECTION 706(1) CLAIM MUST FAIL BECAUSE SHE CANNOT SHOW THAT APPROVAL OR DISAPPROVAL WITHIN SIXTY DAYS WAS LEGALLY REQUIRED.

Section 706(1) permits judicial review of agency inaction, "but only within strict limits."

*Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016); 5 U.S.C.

§ 706(1).  The Court has the authority to compel an agency action under 5 U.S.C. § 706(1) only

when there is "a specific, unequivocal command" placed on the agency to take a "discrete agency action," and the agency has failed to take that action. *SUWA*, 542 U.S. at 63-64 (citation omitted) (noting this standard reflects the common law writ of mandamus, which the APA "carried forward" in § 706(1)).

The first count of the Amended Complaint asserts an agency inaction claim under 5 U.S.C. § 706(1), which, among other things, asks this Court to issue injunctive relief compelling the FDIC "render an appropriate decision" on her application, "without further delay."  ECF 22, ¶ 64.  But Ms. Hurry has no standing under 5 U.S.C. § 706(1) because she cannot show that an FDIC disapproval within sixty days was "legally *required*."  *SUWA*, 542 U.S. at 63-64.

### A.    Ms. Hurry's Incomplete Filing Never Triggered a Disapproval Deadline because it was not a "Notice" under the CBCA.

Contrary to Ms. Hurry's arguments, the statute and regulation show that a sixty-day disapproval requirement never began to run on the incomplete submission.  ECF 23-1, at 16. Under the CBCA, a "notice" "*shall contain*" "[a]ny *additional* relevant information in such form as the appropriate Federal banking agency may require."  12 U.S.C. § 1817(j)(6)(H) (emphasis added).  Further, the CBCA defines "notice" to incorporate regulatory definitions.  *Id.* § 1817(j)(6) (defining "notice," "except as otherwise provided by regulation of the appropriate Federal banking agency").  The FDIC's regulations provide that the sixty-day deadline does not start until the agency receives a "substantially complete notice."  12 C.F.R. § 303.86(b). Because Ms. Hurry refused to provide the FDIC with all of the requested trust information, her submission to the agency was never substantially complete.  In other words, Ms. Hurry never submitted a "notice" to the agency under the CBCA that would trigger the sixty-day disapproval

clock.[2]  She cannot show FDIC inaction as to a concrete legal requirement under 5 U.S.C. §

706(1).

Ms. Hurry wrongly argues that the FDIC is on the clock and "*required*" to either approve

or disapprove a submission "that advises the FDIC of the proposed transaction and contains the

information called for by the FDIC's form"—even if the submission fails to include information

the agency says it needs.  ECF 23-1, at 17.  Her argument misreads both the statute and the

regulations.

Ms. Hurry's argument selectively quotes 12 U.S.C. § 1817(j)(2)(B), which states that

"upon receiving *any notice* under this subsection, the [FDIC] shall— (i) conduct an

investigation. . . ."   According to Ms. Hurry, the statute's use of the words "receiving any

notice" means the disapproval clock runs even as to incomplete submissions.  ECF 23-1, at 18.

Ms. Hurry's reading is wrong because it ignores that "notice" is a defined term.  Under the

CBCA, a "notice" "shall contain" "[a]ny additional relevant information in such form as the

appropriate Federal banking agency may require"; and the CBCA itself makes the definition of

"notice" itself subject to change by agency regulation.  12 U.S.C. § 1817(j)(6)(H) (defining

"notice," "except as otherwise provided by regulation of the appropriate Federal banking

agency").  Under this statutory authority, the FDIC's regulations provide that the sixty-day

deadline does not to run until agency receives a "substantially complete notice."  12 C.F.R. §

303.86(b).[3]  Although Ms. Hurry would prefer to have the statutory clock start on the FDIC's

---

[2] Ms. Hurry wrongly states that "[i]t is undisputed here that the FDIC failed to adhere to the statutory process established by Congress. . . ."  ECF 23-1, 16.  To be clear, the FDIC fully complied with the CBCA and application regulation here.
[3] The FDIC's regulations globally define "notice" as "a submission notifying the FDIC that a depository institution intends to engage in or has commenced certain corporate activities or transactions," but this generic definition is expressly modifiable by regulation (e.g. 12 C.F.R. § 303.86(b) or statute.  12 C.F.R. §§ 303.2(y), 303.2 ("Except as modified or otherwise defined in this part, terms used in this part that are

receipt of incomplete submissions, the operative text makes clear that the approval/disapproval requirement only commences upon receipt of a "substantially complete notice" containing ""[a]ny additional relevant information in such form as the [FDIC] may require."  Since Ms. Hurry never provided a "substantially complete" submission to the FDIC, she cannot show the concrete legal right withheld necessary for Section 706(1) mandamus-type relief.

