# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JUSTINE HURRY,** | |
| Plaintiff, | |
| v. | Civil Action No. 1:18-cv-2435 (RDM) |
| **FEDERAL DEPOSIT INSURANCE CORPORATION,** | |
| Defendant. | |

# PLAINTIFF JUSTINE HURRY'S
# OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
# AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1

## INTRODUCTION

Plaintiff's Motion for Summary Judgment raised the fundamental issue of whether the Change in Bank Control Act ("CBCA"), a clear and comprehensive description of procedures and standards for review of proposed bank acquisitions, means what it says. Under that statute, one proposing to acquire a depository institution is required to provide the banking agency with "sixty days' prior written notice of such proposed acquisition." The procedure that follows is clear: upon receiving "any notice," the banking agency "shall" conduct its investigation *and* "determine[e] the accuracy and completeness of any information" described in Section 1817(j)(6). The course of that review is clearly prescribed: the agency may extend the sixty-day disapproval period where "the acquiring party has not furnished all the information required under paragraph (6)." 12 U.S.C. § 1817 (j)(1). The agency then has two options: it may take no action, effectively approving the proposed transaction, or it "may disapprove" based on any one of six specific circumstances specified in Section 1817(j)(7), including the acquirer's failure to furnish information "required by the appropriate Federal banking agency." In the event of disapproval, the acquiring party may pursue rights of review through agency hearings and appeal. 12 U.S.C. § 1817(j)(4). These procedures, established by Congress, are neither unclear nor ambiguous; they provide a rational and efficient consideration and resolution of a proposed acquisition.

The FDIC nonetheless insists that its regulations and interpretations of the statute empower it to undermine and contort that process. It superimposes on the statute a regulation allowing it to consider a notice "incomplete" if the agency has requested additional information, and thereby indefinitely avoid the commencement of the statutory disapproval period. 12 C.F.R. § 303.86(b). It combines that with an "abandonment" regulation, enabling it to circumvent entirely the disapproval and appeal provisions by deeming a file "abandoned" if "requested" information, even

information beyond the scope of that which is described in the statute and in the agency form ("Interagency Notice of Change in Control," Form No. 3064-0019; "Interagency Biographical and Financial Report," Form No. 3064-0006), is not provided by the acquiring party. 12 C.F.R. § 303.11(e).

This Court must now assess those regulations, and the FDIC's implementation of them, to determine if the CBCA provisions are ambiguous and if the regulations are inconsistent with the statute. As discussed below, the statute enacted by Congress is clear on its face and should be implemented, not undercut, by the agency's contrary regulations.

## ARGUMENT

### I. PLAINTIFF IS ENTITLED TO JUDGMENT BASED ON THE FDIC'S FAILURE TO ADHERE TO THE REQUISITE STATUTORY PROCEDURES CONTAINED IN THE CBCA

#### A. Plaintiff's Submission on the Prescribed Forms Constitutes "Notice" under the Statute

In November 2017, Plaintiff provided the FDIC with the requisite "sixty-days' prior written notice of the proposed acquisition." 12 U.S.C. § 1817(j)(1). Plaintiff then, in December 2017, provided additional information as requested by the agency. In January 2018, the agency again acknowledged receipt of the Notice, sought further information, and advised that "the FDIC may disapprove a Notice" if the acquiring party fails to provide requested information. Exhibit D to Rule 56.1: Letter from FDIC to Phil Klinkhardt.

The FDIC does not dispute that Plaintiff provided the information called for in the Interagency Forms, including her financial, professional and biographical information. Instead, the FDIC insists, in remarkably circular and nonsensical fashion, that the agency has no obligation to adjudicate a notice in accordance with the CBCA unless and until it deems the notice

3

"substantially complete." FDIC Opposition and Motion for Summary Judgment ("FDIC Opp.") at 7. It claims that the "notice" that triggers the provisions of the CBCA is *"defined"* by Section 1817(j)(6), which sets forth information that the notice shall contain. But that argument runs contrary to the statute's own provisions and even the regulations themselves. The statute expressly provides for the agency's review and consideration of "*any* notice," even where the agency -- during the course of that review – identifies the need for additional information and fails to receive it. 12 U.S.C. § 1817(j)(2)(B) (emphasis added); *see also* 12 U.S.C. § 1817(j)(1), (6)-(7). In short, there is no prefatory step described in the statute; receipt of "any notice" triggers the agency's obligation to review it and, if it is incomplete, to request more information, extend the duration of its review, or, ultimately, disapprove the acquisition. *See* 12 U.S.C. § 1817(j)(1)-(2), (6)-(7).[1]

