# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JUSTINE HURRY,

        Plaintiff,

  v.

FEDERAL DEPOSIT INSURANCE CORPORATION,

        Defendant.

Case No. 18-cv-2435

## FDIC'S CROSS REPLY

FEDERAL DEPOSIT INSURANCE CORPORATION

  Barbara Katron (DC Bar #387970)
  Senior Counsel, Corporate Litigation Unit
  Erik Bond (NY Bar Reg. #4316030)
  Counsel, Corporate Litigation Unit

  Tel.: (703) 562-6461
  Fax: (703) 562-2477
  Email:  erbond@fdic.gov

  3501 N. Fairfax Drive, D-7026
  Arlington, VA 22226

  *Attorneys for Defendant*

Dated:  November 19, 2020

## **INTRODUCTION**

Under the Change in Bank Control Act ("CBCA"), the clock on the FDIC's "investigation of the competence, experience, integrity, and financial ability" of an applicant seeking to purchase a bank starts on the FDIC's receipt of "any notice under this subsection." 12 U.S.C. §§ 1817(j)(2)(B)(i), (j)(1). A "notice" under the CBCA is a term of art, and the statute contains a detailed definition of what a "notice" "shall contain," which includes "[a]ny additional relevant information in such form as the appropriate Federal banking agency may require." 12 U.S.C. §§ 1817(j)(6), (6)(H). Once the agency receives the "notice," the FDIC "may disapprove" the transaction under a 60-day deadline, which may be extended several times. 12 U.S.C. §§ 1817(j)(1), (7). The FDIC's regulations provide that the 60-day deadline does not begin to run until the agency receives a "substantially complete notice." 12 C.F.R. § 303.86(b).

Because Ms. Hurry never submitted a "substantially complete notice" to the FDIC, the 60-day disapproval deadline was never triggered. In particular, despite repeated requests, she refused to provide the FDIC with trust documentation concerning 46 different businesses with which she is connected. As a result of Ms. Hurry's failure to furnish the relevant FDIC-requested trust information, her filing was never substantially complete.

Ms. Hurry has no standing to pursue her agency inaction claim under 5 U.S.C. § 706(1) because she cannot show the FDIC was legally required to disapprove her incomplete submission within 60-days. Her attempt to invalidate application of the FDIC's abandonment regulation (12 C.F.R. § 303.11(e)) fails for similar reasons. Because 12 C.F.R. § 303.11(e)'s scope is limited to where there would *not* be a "notice" (i.e., because the application is necessarily incomplete), nothing in the CBCA's text or structure conflicts with the regulation. Finally, there is nothing arbitrary or capricious about the FDIC's request that Ms. Hurry provide

1

the agency with complete trust documentation to review. At a bare minimum, information about Ms. Hurry's connection to 46-different business is relevant to an FDIC investigation of her "competence, experience, integrity, and financial ability" as required under the CBCA. 12 U.S.C. § 1817(j)(2)(B)(i).

## ARGUMENT

I. **THE CBCA'S 60-DAY DISAPPROVAL PERIOD IS NOT TRIGGERED BY SUBMISSIONS LACKING RELEVANT AGENCY-REQUESTED INFORMATION.**

Ms. Hurry wrongly claims that the CBCA's detailed definition of a "notice" (12 U.S.C. § 1817(j)(6)) should be displaced, and the statutory term "any notice" really means any "notification" of an intent to purchase a bank. ECF 27 at 5. Applying this homemade definition, Ms. Hurry defends her agency inaction claim by arguing that once the FDIC received her incomplete submission, it had a concrete legal duty to disapprove the submission within 60-days. Similarly, Ms. Hurry asserts that the FDIC's abandonment regulation (12 C.F.R. § 303.11(e)) is invalid as applied, arguing that once she communicated an intent to buy the Bank, the agency was on the clock to disapprove, as opposed to returning the submission as incomplete. ECF 27 at 7. Ms. Hurry is incorrect. "Notice" means what 12 U.S.C. § 1817(j)(6) says, which is more than a simple notification. As the CBCA puts it:

> Except as otherwise provided by regulation of the appropriate Federal banking agency, a notice filed pursuant to this subsection shall contain the following information:
>
> (A) The identity, personal history, business background and experience of each person by whom or on whose behalf the acquisition is to be made, including his material business activities and affiliations during the past five years, and a description of any material pending legal or administrative proceedings in which he is a party and any criminal indictment or conviction of such person by a State or Federal court.
>
> (B) A statement of the assets and liabilities of each person by whom or on whose behalf the acquisition is to be made, as of the end of the fiscal year for each of the

> five fiscal years immediately preceding the date of the notice, together with related statements of income and source and application of funds for each of the fiscal years then concluded, all prepared in accordance with generally accepted accounting principles consistently applied, and an interim statement of the assets and liabilities for each such person, together with related statements of income and source and application of funds, as of a date not more than ninety days prior to the date of the filing of the notice.
>
> (C) The terms and conditions of the proposed acquisition and the manner in which the acquisition is to be made.
>
> (D) The identity, source and amount of the funds or other consideration used or to be used in making the acquisition, and if any part of these funds or other consideration has been or is to be borrowed or otherwise obtained for the purpose of making the acquisition, a description of the transaction, the names of the parties, and any arrangements, agreements, or understandings with such persons.
>
> (E) Any plans or proposals which any acquiring party making the acquisition may have to liquidate the bank, to sell its assets or merge it with any company or to make any other major change in its business or corporate structure or management.
>
> (F) The identification of any person employed, retained, or to be compensated by the acquiring party, or by any person on his behalf, to make solicitations or recommendations to stockholders for the purpose of assisting in the acquisition, and a brief description of the terms of such employment, retainer, or arrangement for compensation.
>
> (G) Copies of all invitations or tenders or advertisements making a tender offer to stockholders for purchase of their stock to be used in connection with the proposed acquisition.
>
> (H) Any additional relevant information in such form as the appropriate Federal banking agency may require by regulation or by specific request in connection with any particular notice.

12 U.S.C. § 1817(j)(6).

The plain language of the CBCA refutes Ms. Hurry's definition of "notice" as a mere "notification." Under the CBCA, a "notice" "*shall contain*" "[a]ny *additional* relevant information in such form as the appropriate Federal banking agency may require . . . by specific request in connection with any particular notice." 12 U.S.C. § 1817(j)(6)(H) (emphasis added).

Further, the CBCA defines "notice" to incorporate regulatory definitions. *Id.* § 1817(j)(6) (defining "notice," "except as otherwise provided by regulation of the appropriate Federal banking agency"). The FDIC's regulations provide that the 60-day deadline does not start until the agency receives a "substantially complete notice." 12 C.F.R. § 303.86(b). Because Ms. Hurry refused to provide the FDIC with all of the requested trust information, her submission to the agency was never substantially complete and, therefore, never constituted a "notice." She has no standing to pursue her agency inaction claim because the 60-day disapproval period was never triggered. Correspondingly, she cannot show that the CBCA precludes application of 12 C.F.R. § 303.11(e) because the statutory investigative process only begins upon the agency's receipt of a substantially complete "notice," which Ms. Hurry refused to submit. 12 U.S.C. § 1817(j)(2)(B)(i) ("Upon receiving any notice under this subsection, the appropriate Federal banking agency shall—(i) conduct an investigation of the competence, experience, integrity, and financial ability of each person named. . . .").