> **B.**   **The CBCA Language Providing that the FDIC "May" Disapprove of a Notice Does Not Create a Concrete Legal Requirement as to Incomplete Submissions.**

According to the CBCA, after conducting its investigation, the FDIC "may disapprove any proposed acquisition," including because the applicant "neglect[ed], fail[ed], or refuse[d] to furnish the [agency] all the information [it] required."  12 U.S.C. § 1817(j)(7)(E) (emphasis added).  Section 1817(j)(7)'s use of the precatory term "may" provides additional reason why Ms. Hurry has no clear legal right to FDIC to approval (or disapproval) here.  *Anglers Conservation Network*, 809 F.3d at 671 (declining to issue Section 706(1) relief under statute stating that the Secretary "*may* prepare" plan, reasoning that statute provided a "grant of discretionary, not mandatory, authority"); *see also Nyambal v. Mnuchin,* 245 F. Supp. 3d 217, 223-24 (D.D.C. 2017) (declining to issue Section 706(1) relief requiring Secretary to act where statute at issue provided that Secretary should "*try*" to achieve objective), *aff'd*, No. 17-5072, 2017 WL 5664980 (D.C. Cir. Nov. 8, 2017) (per curiam).

Similarly, Ms. Hurry isolates a single sentence contained in a multi-page January 2018 FDIC letter, which cites Section 1817(j) generally and states "[t]he FDIC may disapprove a Notice, if among other things, the acquirer neglects, fails, or refuses to furnish to the FDIC all

---

defined in the Federal Deposit Insurance Act (12 U.S.C. 1811 et seq.) have the meanings provided in the Federal Deposit Insurance Act. Additional definitions of terms used in this part are as follows . . . .).

information required by the FDIC."  ECF 23-1, at 21-22; FDICAR000680-686, at

FDICAR000680.  According to Ms. Hurry, because this January 2018 FDIC letter states the

FDIC "may disapprove a Notice" for want of required information, the FDIC is somehow barred

from later relying on 12 C.F.R. § 303.11(e)'s abandonment provision.  ECF 23-1, at 21.  But the

cited sentence is contained in correspondence issued *before* final agency action; it simply does

not implicate post-hoc rationalization doctrine.  *See Nat'l Oilseed Processors Ass'n v. Browner*,

924 F. Supp. 1193, 1204 (D.D.C. 1996) (noting post-hoc rationalization is a new rationale for an

agency action that is put forth for the first time after the action is final).  In any event, Section

1817(j)(7)(E) does not create a concrete legal right for mandamus purposes where there is an

incomplete submission, regardless of whether the January 2018 FDIC letter mentions that the

agency "may disapprove" based on failure to provide required information.

## II.     JUDGMENT SHOULD BE GRANTED IN FDIC'S FAVOR ON COUNT TWO BECAUSE 12 C.F.R. § 303.11(e) IS LAWFUL.

The second count of the Amended Complaint seeks a ruling under 5 U.S.C. § 706(2) that

"12 C.F.R. § 303.11(e), purporting to permit the FDIC to deem as "abandoned" and close a file if

it has requested information that it did not receive," is contrary to the CBCA.  ECF 22 at 21,

Prayer for Relief ¶ 2.  But Ms. Hurry makes no showing that the regulation is invalid.

Because 12 C.F.R. § 303.11(e) is a regulation enacted through notice-and-comment

rulemaking, its validity turns on straightforward application of the *Chevron* two-step framework.

*Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) (applying 5 U.S.C. §

706(2)(A)).  Courts first inquire "whether Congress has directly spoken to the precise question at

issue" using "all the 'traditional tools' of construction," including "text, structure, history, and

purpose."  *Kisor v. Wilkie*, 588 U.S. ---, 139 S. Ct. 2400, 2415 (2019) (quoting *Chevron*, 467

U.S. at 843 n.9).  In so doing, the reviewing court "must account for both the specific context in

which language is used and the broader context of the statute as a whole." *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 321 (2014) (declining to defer to "an agency interpretation that is inconsistent with the design and structure of the statute as a whole."). If the statutory text clearly forecloses the agency's challenged interpretation, courts "must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843. On the other hand, if the statute is ambiguous on the precise question at issue, under step two, the court should defer to the agency's interpretation so long as it is reasonable. *See Chevron*, 467 U.S. at 843-85 (deference where agency interpretation "reasonabl[y] accommodat[es] . . . conflicting policies that were committed to the agency's care by the statute").

**A.     The Text of 12 U.S.C. § 1817(j) Does Not Speak As to How the Agency Must Handle Submissions Where Relevant Requested Information is Withheld.**

Under *Chevron* step one, nothing in the CBCA's text or structure "unambiguously forecloses" application of 12 C.F.R. § 303.11(e) abandonment provisions where an applicant refuses to provide requested relevant information. *See Village of Barrington, Ill. v. Surface Transp. Bd.*, 636 F.3d 650, 661 (D.C. Cir. 2011); *Catawba County, N.C. v. E.P.A.*, 571 F.3d 20, 35 (D.C. Cir. 2009) (observing that courts use step one to determine if Congress has "unambiguously foreclosed the agency's statutory interpretation").

As discussed above, the FDIC's obligation to approve or disapprove turns on receipt of a "notice." A "notice" under CBCA "shall contain" "[a]ny additional relevant information in such form as the appropriate Federal banking agency may require." 12 U.S.C. § 1817(j)(6)(H). Because 12 C.F.R. § 303.11(e)'s scope is limited to where there would ***not*** be a "notice" (i.e., because the application omits relevant, required information), the CBCA does not prevent the agency from closing an incomplete file without a formal approval or disapproval. *See Chevron*, 467 U.S. at 843. CBCA's text refutes Ms. Hurry's claim that the statutory language bars

11

invocation of 12 C.F.R. § 303.11(e) (or any action other approval or disapproval within sixty days) where an incomplete submission is made.

Ms. Hurry argues that Section 1817(j)(7)(E)'s clause allowing for disapproval where an applicant refuses to provide "all of the information" required prevents the agency from invoking 12 C.F.R § 303.11(e)'s abandonment provision.  ECF 23-1, at 15-17.  But the text of Section 1817(j)(7)(E) does not prove Ms. Hurry's point.  The statute does not mandate disapproval as the *only vehicle* to dispose of an incomplete submission.  The term "may disapprove" found in the CBCA does not mean "must disapprove" or "shall disapprove," or limit the agency's actions to an up-or-down approval or disapproval where an incomplete submission is at issue.

12 C.F.R § 303.11(e) fills a gap in the CBCA in cases where no "notice" has been submitted.  Where there is no "notice" (i.e., a substantially complete submission), the CBCA is silent as to whether some action other than approval or disapproval is allowable.  CBCA's "may disapprove" text also cuts against Ms. Hurry's argument that the statutory text *restricts* the agency to approval or disapproval only.  The text and structure of the CBCA do not foreclose application of 12 C.F.R.§ 303.11(e).

**B.**      **12 C.F.R. § 303.11(e) Should be Upheld under *Chevron*.**

This Court should defer to 12 C.F.R. § 303.11(e) as reasonable under *Chevron* step two.[4] *See Chevron*, 467 U.S. at 843-45 (deference where agency interpretation "reasonabl[y] accommodat[es] . . . conflicting policies that were committed to the agency's care by the statute").

---

[4] The FDIC enacted 12 C.F.R. § 303.11 under multiple originating statutes, including the CBCA itself and 12 U.S.C. § 1819 (tenth and seventh) ("Upon June 16, 1933, the Corporation shall become a body corporate and as such shall have power—"it may deem necessary to carry out the provisions . . .  [of] law which it has the responsibility of administering or enforcing," including "such incidental power as shall be necessary to carry out the powers so granted.")