The statutory provisions regarding failure to provide information become illusory and nonsensical under the FDIC's view of the statute. To the FDIC, the agency's review of the submission, any requests for information, and the receipt of additional information – all steps that bear on "completeness" – precede commencement of the disapproval period. Why then, during the disapproval period, would the FDIC need to investigate for "completeness of any information described in [Section 1817(j)(6)]"? 12 U.S.C. § 1817(j)(2)(B). Why would the FDIC be authorized to extend the disapproval period if it determined the "acquiring party has not furnished all the information required under [Section 1817(j)(6)]"? 12 U.S.C. § 1817(j)(1)(A). And why

---

[1] FDIC's argument that notice is a "defined" term is flawed for two additional reasons. First, *if* Section 1817(j)(6) were the "definition" of the term "notice" it would be unworkable and circular as subparagraph (H) requires that the notice also include "any additional relevant information" as the agency may require "by specific request in connection with any particular *notice*." 12 U.S.C. 1817(j)(6)(H) (emphasis added). How could an acquiring party satisfy this component if the agency had not already begun its review and investigation as provided in Section 1817(j)(2) and made a specific request for information based on that "*particular notice*"?

Second, Section 1817(j) contains a paragraph that *does* prescribe definitions. *See* 12 U.S.C. 1817(j)(8). Absent from that provision, however, is the term "notice." And this makes sense in view of the FDIC's obligation to review and investigate "any notice" merely "upon receiving" it. 12 U.S.C. § 1817(j)(2)(B). If "notice" were defined, then the statute would command that the FDIC need only review and investigate "upon receiving" *a* notice.

4

would the FDIC need authorization to disapprove a notice that was incomplete?  12 U.S.C. § 1817(j)(7)(E).  The FDIC has no answer to these questions.

Further, under the FDIC's view, any request for additional information, however peripheral, enables the agency to deem it incomplete and decline to review it. These requests could occur months *after* the FDIC's receipt of the Notice and would suddenly render the already *received* Notice incomplete, causing, *nunc pro tunc*, the disapproval period to have never run.[2] The statute says no such thing.  Yet the FDIC would turn on its head the straightforward and efficient review process prescribed, creating a labyrinthian and circular process: (i) an acquiring party must prophesize what information the agency might request, (ii) provide that information for the agency's review, (iii) respond to agency requests, and (iv) only once the agency has reviewed all the relevant information, the sixty day period for the agency to conduct this very review begins to run.  As noted above, this renders obsolete several key provisions, including the statute's provision that the agency may extend the disapproval period if it has not received "the information required under paragraph 6." 12 U.S.C. § 1817(j)(1)(A).  Defendant's position, that it can consider any notice "incomplete," reset or never start the disapproval period, and ignore the statutory review process if there is additional information that it seeks, contravenes the precise procedures contained in the CBCA and must be rejected.

Even the Defendant's own conduct and its regulations make clear that a "notice" of change of bank control has its plain meaning: it is *a notification*.  The definitional section of the FDIC's own regulations, 12 C.F.R. § 303.2, states that a "notice" "means a submission *notifying the FDIC* that a depository institution intends to engage in or has commenced certain corporate activities or

---

[2] This notwithstanding the command in Section 1817(j)(2) that "upon receiving any notice" the agency must review it, prepare a written report of its findings, and issue its determination to disapprove the acquisition to the acquiring party within three days.

5

transactions." 12 C.F.R. § 303.2 (emphasis added). That language is consistent with the particular regulation regarding "Filing Procedures," which states that a notice shall contain the "information required by paragraph 6 of the Change in Bank Control Act *or prescribed in the interagency form* which may be obtained from any FDIC regional director" (emphasis added). That regulation confirms also that, "when the acquiring person is an individual or group of individuals acting in concert the requirement to provide personal financial data may be satisfied by a current statement of assets and liabilities and an income summary, as required in the designated interagency form." 12 C.F.R. §303.84(a)(1), (4).