Ms. Hurry justifies her definition of "notice" as a simple "notification" by pointing to seeming inconsistencies that would result if the defined meaning of "notice" is implemented. ECF 27 at 4-5. Namely, Ms. Hurry questions why the CBCA authorizes the agency to extend the investigative period where requested information is missing, and then explicitly authorizes disapproval, if the investigative period does not even begin to run until receipt of a substantially complete notice. *Id.* (citing 12 U.S.C. §§ 1817(j)(7)(E), (1)(A)). But there is no inconsistency. Under the CBCA, the FDIC's 60-day investigation period starts with the agency providing the applicant with written confirmation that the "notice" is accepted as "substantially complete." 12 C.F.R. §§ 303.86(a), (b); 12 U.S.C. § 1817(j)(2)(B). In the course of the agency's 60-day investigation, the agency may determine that it needs additional information from the applicant,

which would allow the agency to extend the investigative period. 12 U.S.C. § 1817(j)(1)(A). If the applicant refuses to "furnish . . . all of the information required," the CBCA then authorizes disapproval of the submission. 12 U.S.C. § 1817(j)(7)(E). For instance, even where an applicant has submitted a substantially complete notice triggering the 60-day investigatory period, the agency may require additional documents, particularly as the investigation develops. The CBCA enables the FDIC to request such information as part of the statutory investigation. None of this is inconsistent with requiring receipt of a substantially complete "notice" to start the 60-day clock. But none of this applies here because Ms. Hurry never submitted a "substantially complete" application.

Ms. Hurry wrongly argues that because the CBCA authorizes disapproval for failure to provide requested information, it forecloses "deeming the notice abandoned" under 12 C.F.R. § 303.11(e). ECF 27 at 8. But Ms. Hurry never triggered the investigatory period in the first place. Because Ms. Hurry's submission never was substantially complete, it never fell within CBCA's investigatory framework. As to Ms. Hurry's incomplete submission, nothing in the statute gives rise to a concrete legal duty for agency inaction purposes or precludes the FDIC's use of 12 C.F.R. § 303.11(e).

## II. 12 C.F.R. § 303.11(e) SHOULD BE UPHELD AS REASONABLE UNDER *CHEVRON* STEP TWO.

As discussed above and in the FDIC's opening brief, CBCA's text does not support Ms. Hurry's claim that the statutory language bars invocation of 12 C.F.R. § 303.11(e) where an incomplete submission is made. ECF 24 at 7-12. Regulation 12 C.F.R § 303.11(e) fills a gap in the CBCA in cases where no "notice" has been submitted. Ms. Hurry's opposition provides no basis to avoid deferring to 12 C.F.R. § 303.11(e) under *Chevron* step two. *See Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 834-35 (1984) (deference where agency

5

interpretation "reasonabl[y] accommodat[es] . . . conflicting policies that were committed to the agency's care by the statute").

Ms. Hurry's argument that the FDIC has put forth "*not one* credible rationale for its refusal to adhere to the procedures set out in the statute" is wrong for two reasons.  ECF 27 at 9. First, as explained above and in the FDIC's opening brief, the agency fully complied with the CBCA and applicable regulations.  Instead, Ms. Hurry refused to provide the agency with requested, relevant information and chose not to submit a "notice" starting the 60-day investigatory period.  Second, there is reason behind the agency's invocation of 12 C.F.R. § 303.11(e).  The FDIC is unable to assess the overall merits of filings where relevant, requested information is omitted.  Returning an incomplete submission to the applicant under 12 C.F.R. § 303.11(e) gives an applicant a chance to cure the deficiency, and seek re-review by the agency.

The FDIC's opening brief showed the myriad of governmental agencies who have adopted regulations similar to 12 C.F.R. § 303.11(e), providing a data point as to reasonableness. ECF 24 at 13-14.  Ms. Hurry's response notes that these other agencies enacted their abandonment regulations under different enabling statutes but this does not help her case.  ECF 27 at 9-11.  Regardless of the terms of the specific organic statute, the prevalence of abandonment regulations across the federal government demonstrates that they represent a common means to address incomplete administrative submissions.

Ms. Hurry repeats her incorrect assertion that invocation of 12 C.F.R. § 303.11(e) is unfair because it allows the FDIC "unfettered" discretion, and deprives her of an opportunity for "meaningful [judicial] review."  ECF 27 at 11.  As the FDIC noted in its opening brief, Ms. Hurry's argument is contradicted by her claims in this Court; she is now seeking substantive review of the FDIC's abandonment decision here.  ECF 24 at 13, 15-17.