1.      *The Regulation is Reasonable.*

Here, the FDIC has legitimate reasons for treating incomplete applications as abandoned under the regulation.  The agency is unable to assess the overall merits of filings where relevant, requested information is omitted.  It makes no sense to force feed an incomplete submission, like Ms. Hurry's, through formal disapproval, followed by an agency hearing and then Circuit Court review under 12 U.S.C. § 1817(j)(5), where the agency was unable to render an approval or disapproval in the first place, due to missing information.  12 C.F.R. § 303.11(e) strikes a reasonable compromise, allowing the applicant the ability to resubmit a filing with the required information, or, alternatively, seek Administrative Procedure Act review of agency's abandonment finding.  Contrary to Ms. Hurry's contentions that she has been deprived of "any right of review," 12 C.F.R. § 303.11(e) does not leave aggrieved applicants without a remedy, as the present lawsuit demonstrates.  ECF 23-1, at 19.  Ms. Hurry's baseless complaint that the FDIC's request for trust documents is "intrusive and irrelevant" is under review now in this Court.  ECF 23-1, at 20.

The regulation is not an outlier.  The reasonableness of 12 C.F.R. § 303.11(e) is shown through the prevalence of similar regulations throughout the government.  Agencies including the Patent and Trademark Office ("PTO"), the United States Department of Veteran Affairs, and the United States Citizenship and Immigration Services ("USCIS"), among others, have reported decisions upholding their use of abandonment regulations, where, as here an applicant fails to provide requested information.  *See, e.g.*, *Benavides Nolasco v. Crockett*, No. CV 18-7101, 2019 WL 2437180, at *3 (E.D. La. June 11, 2019), *aff'd sub nom. Nolasco v. Crockett*, 958 F.3d 384 (5th Cir. 2020) (USCIS deemed application as abandoned under 8 C.F.R § 103.2(b)(13)(i) based on failure to reply to a request for evidence); *Star Fruits S.N.C. v. United States*, 393 F.3d 1277,

1282 (Fed. Cir. 2005) (holding PTO acted lawfully when it deemed patent application abandoned

for willfully failing to respond to request for information that Star Fruits considered irrelevant);

*Boening v. Shinseki*, No. 08-0475, 2010 WL 2978627, at *3 (Vet. App. July 30, 2010) (holding

Veterans tribunal correctly considered claim to be abandoned under VA regulation after veteran

failed to respond to request for information).

There are additional reasons to affirm 12 C.F.R. § 303.11(e) under a *Chevron* step two

reasonableness inquiry:

The first is the longevity of the FDIC's interpretation.  After notice and comment, 12

C.F.R. § 303.11 *et seq.* was published in the Federal Register in 2003.  68 Fed. Reg. 50459 (Aug.

21, 2003).  Courts afford long-standing agency interpretations "particular deference."  *See*

*Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 487 (2004) (recognizing that the

Court will "normally accord particular deference to an agency interpretation of 'longstanding'

duration); *Menkes v. U.S. Dep't of Homeland Sec.,* 637 F.3d 319, 332 (D.C. Cir. 2011) ("It is

highly significant here that the agency's 'interpretation is one of long standing.'").[5]

Second, Congress has revisited 12 U.S.C. § 1817—amending the legislation most

recently in 2018—and has made no legislative change to the agency's interpretation allowing

closure of files based on refusal to provide requested information.  Courts have held that

Congressional acquiescence supports sustaining the agency's interpretation.  *See CFTC v. Schor*,

478 U.S. 833, 846 (1986) ("It is well established that when Congress revisits a statute giving rise

to a longstanding administrative interpretation without pertinent change, the 'congressional

failure to revise or repeal the agency's interpretation is persuasive evidence that the

---

[5] 12 C.F.R. § 303.11(e) is, at its core, a type of housekeeping regulation, not the significant governmental policy for which courts have looked askance at a longevity justification for *Chevron* purposes.  *Cf. Judulang v. Holder*, 565 U.S. 42, 61 (2011) (calling longevity "a slender reed to support a significant government policy").

14

interpretation is the one intended by Congress.'"); *FDIC v. Phila. Gear Corp.*, 476 U.S. 426, 437 (1986) ("At no point did Congress criticize the FDIC's longstanding interpretation . . . In fact, Congress had reenacted the 1935 provisions in 1950 without changing the definition of 'deposit' at all.").