Perhaps most telling is that the FDIC itself interpreted the statute precisely as Plaintiff does. In its January 2018 correspondence to Plaintiff, the agency did not claim that the Plaintiff had failed to submit a "notice;" it instead requested further information and advised that the Notice that she had submitted could be disapproved if she failed to provide that information. ECF 23-1; FDICAR000680-686.[3]

Here, as the agency acknowledged, Plaintiff submitted the requisite Notice as of, at the latest, the FDIC acknowledgment of it in January 2018. The agency was then required to act in accordance with the statute, either disapproving the transaction within sixty days or extending that period. It did neither, and it has never offered any rationale for its failure to follow those statutory provisions. As of April 2018, the disapproval period lapsed and Plaintiff is entitled to judgment confirming that the FDIC failed to disapprove the acquisition within the requisite time period and thereby approved that transaction.

---

[3] Defendant argues that its own iteration of the applicable procedures should not be viewed as the agency's contemporaneous statement because it preceded the "final" agency action. FDIC Opp. at 10. That argument ignores the purpose of rejection of post-hoc rationalizations, i.e., because they reflect that agency's actual position at the time of the event rather than constructs later devised by those anticipating or engaging in litigation. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1908 (2020) (rejecting agency's subsequent position as "impermissible '*post hoc*, rationalization'") (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

6

### B. Agency Action in the Form of Disapproval is Required or the Acquisition Can Proceed

Defendant argues that the agency is not "legally required" to review and resolve a Notice for Change of Bank Control because the statute uses the word "may" in its discussion of disapproval. FDIC Opp. at 9-10. That contention is a mischaracterization of the statute's process and directives. Defendant is correct that the FDIC is not *required* to *disapprove* a transaction; it can decide not to disapprove an acquisition and thereby permit it. *See* 12 U.S.C. § 1817(j)(1) (acquisition may proceed if "within [the sixty days'] time period the agency has not issued a notice disapproving the proposed acquisition"). But it is "legally required" to take the action prescribed by the statute in order to accomplish a disapproval. The statute is unambiguous in terms of the process that the agency must follow after its receipt of a Notice, including its communication of a disapproval within the requisite time period. Plaintiff is entitled to judgment confirming that the agency failed to disapprove the acquisition in accordance with the statute, resulting in approval of the transaction.

### II. SECTION 303.11(e) IS CONTRARY TO THE CBCA AND INVALID

Defendant effectively admits that, in any instance in which a Notice is submitted, the agency must process it in accordance with the statutory timetables set forth in the CBCA. FDIC Opp. at 11. But, it insists, if the application omits "relevant, required" information, the agency can deem it "abandoned" under its own regulation, Section 303.11, and close the file. FDIC Opp. at 11. This is permissible, the Defendant argues, because the statute does not tell the agency what to do with an "incomplete" submission and is, therefore, ambiguous. FDIC Opp. at 11-12.

Defendant is wrong. The statute addresses the precise matter at issue. In fact, it does so in three critical ways: (i) the agency should review to determine whether it needs additional information (12 U.S.C. § 1817(j)(2)), (ii) the agency can extend the disapproval period where it

7

needs additional information (*id.* § 1817(j)(1)), and it can disapprove the transaction if it does not receive the information (*id.* § 1817(j)(7). The statute is not ambiguous, and it does not allow the agency to circumvent those procedures or devise an alternative.

Defendant's *only* claim is that the statute, although it addresses the matter of requests for further information, does not "unambiguously foreclose" the agency from disregarding those provisions and taking other action. But Congress is not required to expressly state that the statutory provisions that it enacts are mandatory; they are simply the law, to be followed (not avoided) by agencies that implement them. Congress is not required to "bar" an agency from circumventing statutory provisions or explain that those are the *"only"* means by which to deal with a circumstance such as a need for additional information. Congress is not required to anticipate that an agency, like an errant child, will insist that it can engage in conduct inconsistent with the statute unless Congress thought to expressly prohibit those actions.[4] Quit the opposite, in fact, as the Supreme Court has long recognized that the express provision of certain circumstances that permit expressly provided for agency action means "there is no *other* circumstance" under which the agency may take the same act. *See, e.g.*, *Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018) (one "express exception" to alien detention that permits release implies no other circumstances exist that permit the alien's release) (emphasis in original). Because the statute expressly provides that the FDIC may request additional information and disapprove a notice if such requests are not satisfied, it cannot be that an unexpressed alternative circumstance (i.e., deeming the notice abandoned) is authorized. The statute need only be applied as written.