Contrary to Ms. Hurry's position, the FDIC's expertise as a bank regulator supports sustaining the reasonableness of 12 C.F.R. § 303.11(e), particularly since the FDIC is an agency charged with administrating the CBCA. The FDIC processes change in control notices as a matter of course under delegation from Congress, and has primary jurisdiction in this area. *See Reiter v. Cooper,* 507 U.S. 258, 268 (1993).

### III. THE FDIC'S REQUESTS FOR THE TRUST DOCUMENTS ARE RELEVANT.

The Amended Complaint's third count seeks 5 U.S.C. § 706(2) review of the FDIC's abandonment determination under the arbitrary and capricious standard. Ms. Hurry wrongly claims that the FDIC's request for the trust documents is not "relevant to her submission" and otherwise not "'needed to evaluate her application." ECF 27 at 13. Again, Ms. Hurry's submission disclosed that family trusts controlled 46 separate businesses, in which she may have some interest. FDICAR000002; FDICAR000031 (listing entities). The CBCA requires the FDIC to make a thorough, independent investigation into an applicant's background and affiliations. *See* 12 U.S.C. § 1817(j)(2)(B). Given banking regulations governing self-dealing and insider transactions, there is a relevant basis for the FDIC's request for the trust documentation concerning these entities. *See, e.g.*, 12 C.F.R. Part 215 (Regulation O); 12 C.F.R. Part 223 (Regulation W).

### IV. VACATING THE FDIC'S DETERMINATION AND DECLARING THAT THE TRANSACTION MAY PROCEED ARE INAPPROPRIATE REMEDIES.

Finally, the Amended Complaint asks this Court to declare that "the FDIC's failure to disapprove of the transaction in accordance with its procedures and applicable law enables Plaintiff to proceed with the transaction." ECF 22, Prayer for Relief ¶ 4. The FDIC's opening brief pointed out that it would be disruptive to the nation's financial regulatory system for an order to issue vacating the FDIC's determination and installing Ms. Hurry as the new owner of

the Bank, bypassing an FDIC investigation.  ECF 24 at 18-19.  In response, Ms. Hurry nonetheless claims the Court should proceed because "disruption to the national's financial regulatory system is *not* a basis for disapproval under the CBCA."  ECF 27 at 14.  Ms. Hurry confuses the statutory grounds for disapproval under the CBCA with the equitable discretion afforded to courts under the APA.  *See* 5 U.S.C. § 702 ("[n]othing herein . . . affects . . . the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground"); *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993) (remanding rather than vacating rule because of "the disruptive consequences of vacating").  Instead of bypassing the regulatory process altogether, if the Court agrees with Ms. Hurry's challenge (it should not), the matter should be remanded, allowing Ms. Hurry the opportunity to resubmit her application and for the FDIC to approve or disapprove.

**CONCLUSION**

For the foregoing reasons, and those in the FDIC's opening brief, summary judgment should be granted in favor of the FDIC.

Dated: November 19, 2020  Respectfully submitted,

FEDERAL DEPOSIT INSURANCE CORPORATION
Barbara Katron (DC Bar #387970)

_____/s/_____
Erik Bond (NY Bar Reg. #4316030)
Counsel, Corporate Litigation Unit

Tel.: (703) 562-6461
Fax: (703) 562-2477
Email: erbond@fdic.gov

3501 Fairfax Drive, D-7026
Arlington, Virginia 22226

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

Pursuant to LCvR 5.4(d), I hereby certify that a copy of the foregoing was served on all parties by electronic filing through the CM/ECF system, which will send notice of such filing to all counsel of record.

        /s/ Erik Bond
ERIK BOND, NY Bar Reg. #4316030
Counsel, FDIC Corporate Litigation Unit