Third, the FDIC has particular and specialized expertise in bank supervision and implementing the CBCA, a factor which merits additional deference. *Sara Lee Corp. v. Am. Bakers Ass'n Ret. Plan,* 512 F. Supp. 2d 32, 37 (D.D.C. 2007) ("Where an agency has acted in an area in which it has 'special expertise,' the court must be particularly deferential to its determinations."); *see also Fahey v. Mallonee*, 332 U.S. 245, 250 (1947) ("Banking is one of the longest regulated and most closely supervised of public callings.").

### 2.    *Ms. Hurry's Arguments against the Validity of the Regulation are Unavailing.*

Ms. Hurry argues that the regulation is overbroad because it allows closure based on refusal to provide "requested," "required" information, as opposed to the statute, which provides the agency "may disapprove" based on failure to supply "all the information" the FDIC requires. 12 U.S.C. § 1817(j)(7)(E); ECF 23-1, at 19-20.  According to Ms. Hurry, this supposed discrepancy could enable the agency to use the regulation to seek irrelevant information, unauthorized by the statute. *Id.* Her argument is not persuasive.  The text of the regulation states the agency "may *require* an applicant to provide additional information" and that "*if information requested* is not provided within the time period specified by the agency, the FDIC may deem the filing abandoned."  12 C.F.R. § 303.11(e).[6]  Likewise the text of the statute provides the

---

[6] 12 C.F.R. § 303.11(e) provides: (e) Abandonment of filing.  A filing must contain all information set forth in the applicable subpart of this part.  To the extent necessary to evaluate a filing, the FDIC may require an applicant to provide additional information.  If information requested by the FDIC is not provided within the time period specified by the agency, the FDIC may deem the filing abandoned and

agency "may disapprove" a submission based on failure to supply "all of the information" the FDIC requires.  12 U.S.C. § 1817(j)(7)(E).  Contrary to Ms. Hurry's argument, nothing in the regulatory text enables the FDIC to extract information unauthorized by the statute.  There is no merit to Ms. Hurry's argument that the statute cabins areas of inquiry to "information called for by the FDIC's forms," whereas the regulation allows the agency to pursue entirely irrelevant lines of inquiry.  ECF 23-1, at 17.

Ms. Hurry wrongly suggests that the FDIC's invocation of 12 C.F.R. § 303.11(e), as compared to disapproval under 12 U.S.C. § 1817(j)(7)(E), deprives her of an opportunity for meaningful judicial review.  ECF 23-1, at 19.  Not so.  Ms. Hurry relies on *Friedman v. Federal Aviation Administration*, 841 F.3d 537 (D.C. Cir. 2016), but that case does not help her cause.  ECF 23-1 at 19.  In *Friedman,* the FAA declined to issue a formal approval or denial of an airline pilot's request for a first class medical certificate, instead informing the pilot that he needed to supply additional medical information.  841 F.3d at 541.  After the pilot brought suit, the FAA contended that its actions were not subject to APA judicial review, given that it had not issued final agency action.  The D.C. Circuit disagreed, holding that the FAA's action constituted final agency action, as a "constructive denial of Friedman's application."  *Id.* at 541.  Consistent with *Friedman*, the FDIC asserts that its abandonment determination under 12 C.F.R. § 303.11(e) is reviewable agency action.  As such, Ms. Hurry has not been deprived of a remedy.

---

shall provide written notification to the applicant and any interested parties that submitted comments to the FDIC that the file has been closed.

## III.     THE FDIC'S REQUESTS FOR THE TRUST DOCUMENTS WERE NOT ARBITRARY AND CAPRICIOUS.

The Amended Complaint's third count seeks 5 U.S.C. § 706(2) review of the FDIC's abandonment determination under the arbitrary and capricious standard.  ECF 22, at 19.  On this point, the FDIC's determination finding that Ms. Hurry abandoned her application is not plainly erroneous or inconsistent with the regulation.  Ms. Hurry's refusal to provide the FDIC requested, required information fits into the text of the abandonment regulation because:  (1) FDIC needs the trust documentation to properly evaluate her application; and (2) Ms. Hurry's excuses for refusing to provide the documentation are meritless.  *See United States v. United Park City Mines Co.,* No. 18-4110, 2020 WL 5542481, at *8 (10th Cir. Sept. 16, 2020) ("The EPA's insistence on certified responses to all its requests for information is neither arbitrary nor capricious nor an abuse of discretion nor otherwise unlawful; the certifications provided assurance of full compliance by the Defendants").