Even assuming that the CBCA were ambiguous, the FDIC's assertion that it is permitted

---

[4] Defendant's argument brings to mind a line from a children's song: "Nobody told me that I shouldn't shave the kitty … so I did." When Congress sets forth specific procedures to address a particular circumstance, it should not have to also say that it expects those procedures to be followed.

to deem a file incomplete and abandoned is not a reasonable interpretation of the statute. First, the agency has put forth *not one* credible rationale for its refusal to adhere to the procedures set out in the statute. Instead, it asserts that "it makes no sense" to disapprove a transaction, and permit a hearing and appeal, where documentation is purportedly lacking. FDIC Opp. at 13. But this is a quibble with Congress, for that *is exactly what the statute tells the agency to do.* The statute could not be clearer that, *after* a notice is received and the disapproval period commences, the agency can seek an extension to obtain further information and then *disapprove the acquisition* if the information is not forthcoming. From that disapproval alone, the acquiring party may seek a hearing and, ultimately, appellate review. *See* 12 U.S.C. § 1817(j)(4)-(5). It is a clear and efficient process that then enables the acquiring party to obtain a hearing regarding whether the disapproval was warranted.[5]

Defendant asserts also that its "abandonment" provision is not an "outlier." FDIC Opp. at 13. It points to regulations promulgated by other agencies that permit an agency to deem an application abandoned when "an applicant fails to provide requested information." FDIC Opp. at 13. But Defendant's references to other circumstances do not support, and actually contradict, its position. First, Defendant does not acknowledge the single most critical issue in relation to the validity of "abandonment" regulations, *i.e.*, whether the authorizing *statute* had specific provisions addressing a failure to provide information. In *Nolasco,* for example, the Defendant contended that Congress had not addressed a failure to provide evidence and so, "in the absence of

---

[5] If, as the FDIC argues, the documentation is lacking, the hearing and appeal process will shortly resolve that and affirm the disapproval. But, what the FDIC does not acknowledge, is another purpose of the hearing and appeal process: a determination that the FDIC (or other reviewing agency) may be *wrong* and the documentation provided was in fact sufficient. Only through the hearing and appeal would the acquiring party be able to demonstrate that the agency's view of the supplied documentation was erroneous. Yet, as it has done to Plaintiff, the FDIC posits that, in that situation, the acquiring party can never get to the hearing and appeal process because the notice will be deemed *abandoned* rather than *disapproved*, the latter being the only action that triggers the statutory hearing and appeal process.

9

instructions from Congress," Defendant formulated the regulations. That is obviously not the case here.

Defendant also ignores the fact that those cited instances include provisions that deal with actual abandonment, *i.e.,* the individual literally failed to respond to a request for information. *See Boening v. Shinseki,* 2010 U.S. App. Vet. Claims LEXIS 1405 at *3 & n.1 (Veterans C.A. July 30, 2010) ("'vet did not respond'"). *See also Nolasco v. Crockett*, 2019 U.S.Dist.LEXIS 97619 at *7-8 (E.D. La. June 11, 2019) (defendant claimed that it never received a response to its request for evidence).[6] As discussed in prior briefing, the application of the FDIC's abandonment regulation might not contravene the statute if it applied only to actual failures to respond, but it is applied in this case in the face of Plaintiff's persistent responses and explanations to the agency.

Equally inapposite is the circumstance involving the Patent and Trademark Office in *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1280 (Fed. Cir. 2005). That case dealt with a Requirement for Information that expressly stated that, "if the applicant did not have or could not readily obtain the required information," "a statement to that effect would 'be accepted as a complete response to the requirement for that item.'" The plaintiff in *Star Fruits* expressly refused to provide the information, the PTO viewed its refusal as "a deliberate omission, not a bona fide attempt at a complete response," and issued a Notice of Abandonment. *Id*. Further, to deal with concerns regarding unfettered "discretion" of particular examiners to demand information, the plaintiff in that case also had the opportunity to petition the Director to accept its submission as complete, and the Director then considered and decided that issue. *Id*. at 1280-81. None of those

---

[6] Further, Defendant ignores the fact that the statute specifically provided for review by the Board of Veteran's Appeals of such an "abandonment" finding, followed by judicial review of that finding. Id. at *4-5. The CBCA does not so provide – nor could it since it *nowhere* provides for the agency to determine that a notice is "abandoned" as opposed to "disapproved."