The FDIC's need for the trust documentation is evident.  *See Fahey v. Mallonee*, 332 U.S. 245, 250 (1947) ("Banking is one of the longest regulated and most closely supervised of public callings.").  Ms. Hurry's submission disclosed that family trusts controlled 46 separate businesses, in which she may have some interest.  FDICAR000002; FDICAR000031 (listing entities).  The CBCA requires the FDIC to make a thorough, independent investigation into an applicant's background and affiliations.  *See* 12 U.S.C. § 1817(j)(2)(B).  Given banking regulations governing self-dealing and insider transactions, there is a rational basis for the FDIC's request for the trust documentation concerning these entities.  *See, e.g.*, 12 C.F.R. Part 215 (Regulation O); 12 C.F.R. Part 223 (Regulation W).  Indeed, under 12 C.F.R. § 303.82(b)(2)(v), there is a rebuttable presumption of control by an applicant concerning trusts in which she is a beneficiary or a trustee.

17

Ms. Hurry has no valid basis for refusing to provide the agency with the requested, required documentation, even if she incorrectly considers the requests "nonsensical."  ECF 23-1 at 19.  Contrary to Ms. Hurry's position, state law concerns about the confidentiality of trust documents do not provide reasons to refuse a federal banking agency's requests.  12 U.S.C. 1828(x) protects privilege; and the FDIC routinely handles the most sensitive nonpublic financial information.  Although Ms. Hurry may believe that ownership information concerning 46 family businesses is irrelevant, the FDIC does not, and Ms. Hurry should not be able to substitute her judgment for the agency's, particularly given the heavily regulated nature of banking.  *See Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1284 (Fed. Cir. 2005) ("Preempting the [PTO's] decision-making by refusing reasonable requirements for information is not a course calculated to achieve a timely and equitable determination of whether a patent should be granted.").

## IV.   VACATING THE FDIC'S DETERMINATION AND DECLARING THAT THE TRANSACTION MAY PROCEED ARE INAPPROPRIATE REMEDIES.

Finally, the Amended Complaint asks this Court to declare that "the FDIC's failure to disapprove of the transaction in accordance with its procedures and applicable law enables Plaintiff to proceed with the transaction."  ECF 22, Prayer for Relief ¶ 4.  But the circumstances of this case make clear that vacatur and a judicial declaration that Ms. Hurry can immediately buy the Bank are inappropriate remedies.

Should Ms. Hurry prevail on her challenge (and she should not), this Court has discretion to fashion a remedy.  *See* 5 U.S.C. § 702 ("[n]othing herein . . . affects . . . the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground"); *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993) (remanding rather than vacating rule because of "the disruptive consequences of vacating").

18

Community banks are interconnected, and operate under multiple layers of regulatory supervision.  It would be disruptive to the nation's financial regulatory system for an order to issue vacating the FDIC's determination and installing Ms. Hurry as the new owner of the Bank. Instead of bypassing the regulatory process altogether, if the Court agrees with Ms. Hurry's challenge, the matter should be remanded, allowing Ms. Hurry the opportunity to resubmit her application and for the FDIC to approve or disapprove.  *See Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009) (affirming district court decision leaving "invalid" rural location rule in place pending a curative rulemaking).

## **CONCLUSION**

For the foregoing reasons, summary judgment should be granted in favor of the FDIC.


Dated:  October 6, 2020                    Respectfully submitted,


                                           FEDERAL DEPOSIT INSURANCE CORPORATION
                                            Barbara Katron (DC Bar #387970)


                                           _____/s/_____
                                           Erik Bond (NY Bar Reg. #4316030)
                                           Counsel, Corporate Litigation Unit

                                           Tel.: (703) 562-6461
                                           Fax: (703) 562-2477
                                           Email: erbond@fdic.gov

                                           3501 Fairfax Drive, D-7026
                                           Arlington, Virginia 22226


                                           *Attorneys for Defendant*