10

accommodations or protections exist in this case; the discretion of the FDIC remains unfettered.

Similarly, the cited provisions dealing with immigration applications in 8 C.F.R. § 103.2 are strikingly different from the FDIC's abandonment regulation. In response to a Customs and Immigration request for evidence, the applicant is given a range of options including submission of a "partial response" and request for a decision to proceed on that record. §103.2 (11). The applicant is not denied the opportunity to have the application considered, or the right to a hearing or subsequent appellate review.

Far from supporting Defendant's argument, consideration of other circumstances underscores that the abandonment regulation in this case is contrary to the statute, overbroad and completely lacking in the kind of procedural protections that are embedded in the CBCA.

Defendant's remaining arguments likewise provide no support for a regulation that contravenes the statute. It points to longevity of the provision. It acknowledges that "courts have looked askance" at that argument where policy matters are at issue but maintains that the abandonment regulations at issue here involve not policy but only "housekeeping." FDIC Opp. at 14. As this case illustrates, this regulation enables an agency to deprive an acquiring party of a statutorily prescribed hearing and appellate review – includin meaningful review of informational requests that may bear little or no relation to the issues properly considered upon a notice of change in control; it is not merely housekeeping.

Finally, Defendant invokes the general notion of the expertise of and deference to the FDIC. FDIC Opp. at 15. Even putting aside the escalating debate concerning the value and wisdom of agency deference, the issue is not relevant here where Plaintiff is asking only that the agency conduct itself in a manner consistent with the particular provisions drafted and enacted by Congress. Nor is it apparent *how* the FDIC's expertise in regulating depository institutions is

brought to bear on the rather mundane, though critical, question of whether the CBCA despite expressly authorizing the FDIC to disapprove an incomplete notice might also permit, *sub silentio*, the FDIC to simply deem the notice abandoned for the very same reason. This Court is quite capable of resolving that matter of statutory interpretation.

### III. THE FDIC'S DEMANDS AND ACTIONS WERE ARBITRARY AND CAPRICIOUS

The final issue raised by this proceeding, the basis for the agency's claim of abandonment, illustrates the arbitrariness and invalidity of the agency's action. Here, Plaintiff submitted substantial and detailed information in accordance with the Interagency Forms. She provided the relevant information concerning her professional experience including her work in the financial industry. Defendant does not even dispute that she complied with the provisions regarding disclosure of financial information pertaining to an individual acquiring party. The agency had before it the relevant information concerning her income and her experience.

In her submission, Plaintiff also disclosed that she was a beneficiary of certain family trusts that had established or operated various businesses. She made clear that she was only a beneficiary; she did not operate or control those businesses. She and her counsel also explained that she was not authorized to disseminate the family trust documents, a fact that is unsurprising since most trust beneficiaries do not have the ability to control or even access the underlying trust documents. Here, the privacy associated with the trust documents was explained in detail to the FDIC, as were the Nevada laws providing that trust documents are confidential.

Notwithstanding the extent of the information that she provided, the FDIC claimed that the trust documents were "needed to properly evaluate her application." FDIC Opp. at 17. Strikingly, the FDIC provides no support for that conclusory assertion and none exists. Consider, for example, an individual who holds stock in various corporations: the FDIC's demand here would be

12

tantamount to demanding the incorporation documents of corporations or the stock purchase agreements. It is the private workings of other entities, not germane to the FDIC's inquiry.

Defendant is unable to point to any aspect of her beneficiary status that is relevant to her submission. In terms of the identity of the entities, Plaintiff already provided the listing *and* assurances that the board of the bank would be advised of those associations. In terms of her own skill and experience, Plaintiff had already provided a listing of the positions that she had held, including any positions with any entity operated by the trust. In terms of her resources, Plaintiff had provided ample information regarding her resources and the availability of funds involved in the acquisition of the bank. Defendant received comprehensive information concerning Plaintiff's background, does not complain about any "incompleteness" in that information, and clearly found no basis on which to disapprove Plaintiff's Notice; if it had any further issues or any concerns regarding her experience or competence, certainly the agency would have disapproved the Notice on that basis. It instead put forth a demand for family trust documents, and then used that demand to refuse to address the Notice. But Defendant has failed to point to any aspect of trust documents, which set forth the operation and administrative aspects of the trust, that would be "needed" to evaluate her application. Because Defendant failed to satisfy its burden of articulating a satisfactory explanation for its action or a rational connection between trust documents and a proper evaluation of Plaintiff's application, the Court should find its actions arbitrary and capricious. *Overdevest Nurseries LP v. Scalia*, 2020 U.S.Dist.LEXIS 66292 at *13 (D.D.C. April 15, 2020).

## IV.     THE RELIEF SOUGHT IS APPROPRIATE

Having cavalierly disregarded the pertinent provisions contained in the CBCA, the FDIC now asks that the Court remand the matter rather than issuing the relief that is sought and that is consistent with the statutory provisions. In support of that request, the FDIC suggests that the relief sought – pertaining to acquisition of a Missouri bank – would be "disruptive to the nation's financial regulatory system." FDIC Opp. at 19.

This request is unfounded. First, and ironically, "disrupti[on] to the nation's financial regulatory system" is *not* a basis for disapproval under the CBCA. *See* 12 U.S.C. 1817(j)(7).[7] Second, the FDIC has, heretofore, *never* posited in any of its correspondence with Plaintiff or in any submission to this Court that Plaintiff's acquisition of a relatively small bank would be nationally disruptive. The FDIC has articulated no facts that support this contention. This is not surprising since the record reveals that Mrs. Hurry's Notice demonstrates her capability, experience, and a rational business plan to grow the bank.

Instead of pointing to any facts that support the bold contention that Mrs. Hurry's ownership of the bank will be nationally disruptive, FDIC suggests that Plaintiff should have to go through the application process all over again. Notwithstanding that the FDIC did not follow the proper procedure and did not disapprove the acquisition, they argue that Mrs. Hurry should bear the burden of giving the FDIC a second bite at the apple. But the FDIC points to nothing in the record or the CBCA in support of its generic and conclusory claim. Its request should be denied.

---

[7] The FDIC's claim does come close to one of the other, substantive bases for disapproval provided for in the CBCA. *See* 12 U.S.C. § 1817(j)(7)(C) (disapproval appropriate if the FDIC finds that "either the financial condition of any acquiring person or the future prospects of the institution is such as might jeopardize the financial stability of the bank or prejudice the interests of depositors of the bank"). Yet, as explained above, the FDIC has made not factual determination that either the bank or its depositors will suffer from Mrs. Hurry's acquisition – an acquisition that was designed to actually provide liquidity and relieve the incumbent and disinterested owners.

Dated: October 27, 2020

        Respectfully submitted,

        THOMPSON HINE LLP

By: /s/ Joseph A. Smith
    Joseph A. Smith
    D.C. Bar No. 1010223
    1919 M Street, N.W., Suite 700
    Washington, D.C. 20036
    Phone: (202) 331-8800
    Fax: (202) 331-8330
    joe.smith@thompsonhine.com


    Brian Lanciault (admitted *pro hac vice*)
    Thompson Hine LLP
    1919 M Street, N.W., Suite 700
    Washington, D.C. 20036
    Phone: (202) 331-8800
    Fax: (202) 331-8330
    Brian.Lanciault@ThompsonHine.com

    Maranda E. Fritz P.C.

    /s/Maranda E. Fritz
    Maranda E. Fritz (admitted *pro hac vice*)
    335 Madison Avenue
    New York, New York 10017
    Phone: (646) 584-8231
    maranda@fritzpc.com


    *Counsel for Plaintiff Justine Hurry*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of October 2020, I caused the foregoing to be filed and served via ECF, on the following:

>Erick Bond
>Counsel, Corporate Litigation Unit
>3501 N. Fairfax Drive, D-7026
>Arlington, VA 22226
>*Counsel for FDIC Defendants*

                /s/ Joseph A. Smith
               Joseph A. Smith